# Exhibit B



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*NOT m/gun*

Martinsburg, West Virginia 25405                       903050: **(b) (6)**
www.atf.gov                                            3311/2010-434
**IUN 0 7 2010**


P.O. Box 3175
Albany, Texas 76430

Dear **(b) (6)**

This is in reference to your submission and accompanying letter to the Firearms Technology
Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking for an
evaluation of a replacement shoulder stock for an AR-15 type rifle. Your letter advises that the
stock (referenced in this reply as a "bump-stock") is intended to assist persons whose hands have
limited mobility to "bump-fire" an AR-15 type rifle. Your submission includes the following: a
block to replace the pistol grip while providing retention for the selector stop spring; a hollow
shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type
buffer-tube assembly; and a set of assembly instructions.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) does attach to the
rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube
assembly. The stock has no automatically functioning mechanical parts or springs and performs
no automatic mechanical function when installed. In order to use the installed device, the
shooter must apply constant forward pressure with the non-shooting hand and constant rearward
pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part
and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

Per your telephoned instructions, we will contact you separately to make return delivery
arrangements.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure










**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, 
Firearms and Explosives

---

*Martinsburg, WV  25405*

www.atf.gov

903050 (b) (6)
3311/78025

May 1, 2013



Dea (b) (6)

This is in reference to your sample, as well as accompanying correspondence, which was submitted in December 2012 to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification under Federal firearms laws. The sample—which you call "the HailStorm"—consists of a replacement "bump-fire" type stock designed for use with a semiautomatic AR-15 type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" as—

...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

The submitted device (see enclosed photos) incorporates the following features or characteristics:

• A plastic, adjustable AR-type buttstock "anchor tube" that is designed to be installed onto the buffer tube of an AR-type firearm and, also, to house the "stabilizer bar."
• A "stock adjusting pin" to prevent linear movement of the "anchor tube" while it is installed to the buffer tube.

(b) (6)

•     Lack of any operating springs, bands, or other parts which would permit automatic firing.

Your stock is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if as a shot is fired—and a sufficient amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA. 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch



Hail Storm Stock, Photograph #1



Hail Storm Stock, Photograph #2

78025

Bump Fire Stock – NOT A MACHINEGUN

(b) (6)

78025 – MAY 1, 2013

**Exhibit B, Pg. 7**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

NOT A m/gun

903050 (b) (6)
3311/2008-371

Martinsburg, West Virginia 25405
www.atf.gov
JUN 1 8 2008



Dear (b) (6)

This is in reference to your submitted item, as well as accompanying correspondence, to the
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch
(FTB). This item, consisting of a metal type shoulder stock, was submitted with a request for
classification under the Gun Control Act (GCA) and National Firearms Act (NFA).

As background information, the NFA, 26 U.S.C. Section 5845(b), defines **"machinegun"** as—

*"...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person."*

The device submitted for evaluation consists of the following:

- Two sections of square metal tubing, the exterior tube measuring approximately
  10 x 1-1/2 x 1-1/2 inches. Additionally, a flat piece of metal similar in shape to a butt
  plate is welded to the rear of the exterior tube.
- An interior tube measuring approximately 12-9/16 x 1-1/4 x 1-1/4 inches.
- A flat piece of metal measuring 4-3/4 x 1-3/8 x 3/16 inches attached by means of welding
  to the bottom and located on the front of the exterior tubing.
- A cylindrically shaped section of pipe that acts as pistol grip and is attached to the
  previously described flat piece of metal by means of welding. It measures approximately
  4-1/8 inches in length and 1-5/16 inches in diameter.
- A support bar attached to the pistol grip and butt plate by means of welding. It measures
  approximately 11-1/4 x 13/16 x 3/8 inches.
- Interior tubing that has been drilled and tapped for two oval head screws which are
  located on the left and right side. These screws are used to stop the rearward movement
  after a short distance of travel. Additionally, two holes have been drilled and tapped into
  the top of the interior tube which allow attachment of the device to an AK-type rifle.

-2-



- An exterior-tube slot (1-3/16 inches) milled on the bottom, approximately 4-3/16 inches from the front of the tube. The interior tubing has a hole drilled and tapped to accept an oval head screw. This screw supports the two previously mentioned stop screws on the interior tubing. It also stops the forward travel of the interior tubing after a short distance of travel.

To install this shoulder-stock device on an AK-type rifle, the shoulder stock and independent pistol grip has to be removed. Next, the front of the interior tube has to be inserted into the interior cavity of the receiver of the AK-type rifle, and the attachment screws installed.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, the shoulder stock device will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot, each shot being fired by a single function of the trigger. Further, every subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger finger on the firing hand.

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics **will void** this classification. In addition, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust the foregoing has been responsive to your request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

72350



(b) (6)

Bump Fire Stock – NOT A MACHINEGUN.

72350 – JUNE 18, 2008 –





72350



2008 - 371

72350





2008- 371

72350

72350



(b) (6) — Bump Fire Stock – NOT A MACHINEGUN.

72350 – JUNE 18, 2008

**Exhibit B, Pg. 13**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*NOT M/G*

Martinsburg, West Virginia 25405

www.atf.gov

FEB 1 1 2013

90305 (b) (6)
3311/2013-149



FosTecH Outdoors, LLC
9290 West County Road 750 South
Paris Crossing, Indiana 47270

Dear (b) (6):

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). The sample, consisting of a replacement "bump-fire" type stock (or "Bumpski") designed for use with a semiautomatic AK-pattern type rifle, was furnished to FTB for classification under Federal firearms laws.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as—

*…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The submitted device (see enclosed photos) incorporates the following features or characteristics:

- A non-ferrous metal "upper portion" of the stock, designed for insertion into the rear section of a stamped AK-type receiver and, also, for securing the "Bumpski" to the remainder of the weapon utilizing the factory tang of the AKM rifle.
- "Lower portion" to which this "upper portion" is assembled: The "lower" consists of a pistol-gripped assembly which reciprocates within the "upper portion" of the buttstock.
- Four screws used to secure your stock to the AKM rifle.
- A "selector bar" to prevent linear movement of the non-ferrous "lower portion" of the stock.
- Lack of any operating springs, bands, or other parts which would permit automatic firing.

**Exhibit B, Pg. 14**



Your stock is designed to allow the AKM-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AKM rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand, the AKM rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. *Any changes to its design features or characteristics will void this classification.* Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a machinegun as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



Fostech Outdoors "BUMPSKI"
Submitted 11/6/2012







77918

(b) (6)

— FEB 11, 2013 – "BUMPSKI" – Bump Fire type stock – NOT A MACHINEGUN

77918



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

· *not m/gun*

Martinsburg, West Virginia  25405

www.atf.gov

**JUN 2 6 2008**

903050 (b) (6)
3311/2007-812



Dea (b) (6)

This is in reference to your submitted item, as well as accompanying correspondence, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). This item, consisting of a Ruger 10/22 rifle and stock which you have modified to incorporate what you refer to as an Akins Accelerator type device of your own manufacture, was submitted with a request for classification under the Gun Control Act (GCA) and National Firearms Act (NFA). This submission was sent in response to our earlier reply to your initial correspondence (see FTB #3311/2007-383).

As you may be aware, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" as follows:

"...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ½ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

-2-

 (b) (6)

*two blocks assembled together with the composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the NFA, 26 U.S.C. 5845(b), and the GCA, 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosed photos, pages 4 and 5) incorporates the following features:

- A metal block that replaces the original manufacturer's V-Block from the 10/22 rifle. The replacement block has two rods attached that are approximately ¼ inch in diameter and approximately 6 inches in length.
- A second metal block which has been machined to allow the two guide rods to pass through. This component serves as a support for the guide rods and as an attachment to the modified stock.
- A third rod, threaded into the outside rear of the 10/22 receiver, rides within a bushing inletted into the tang area of the stock immediately behind the receiver.
- Two external finger stops mounted to the stock, adjacent to the rifle's trigger guard, which limit the rearward travel of the shooter's trigger finger.
- The device does not incorporate an operating spring like the original Akins Accelerator, but has been modified to utilize a thumbscrew which protrudes downward through the fore end of the stock, and allows the operator to apply manual forward pressure to the device.

The absence of an accelerator spring in the submitted device prevents the device from operating automatically as described in ATF Ruling 2006-2. Conversely, forward pressure must be applied to the thumb screw with the support hand, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If strong forward pressure is applied to the thumb screw with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated. If, upon firing, weak pressure is applied to the thumb screw with the support hand, the receiver assembly will recoil rearward past the finger stops, requiring that the shooter push the receiver assembly forward before a subsequent shot can be fired.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the thumb screw with the support hand, the receiver assembly will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the thumb screw will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

-3-

(b) (6)

Since your device does not, when activated by a single function of the trigger, initiate an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in ATF Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosures

-4-

(b) (6)

Submitted device before assembly:



View of operating portion of submitted device:



-5-



Underside view of submitted device- note thumb screw at front of fore end.  This thumb screw is used to provide manual pressure to the device.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

903050 (b) (6)
3311/2012-081

www.atf.gov

**JUL 0 9 2012**

(b) (6)

Saigatechusa/Ramlake, LLC
4540 South Berkeley Lake Road
Norcross, Georgia 30071

Dear (b) (6)

This is in reference to your recent submission and accompanying letter to the Firearms
Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking
for an evaluation of a replacement shoulder stock for a Saiga-12 type shotgun. Your letter
advises that the stock (referenced in this reply as a "Rapid Fire Stock") is intended to assist
persons with limited mobility to "bump-fire" an AK-type weapon (such as the Saiga-12
shotgun). The submitted Saiga-12 shotgun has been fitted with an AR-15 stock adapter, as well
as a modified, AR-15 type, collapsible stock assembly. The modified assembly incorporates a
trigger finger stop **and** allows the shotgun to slide back and forth, independently of the shoulder
stock and pistol grip.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) has no
automatically functioning mechanical parts or springs and performs no automatic mechanical
function when installed. In order to use the installed device, the shooter must apply constant
forward pressure with the non-shooting hand and constant rearward pressure with the shooting
hand. Accordingly, we find that the "Rapid Fire Stock" is a firearm part and is not regulated as a
firearm under Gun Control Act or the National Firearms Act.

Please note that this determination pertains to the Rapid Fire Stock as received and evaluated by
our Branch. Any changes to the design features or physical characteristics of the Rapid Fire
Stock will void this classification. We thank you for your inquiry and trust that the foregoing has
been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

**Exhibit B, Pg. 26**





Submitted item:







**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



*Martinsburg, WV 25405*

www.atf.gov

907020 **(b) (6)**
3311/303826

SEP 1 4 2015



Dear (b) (6)

This refers to your recent correspondence and submission of a physical sample to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), Martinsburg, West Virginia.  Specifically, you ask FTISB to evaluate your prototype design and determine its classification under Federal law.

The Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" as follows: "…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.  Such term does not include an antique firearm."

Additionally, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as—

"…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

You have submitted to FTISB a prototype 3D printed 10/22-style rifle stock. This is a follow-up design from a previous submission (907020:MRC 3311/302558) that FTISB classified as a machinegun.

Your submission consists of the following components:

(b) (6)

- Rifle stock/Gun support
- Pivot toggle
- Shuttle link
- Shuttle
- Forward actuator

You provided the prototype shown below:

**Side view**



**Top view**



(b) (6)

### Assembled with Ruger 10/22 barreled action



Your prototype is designed in a manner that for firing requires the shooter (if right handed) to grip the forward pistol style grip with their left hand. The right hand will grip the rearward pistol grip requiring that the shooter place his/her trigger finger on the extension incorporated into the grip. The left forefinger will pull the forward actuator rearward causing the 10/22 barreled action to move forward until the Ruger 10/22 trigger contacts the shooters trigger finger and a projectile is expelled from the firearm barrel.

When a shot is fired, an intermediate amount of pressure is applied to the forward actuator with the left hand forefinger, and the barreled action via the shuttle recoils sufficiently rearward to allow the trigger to mechanically reset. Continued intermediate pressure applied to the forward actuator will then pull the receiver assembly forward until the trigger re-contacts the shooter's stationary firing-hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot so that the action of firing is accomplished by a single trigger function. Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the forward actuator and timing it to contact the trigger-finger on the firing hand.

As stated above, the NFA defines machinegun, in relevant part, as "any weapon which shoots...automatically more than one shot, without manual reloading, by a single function of the trigger." ATF has long held that a "single function of the trigger" is a single "pull" or a single "release" of the trigger. Therefore, a firearm that fires a single projectile upon a pull of the trigger and then fires another single projectile upon the release of that trigger would not be classified as a "machinegun" under Federal law.



Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTISB finds that it is not a machinegun as defined under the NFA, 26 U.S.C. § 5845(b), or the Gun Control Act, 18 U.S.C. § 921(a)(23).

Please be advised that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Further, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, § 5845(b).

To facilitate the return of your sample, please provide FTB with the appropriate FedEx or similar account information within 60 days of receipt of this letter. If their return is not necessary, please fax FTB at (304) 616-4300 with authorization to destroy them on your behalf.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

Max M. Kingery
Acting Chief, Firearms Technology Industry Services Branch

503826



(b) (6) - Bump Fire Stock – NOT A MACHINEGUN

303826, SEPT 14, 2015

S00034

Page 1 of 1

7579G



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

ALM Stock                                              NOT In/Gun

*Martinsburg , West Virginia 25405*          903050: (b) (6)
www.atf.gov                                        3311/2011-502

**MAY 2 5 2011**

(b) (6)
Historic Arms, LLC
1486 Cherry Road
Franklin, Georgia 30217

Dea (b) (6)

This is in reference to your sample, as well as accompanying correspondence, which was
submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF). You have submitted this item, consisting of a Chinese, Type 56 (SKS) rifle
and a stock of your own manufacture, with a request for classification under the National
Firearms Act (NFA).

As you know, the NFA, 26 U.S.C. § 5845(b), defines the term "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person."*

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the
rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger
10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches
in length; a second block, approximately 3 inches long, 1 ½ inches wide, and ¾ inch high,
machined to allow the two guide rods of the first block to pass through; the second block
supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber
and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

**Exhibit B, Pg. 33**

-2-

(b) (6)

*two blocks assembled together with the composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the NFA, 26 U.S.C. 5845(b), and the ...[Gun Control Act: GCA]... 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosed photos) incorporates the following features or characteristics:

- A metal block which secures the SKS trigger mechanism to the remainder of the weapon (a function formerly accomplished by the weapons factory stock). A metal rod is attached and protrudes from the rear section of this metal block. This rod rides within a bushing inletted into the rear portion of your "ALM" stock.
- A second metal block which has been machined to allow the three guide rods located in the front portion of your stock to pass through it. This component serves as a support for the front portion of the SKS rifle and as an attachment to the modified stock.
- A forward hand guard/gripping surface which is attached to the bottom portion of the second metal block noted above.
- Lack of any operating springs, bands, or other devices which would permit automatic firing.

Your ALM stock is designed to allow the SKS rifle mounted within it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents the device from operating automatically as described in ATF Ruling 2006-2. When operated, forward pressure must be applied to the above noted forward hand-guard/gripping surface with the support hand, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the hand guard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the hand guard/gripping surface with the shooter's support hand, the SKS rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.



Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

-3-

(b) (6)

Please note that this classification is based on the item as submitted.  Any changes to its design features or characteristics will void this classification.  Moreover, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

FOIA 500054

75796

-4-

**(b) (6)**

Submitted device assembled:



-5-

(b) (6)

View of the three forward guide rods:



-6-

(b) (6)

Metal block which secures SKS rifle and rides over the guide rails pictured above:



-7-

(b) (6)

Metal block which secures trigger mechanism and metal rod which rides in bushing located in rear portion of the ALM stock:



Page 1 of 1

75796

-8-

(b) (6)





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*NOT m/gun*

*Martinsburg , West Virginia 25405*        90305 **(b) (6)**
www.atf.gov                                 3311/2012-196

APR 0 2 2012



Dear **(b) (6)**

This is in reference to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), requesting FTB to evaluate an accompanying stock and determine if its design would violate any Federal statutes.

As background information, the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), defines "**machinegun**" as—

"*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

The FTB evaluation confirmed that you have submitted a plastic shoulder stock designed to function on an AR-15 type rifle (see enclosed photos). For your stock to function in the manner intended, it has to be attached to an AR-15 type platform that is assembled with a collapsible-stock receiver extension. Along with the shoulder stock, you have submitted what you have identified as a "receiver module." This module is a plastic block approximately 1-5/16 inches high, about 1-3/8 inches long, and approximately 7/8-inch wide. Additionally, there are two extensions, one on each side, that are designed to travel in the two slots configured on the shoulder stock. The receiver module replaces the AR-15 pistol grip.

Further, the submitted custom shoulder stock incorporates a pistol grip. This grip section has a cavity for the receiver module to move forward and backward. Additionally, two slots have been cut for the receiver module extensions to travel in. The upper section of the shoulder stock is designed to encapsulate the collapsible receiver extension. Further, the custom stock is



designed with a "lock pin." When the handle on the lock pin is facing in the 3- to 9-o'clock positions, the stock is fixed and will not move; and when the handle on the lock pin is facing in the 12- to 6-o'clock positions, the stock is movable.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, the shoulder stock device will recoil sufficiently rearward to allow the trigger to mechanically reset. Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot, the firing of each shot being accomplished by a single trigger function. Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger finger on the firing hand, while maintaining constant pressure on the trigger itself.

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is **not** a machinegun as defined under the NFA, 26 U.S.C. 5845(b), or the Gun Control Act, 18 U.S.C. 921(a)(23).

Please be advised that our findings are based on the item as submitted. Any changes to its design features or characteristics **will void** this classification. Further, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, 5845(b).

To facilitate the return of your sample, to include the module, please provide FTB with the appropriate FedEx or similar account information within 60 days of receipt of this letter. If their return is not necessary, please fax FTB at 304-616-4301 with authorization to destroy them on your behalf.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



Custom Alternative Stock for AR-15 type rifle



76715



Custom Stock Installed on AR-15 type Rifle





**Exhibit B, Pg. 45**





16 11⊃



(b) (6)

Bump Fire Stock & Receiver Module – NOT A MACHINEGUN

7715 – APR 2, 2012



**Exhibit B, Pg. 47**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*not m/gun*

*Martinsburg , West Virginia 25405*     903050 (b) (6)
www.atf.gov                             3311/2007-415

**APR 2 0 2012**



Dea (b) (6)

This is in reference to your sample, as well as accompanying correspondence, which was
submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF). The sample, consisting of a mounting device designed for use with a
semiautomatic Browning 1919-pattern type firearm, was furnished to FTB with a request for
classification under Federal firearms laws.

As you know, the National Firearms Act (NFA), **26 U.S.C. § 5845(b)**, defines the term
**"machinegun"** as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person.*

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the
rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger
10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches
in length; a second block, approximately 3 inches long, 1 ⅜ inches wide, and ¼ inch high,
machined to allow the two guide rods of the first block to pass through; the second block
supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber
and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

(b) (6)

*two blocks assembled together with the composite stock) that is designed to attach to a firearm
and, when activated by a single pull of the trigger, initiates an automatic firing cycle that
continues until either the finger is released or the ammunition supply is exhausted, is a
machinegun under the NFA, 26 U.S.C. 5845(b), and the ...[Gun Control Act: GCA]... 18 U.S.C.
921(a)(23).*

The submitted device (also see enclosure) incorporates the following features or characteristics:

- A steel mount or cradle which accepts a Browning 1919 type firearm and is designed to
  be utilized with a standard, M2-type pintle and tripod.
- Two steel pins which secure the firearm to the cradle.
- Four roller assemblies, also secured by the above-mentioned steel pins, which allow the
  firearm to move laterally within the cradle.
- A trigger bar or trip lever which, when pulled, raises a trip which fires the firearm
  mounted in the cradle.
- A mount or cradle lacking any operating springs, bands, or other devices which would
  permit automatic firing.

With respect to your mount/cradle, FTB confirmed that it is designed to allow the Browning
1919 type semiautomatic firearm mounted to it to reciprocate back and forth in a linear motion.
The absence of an accelerator spring or similar component in the submitted device prevents it
from operating automatically as described in ATF Ruling 2006-2. When operated, forward
pressure must be applied by the non-firing hand to the rear portion of the 1919-type firearm
mounted in your device, bringing the receiver assembly forward to a point where the trip can
contact the trigger of the weapon. If sufficient forward pressure is not applied to the firearm with
the non-firing hand, the firearm can be fired in a conventional, semiautomatic manner since the
reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient*
amount of pressure is applied to the rear section of the firearm by the shooter's non-firing hand,
the Browning, 1919 semiautomatic firearm will come forward until the trigger re-contacts the
trip, which is being held in an elevated position by the trigger bar/trip lever manipulated by the
shooter's firing hand; this "re-contact" allows a subsequent shot to be fired. In this manner, the
shooter pushes the receiver assembly forward to fire each shot, each firing utilizing a single
function of the trigger. Letting go of the receiver or trigger bar/trip lever will halt this process.


Since your device does not initiate an automatic firing cycle by a single function of the trigger,
FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18
U.S.C. 921(a)(23).

-3-

**(b) (6)**

We caution that our findings are based on the item as submitted. Any changes to its design, features, or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in Ruling 2006-2 will result in the manufacture of a "machinegun" as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return your device.

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

959161



— 1919 semi-auto "bump fire" device.

(b) (6)

99961 — 2007-415 — APR 20, 2012 —













**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_NOT M/Gun_

*Martinsburg , West Virginia 25405*    903050 **(b) (6)**
www.atf.gov    3311/2012-079

**JUL 1 3 2012**

**(b) (6)**
Phoenix Technology, Ltd.
210 Progress Dr.
Burgaw, North Carolina 28425

Dear **(b) (6)**

This is in reference to your sample, as well as accompanying correspondence, which was
submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF). The sample, consisting of a replacement "bump fire" type stock designed for
use with a semiautomatic AK-pattern type rifle, was furnished to FTB with a request for
classification under Federal firearms laws. (As received, the left-side wall of this stock was
cracked.)

As you know, the National Firearms Act (NFA), **26 U.S.C. § 5845(b),** defines the term
**"machinegun"** as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,*
*automatically more than one shot, without manual reloading, by a single function of the trigger.*
*The term shall also include the frame or receiver of any such weapon, any part designed and*
*intended solely and exclusively, or combination of parts designed and intended, for use in*
*converting a weapon into a machinegun, and any combination of parts from which a*
*machinegun can be assembled if such parts are in the possession or under the control of a*
*person.*

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the
rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger*
*10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches*
*in length; a second block, approximately 3 inches long, 1 ½ inches wide, and ¾ inch high,*
*machined to allow the two guide rods of the first block to pass through; the second block*
*supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber*
*and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

(b) (6)

*two blocks assembled together with the composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the NFA, 26 U.S.C. 5845(b), and the ...[Gun Control Act: GCA]... 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosure) incorporates the following features or characteristics:

- A plastic block which is designed to be inserted into the rear section of a stamped AK-type receiver and secures the "burst stock" to the remainder of the weapon utilizing the factory tang of the AKM rifle. This block is attached to a pistol-like assembly which reciprocates within a hollow metal buffer-style tube attached to the rear section of your stock.
- A collapsible AR-15 style shoulder stock.
- An attached pistol grip assembly.
- Two screws used to secure your stock to the AKM rifle.
- The stock's lack of any operating springs, bands, or other devices which would permit automatic firing.

Your stock is designed to allow the AKM-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically as described in ATF Ruling 2006-2. When operated, forward pressure must be applied to the forward handguard/fore-end of the AKM rifle mounted to your stock with the support hand, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand, the AKM rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

-3-

**(b) (6)**

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item.

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*Martinsburg, WV*

www.atf.gov

APR 0 6 2017

907010:
3311/30



Dear (b) (6)

This refers to your correspondence, and sample AR15-type "Bump Fire Stock" to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), in which you ask for a review of your sample device and if it would be regulated by the provisions of the Gun Control Act of 1968 (GCA) or the National Firearms Act (NFA).

As background to our evaluation, the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" to include *any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive…[and]…the frame or receiver of any such weapon….*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" to mean–

*…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Your bump fire grip device consists of the following:

One AR-style pistol grip that it attached to and adjustable buttstock by a flat metal bar bent to contour to the buttstock. The pistol grip has two plastic pieces attached by small screws, one is the extension for resting your finger on while firing and the other is a shield to prevent the pistol grip from pinching the grip fingers of the firing hand.

(b) (6)

Your stock is designed to allow an AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTISB examination of the submitted device indicates that if as a shot is fired—and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTISB finds that it is NOT a machinegun under the NFA, 26 U.S.C. § 5845(b), or the amended GCA, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).



Submitted device

304609

(b) (6)



Your device will be returned to you via your provided UPS shipping label.

We thank you for your inquiry and trust the foregoing is responsive to your request.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch

304609

/ Bump Fire Stock – NOT A MACHINEGUN



(b) (6)

304609 – APR 6, 2017 –







**Exhibit B, Pg. 58**



**U.S. Department of Justice**          7(6(93)

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg, West Virginia 25405*          903050 (b) (6)
www.atf.gov          3311/2012-174

**JAN 1 2 2012**



Dear (b) (6)

This is in reference to your correspondence, dated November 9, 2011, to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Your letter was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for reply. In your letter, you ask that ATF (re)classify the SSAR-15 slide-fire stock as a machinegun, and also inquire regarding the position of ATF on the second amendment to the U.S. Constitution.

Concerning the second amendment, ATF is the primary agency responsible for enforcing the Federal firearms laws, which are not intended to conflict with this amendment. Our mission is to prevent terrorism, reduce violent crime, and protect the public. With respect to firearms, ATF works to take armed, violent offenders off the streets and to ensure criminals and other prohibited persons do not possess firearms. Further, the stated purpose of the Gun Control Act (GCA) is as follows:

*PURPOSE*
*Sec. 101. The Congress hereby declares that the purpose of this title is to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law abiding citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title.*

With regard to the status of the SSAR-15 slide-fire stock, we can inform you that the original FTB evaluation of this device confirmed that the slide-fire stock attaches to the rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply

-2-

76693



constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand.  Accordingly, we found that the slide-fire stock is a firearm part and is not regulated as a firearm under GCA or the National Firearms Act.

In the interest of refraining from placing any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and in the absence of any information that a reclassification of the device in question would prevent terrorism, reduce violent crime, and protect the public, we currently find no reason to revise our classification.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

301627



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov

903050 (b) (6)
3311/301627

AUG 2 4 2014



Dear (b) (6) ,

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for response. In your correspondence, you inquire about the legality of a bump fire device commonly referred to as a bump stick.

The, National Firearms Act (NFA), 26 U.S.C. Section 5845(b), defines **"machinegun"** as—

> *"...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."*

In your correspondence, you ask if a dimensional piece of lumber that has a dowel or cylindrical shaped pipe inserted horizontally (protruding through both sides) can be manufactured, used and distributed for profit. The above described device is designed to aid in the rapid firing of a semi-automatic firearm. You state that the device works in the following manner:

The shooter will place the dimensional piece of wood in his/her shoulder; next, the shooter will grasp one side of the horizontal rod with their non- firing hand and then insert the semi-automatic firearm's trigger guard over the opposite side of the dowel rod.

301627

By placing forward pressure on the semi-automatic firearm until the trigger contacts the dowel rod causing the firearm to discharge. Next, the firearm recoils sufficiently rearward to allow the trigger to mechanically reset.  Continued forward intermediate pressure applied to the firearm will then push the firearm forward until the trigger re-contacts the dowel rod and allowing a subsequent shot to be fired.  *In this manner, the shooter pushes the firearm forward to fire each shot so that the action of firing is accomplished by a single trigger function.*  Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the firearm and timing it to contact the dowel rod mounted on the dimensional piece of wood.

Any device that is operated manually and  incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, would  not  meet the definition of machinegun as defined in NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

In conclusion, please understand that FTB cannot render a classification without performing a physical examination that confirms the devices actual mode of operation.

We trust the foregoing has been responsive to your request.

Sincerely yours,

Michael Griffith

Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV  25405_
www.atf.gov

JUN 2 9 2015     907010
                 3311/303195



Dea(b) (6)

This is in reference to your sample, as well as accompanying correspondence, which was
submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms
Technology Industry Services Branch (FTISB), for classification under Federal firearms laws.
The sample—which is marked "Chuckbuster"—consists of a replacement "bump-fire" type grip
assembly designed for use with a semiautomatic AR- type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term
**"machinegun"** as—

_...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,_
_automatically more than one shot, without manual reloading, by a single function of the trigger._
_The term shall also include the frame or receiver of any such weapon, any part designed and_
_intended solely and exclusively, or combination of parts designed and intended, for use in_
_converting a weapon into a machinegun, and any combination of parts from which a_
_machinegun can be assembled if such parts are in the possession or under the control of a_
_person._

The submitted device (see enclosed photos) incorporates the following features or
characteristics:

• A plastic, three-piece housing AR-type, replacement grip assembly; that is designed to be
installed on an AR-type firearm.

• A "plastic insert" containing a series of grooves to allow linear movement of the "two-piece
housing"; which is assembled by three screws; while it is installed to the receiver of an AR-type
firearm.



Page 2

• Lack of any operating springs, bands, or other parts which would permit automatic firing.

Your grip is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion.  The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically.  When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your grip, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand.

If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional manner since the reciprocation of the receiver assembly is eliminated.

The FTISB examination of the submitted device indicates that once a shot is fired—and a sufficient amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly moves forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: This re-contacting allows the firing of a subsequent shot.  In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

FTISB has determined your device does not initiate an automatic firing cycle by a single function of the trigger, when assembled  to an AR-type rifle; therefore it is not a "machinegun" as defined in the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted.  Any changes to its design features or characteristics or assembled to firearms other than described will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely,

Max Kingery
Acting Chief, Firearms Technology Industry Services Branch

Enclosure

"Chuckbuster" Grip Assembly Submitted by (b) (6) on February 18, 2015



303195







303195



**Exhibit B, Pg. 69**





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg, WV 25405*

www.atf.gov

JAN 1 4 2014

903050: **(b) (6)**
3311/301592



Dear **(b) (6)**

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), for a new classification under Federal firearms laws. The sample—which you call "the Hailstorm"—consists of a replacement "bump-fire" type stock designed for use with a semiautomatic AR-15 type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as—

*…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The submitted device (see enclosed photos) has the following features or characteristics:

- A plastic, adjustable AR-type buttstock "anchor tube" that is designed to be installed onto the buffer tube of an AR-type firearm and, also, to house the "stabilizer bar."
- A "stock adjusting screw" to prevent linear movement of the "anchor tube" while it is installed to the buffer tube.
- Lack of any operating springs, bands, or other parts which would permit automatic firing.

**Exhibit B, Pg. 71**



Your stock is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of your current device indicates that if a shot is fired—and a *sufficient* amount of pressure is simultaneously applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, and each succeeding shot fires with a single trigger function.

Since this sample does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request. Your sample will be returned via the accompanying U.S. Postal Service label and postage.

Sincerely yours,

for
Earl Griffith
Chief, Firearms Technology Branch



(b) (6)

"Hailstorm" Stock submitted by 12/6/2013



"Hailstorm" stock Assembled to an AR-type Firearm



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226

The Honorable Robert B. Aderholt          NOV 21 ᵗᵗᵗ
Member of Congress
600 Broad Street
107 Federal Building
Gadsden, Alabama 35901

Dear Congressman Aderholt:

This is in response to your letter dated October 24, 2011, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF), on behalf of your constituent **(b) (6)**
**(b) (6)** expressed his concern that the newly manufactured Slide Fire Solutions plastic
stock (SSAR-15) that attaches onto the buffer-tube assembly of an AR-type semiautomatic rifle
should be unlawful to manufacturer and possess.

The National Firearms Act (NFA) of 1934, Title 26, United States Code 5845(b), defines
"machinegun" as: "any weapon which shoots, is designed to shoot, or can be readily restored to
shoot, automatically more than one shot, without manual reloading, by a single function of the
trigger. The term shall also include the frame or receiver of any such weapon, any part designed
and intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machine gun, and any combination of parts from which a machine gun
can be assembled if such parts are in the possession or under the control of a person."

The Slide Fire Solutions stock attaches to the rear of an AR-15 type rifle which has been fitted
with a buffer-tube assembly of the sliding shoulder-stock variety. The stock has no automatically
functioning mechanical parts or springs and performs no automatic mechanical function when
installed. In order to use the installed device, the shooter must apply constant forward pressure
with the non-shooting hand and constant rearward pressure with the shooting hand. The trigger
resets after each round is fired and thus does not meet the definition of machinegun provided
above. Accordingly, this stock is classified as a "bump-stock"; its status is that of a firearm part
not subject to regulation under Federal firearms laws including NFA provisions.

We hope this information proves helpful in responding to your constituent. Please let us know if
we can be of further assistance.

Sincerely yours,

Gregory K. Gant
Assistant Director
Public and Governmental Affairs

# Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAMIEN GUEDUES**, *et al.*, | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | Case No. 1:18-cv-02988-DLF |
| **v.** | : | |
| | : | Judge Friedrich |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS, AND EXPLOSIVES**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

| | | |
|---|---|---|
| **FIREARMS POLICY COALITION, Inc.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | Case No. 1:18-cv-03083-DLF |
| **v.** | : | |
| | : | Judge Friedrich |
| **MATTHEW WHITAKER**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>VERIFIED DECLARATION OF RICHARD (RICK) VASQUEZ</u>

I, Richard (Rick) Vasquez, am competent to state and declare the following based on my training, experience, personal knowledge and prior qualification by the federal court as an expert:

1. As reflected in Exhibit 32 of Exhibit A to the Amended Complaint, I am a former employee of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), where over my 14 year tenure, I held the titles of senior Technical Expert,

Assistant Chief of the Firearms Technology Branch ("FTB") Acting Chief of the FTB, and Acting Chief of the Firearms Training Branch.

2.  In these roles, I was responsible for evaluating firearms, non-firearms, and firearm accessories, consistent with the Standard Operating Procedures of the FTB, and making determinations on whether a particular item constituted a firearm, non-firearm or merely a firearm accessory.  Additionally, I provided instruction on definitions of firearms in the Gun Control Act and the National Firearms Act, for ATF.

3.  I attended oral argument on February 6, 2019 in this matter.

4.  After the enactment of the Firearm Owners Protection Act in 1986 in or about September of 1989, the ATF Chief Counsel's Office issued a legal opinion to the FTB on what constituted a "single function of the trigger."

5.  In the legal opinion issued by the ATF Chief Counsel's Office, contrary to the Government's argument in this matter, it determined that pursuant to the definition of machinegun enacted by the Congress, for a firearm to constitute a machinegun, it had to fire more than one round – or otherwise, continuously – when the trigger was pulled and held to the rear.

6.  The legal opinion further determined that if the trigger had to be mechanically reset before a subsequent round could be fired, the firearm could not constitute a machinegun, as that constituted a separate function of the trigger, and that the proper analysis of "single function of the trigger," based upon the intent of Congress and statutory language, could only be from a mechanical standpoint.

7.  The legal opinion also stated that a "single function of the trigger" meant a single "movement" of the trigger, regardless of whether the movement was the pull or release of the trigger, each of which were a separate "single function of the trigger".

8.  In summation, the legal opinion held that a firearm would only be classified as a machinegun *only* if each movement of the trigger resulted in more than one shot being fired.

9.  This legal opinion was binding on FTB and was the standard employed in all determinations issued by ATF, prior to the Final Rule.

10. In relation to the Akins Accelerator, it was initially not classified as a machinegun because a non-working sample was submitted for evaluation, which precluded FTB from being able to test the device for functionality. In fact, at the time that the Akin Accelerator entered the market, FTB still had not been provided a functioning sample to evaluate.

11. After the Akins Accelerator entered the market, a request was made by a third-party to evaluate a working sample. Due to concern over whether or not the device operated "automatically" and with a "single function of the trigger," the Chief Counsel's Office and FTB were directed to brief Acting Director Michael Sullivan.

12. In attendance at the briefing were Acting Director Sullivan, Theresa Ficaretta, Esq., James Vann, Esq., Michael Curtis (from FTB) and myself.

13. During the briefing, the Chief Counsel's Office provided a written brief and a PowerPoint presentation, which discussed "automatically" and "single function of

a trigger." The brief and PowerPoint presentation, based on the intent of Congress

and the statutory text, detailed how even the Akins Accelerator was not a

machinegun. However, Acting Director Sullivan decided, against the advice of

the Chief Counsel's Office, to declare the Akins Accelerator a machinegun.

14.  It is my belief and understanding that the written brief and PowerPoint

presentation of the Chief Counsel's Office, as well as other communications and

determinations on "automatic" and "single function of the trigger," still exist

within ATF and were never mentioned nor address during the rulemaking in this

matter or the Final Rule.

\*        \*        \*

I declare under penalty of perjury that the foregoing is true and correct.  Executed

on February 8, 2019.

_____

Richard Vasquez