## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMIEN GUEDES, *et al.,* | |
| Plaintiffs, | |
| v. | Case No.  1:18-cv-02988-DLF |
| BUREAU OF ALCOHOL, TOBACCO FIREARMS, AND EXPLOSIVES ("ATF"), *et al.,* | Judge Friedrich |
| Defendants. | |

| | |
|---|---|
| FIREARMS POLICY COALITION, Inc., | |
| Plaintiff, | |
| v. | Case No.  1:18-cv-03083-DLF |
| WILLIAM P. BARR, *et al.,* | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants, through their undersigned counsel, respectfully move to dismiss Plaintiff's Second Amended Complaint, ECF No. 43.  As set forth in Defendants' Memorandum of Law, this case should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 9, 2019                     Respectfully submitted,

                                       JOSEPH H. HUNT
                                       Assistant Attorney General

                                       HASHIM M. MOOPPAN
                                       JAMES M. BURNHAM
                                       Deputy Assistant Attorneys General

                                       CHRISTOPHER R. HALL
                                       Assistant Branch Director

                                       /s/ *Chetan A. Patil*
                                       CESAR A. LOPEZ-MORALES
                                       CHETAN A. PATIL
                                       REBECCA CUTRI-KOHART
                                       Trial Attorneys
                                       Federal Programs Branch
                                       U.S. Department of Justice, Civil Division
                                       P.O. Box No. 883
                                       Ben Franklin Station
                                       Washington, DC 20044
                                       Telephone: (202) 305-4968
                                       Fax: (202) 616-8470
                                       Email: chetan.patil@usdoj.gov
                                       *Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAMIEN GUEDES, *et al.*,

          Plaintiffs,

     v.

BUREAU OF ALCOHOL, TOBACCO
FIREARMS, AND EXPLOSIVES ("ATF"),
*et al.*,

         Defendants.

Case No.  1:18-cv-02988-DLF

Judge Friedrich

FIREARMS POLICY COALITION, Inc.,

         Plaintiff,

     v.

WILLIAM P. BARR, *et al.*,

         Defendants.

Case No.  1:18-cv-03083-DLF

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

LEGAL BACKGROUND .........................................................................................................2

FACTUAL BACKGROUND.....................................................................................................4

PROCEDURAL HISTORY........................................................................................................5

LEGAL STANDARD ................................................................................................................7

ARGUMENT..............................................................................................................................7

I.        PLAINTIFF LACKS STANDING TO CHALLENGE THE ALLEGED FVRA
          POLICY BECAUSE IT HAS NOT IDENTIFIED AN INJURY IN FACT THAT IS
          FAIRLY TRACEABLE TO DEFENDANTS' ALLEGED USE OF THE POLICY...........7

II.       PLAINTIFF'S CLAIM RELATING TO THE FINAL RULE FAILS FOR LACK
          OF STANDING AND BECAUSE THE RULE WAS VALIDLY RATIFIED.................13

          A.       Attorney General Barr's Ratification of the Final Rule Cured Any Asserted
                   Theoretical
                   Defect in Acting Attorney General Whitaker's Authority...............................13

          B.       The Declaratory Relief Plaintiff Seeks Would Do Nothing to Redress Its
                   Alleged Injury and Amounts to an Impermissible Advisory Opinion........................14

III.      WHITAKER'S DESIGNATION WAS LAWFUL...................................................17

CONCLUSION.........................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*Advanced Disposal Serv. E. v. NLRB,*
    820 F.3d 592 (3d Cir. 2016) ...............................................................................17

*Armstrong v. Exceptional Child Center, Inc.,*
    135 S. Ct. 1378 (2015)........................................................................................12

*Armstrong World Indus., Inc. ex rel. Wolfson v. Adams,*
    961 F.2d 405 (3d Cir. 1992) ...............................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................7

*Ashcroft v. Mattis,*
    431 U.S. 171 (1977) ............................................................................................16

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ..................................................................................................2

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) ............................................................................................18

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ................................................................................................9

*City of New York v. U.S. Dep't of Def.,*
    913 F.3d 423 (4th Cir. 2019) ..............................................................................13

*\*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..............................................................................................9

*Conf. of State Bank Supervisors v. OCC,*
    313 F. Supp. 3d 285 (D.D.C. 2018) ......................................................................7

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ..............................................................................................8

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ..............................................................................................8

*Deaf Smith Cty. Grain Processors, Inc. v. Glickman,*
    162 F.3d 1206 (D.C. Cir. 1998) ..........................................................................16

*Dearth v. Holder,*
641 F.3d 499 (D.C. Cir. 2011) ........................................................................................9

*Discover Bank v. Vaden,*
396 F.3d 366 (4th Cir. 2005) ........................................................................................10

*Doolin Sec. Sav. Bank, FSP v. Office of Thrift Supervision,*
139 F.3d 203 (D.C. Cir. 1998) ......................................................................................14

*English v. Trump,*
279 F. Supp. 3d 307 (D.D.C. 2018) ..............................................................................18

*Erby v. United States,*
424 F. Supp. 2d 180 (D.D.C. 2006) ................................................................................7

*Fed. Election Comm'n v. Legi-Tech, Inc.,*
75 F.3d 704 (D.C. Cir. 1996) ........................................................................................17

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,*
463 U.S. 1 (1983) ..........................................................................................................10

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ................................................................................................11, 12

*Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.,*
527 U.S. 308 (1999) ......................................................................................................12

*\*Guedes v. ATF,*
356 F. Supp. 3d 109 (D.D.C. 2019) ................................................................1, 5, 13, 18

*\*Guedes v. ATF,*
920 F.3d 1 (D.C. Cir. 2019) ............................................................................1, 6, 14, 17

*Hall & Assocs. v. U.S. EPA,*
210 F. Supp. 3d 13 (D.D.C. 2016) ................................................................................18

*Hawkins v. Wash. Metro. Area Transit Auth.,*
311 F. Supp. 3d 94 (D.D.C. 2018) ..................................................................................7

*Hewitt v. Helms,*
482 U.S. 755 (1987) ......................................................................................................15

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
796 F.3d 111 (D.C. Cir. 2015) ......................................................................................14

*Int'l Coal. for Religious Freedom v. Maryland,*
3 F. App'x 46 (4th Cir. 2001) ........................................................................................16

*Int'l Refugee Assistance Project v. Trump*,
   857 F.3d 554 (4th Cir. 2017."), *vacated and remanded*, 138 S. Ct. 353 (2017) ........................12

*Lewis v. Casey*,
   518 U.S. 343 (1996) ........................................................................................................8

*Lucia v. SEC*,
   138 S. Ct. 2044 (2018) ....................................................................................................2

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................8, 9, 15

*Maryland v. United States*,
   360 F. Supp. 3d 288 (D. Md. 2019) ................................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ......................................................................................................10

*Mississippi v. Johnson*,
   71 U.S. 475 (1866) ........................................................................................................11

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ....................................................................................12

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ......................................................................................................12

*NLRB v. SW Gen., Inc.*,
   137 S. Ct. 929 (2017) ......................................................................................................2

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ........................................................................................................13

*Raines v. Byrd*,
   521 U.S. 811 (1997) ........................................................................................................8

*Seven Words LLC v. Network Solutions*,
   260 F.3d 1089 (9th Cir. 2001) ......................................................................................16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................8, 9

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ..................................................................................................8, 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
   301 F. Supp. 3d 50 (D.D.C. 2018) ................................................................................16

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998) ............................................................................................ 9, 10

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ................................................................................12

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
330 U.S. 75 (1947) ................................................................................................16

*United States v. Peters*,
No. 6:17-CR-55-REW-HAI-2, 2018 WL 6313534 (E.D. Ky. Dec. 3, 2018) ...................18

*United States v. Santos-Caporal*,
No. 1:18-CR-171-AGF-ACL, 2019 WL 468795 (E.D. Mo. Jan. 9, 2019) ......................18

*United States v. Smith*,
No. 1:18-CR-00015-MR-WCM, 2018 WL 6834712 (W.D.N.C. Dec. 28, 2018) .............18

*United States v. Valencia*,
No. 5:17-CR-882-DAE(1)(2), 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018),
*appeal filed*, No. 18-51108 (5th Cir. Dec. 3, 2018) .................................................18

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ................................................................................................9

*Virginians Against a Corrupt Congress v. Moran*,
805 F. Supp. 75 (D.D.C. 1992) ...............................................................................16

*Wilkes-Barre Hosp. Co. v. NLRB*,
857 F.3d 364 (D.C. Cir. 2017) ...............................................................................14

*Wisconsin* v. *Torinus*,
49 N.W. 259 (Minn. 1879) .....................................................................................17

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ...........................................................................................12

## CONSTITUTION

U.S. Const. art. II, § 2, cl. 2 ......................................................................................2

## STATUTES

5 U.S.C. § 551 ......................................................................................................13

5 U.S.C. § 702 .................................................................................................13, 16

5 U.S.C. § 3345 ..........................................................................................3, 10, 11

5 U.S.C. § 3347 ......................................................................................................4

5 U.S.C. § 3347 (1994) ...........................................................................................3

5 U.S.C. § 3348 ......................................................................................................3

5 U.S.C. § 3349c ....................................................................................................4

18 U.S.C. § 922 ......................................................................................................4

28 U.S.C. § 508 ...........................................................................................3, 5, 18

Act of July 23, 1868, ch. 227 § 1, 15 Stat. 168 (1868) ........................................3

Rev. Stat. § 179 (1st ed. 1875) ..............................................................................3

Rev. Stat. § 179 (2d ed. 1878) ...............................................................................3

**RULES**

Fed. R. Civ. P. 12 ..................................................................................................7

Fed. R. Civ. P. 25 ..................................................................................................5

**REGULATIONS**

28 C.F.R. § 0.25(a) ..............................................................................................11

Bump-Stock Type Devices,
    83 Fed. Reg. 66514 (Dec. 26, 2018) .............................................................1, 4

Bump-Stock Type Devices,
    84 Fed. Reg. 9239 (Mar. 14, 2019) .............................................................5, 13

**OTHER AUTHORITIES**

Floyd R. Mechem, Law of Agency § 535, at 349-50 (1914) ...............................17

## **INTRODUCTION**

In denying the  motion for preliminary injunction by Plaintiff Firearms Policy Coalition, Inc., this Court held that the former designation of Acting Attorney General Matthew Whitaker pursuant to the Federal Vacancies Reform Act ("FVRA") was lawful both as a statutory and constitutional matter. *Guedes v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019).  Plaintiff appealed, and the D.C. Circuit affirmed, holding that even if Whitaker's designation was invalid, the ratification of the Final Rule at issue, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018), by Attorney General William P. Barr provided sufficient authority for the Rule's issuance. *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019).

Recognizing that those decisions present insuperable obstacles for its challenge to the Final Rule, Plaintiff has changed tacks.  It no longer argues that the Rule is invalid and does not seek to enjoin it.  Instead—and not withstanding this Court's decision upholding the validity of Whitaker's designation—Plaintiff has created from whole cloth two contrived theories by which it believes it can still challenge Whitaker's designation, even though Whitaker is no longer in office and has taken no action that is causing any actual or imminent harm to Plaintiff.  First, Plaintiff alleges the existence of a "policy" of using the President's authority under the FVRA to designate senior employees like Whitaker as acting principal officers, and seeks broad injunctive and declaratory relief against the use of that policy.  Second, Plaintiff alleges that it was injured between the Rule's allegedly invalid issuance and its concededly valid ratification and argues that this past injury entitles it to a declaration that Whitaker was invalidly designated.

Plaintiff's fabricated theories fall apart at the seams.  Its challenge to an imagined FVRA policy fails because the Second Amended Complaint has not identified any injury stemming from the alleged policy itself, sufficient to satisfy Article III's case-or-controversy requirement.  Even if it had, Plaintiff's injury would not be fairly traceable to Defendants' conduct, as the President alone has the exclusive authority to designate acting agency heads under the FVRA.  But Plaintiff has not and, in

fact, could not have sued the President, as this Court lacks jurisdiction to issue injunctive or declaratory relief binding the President in the exercise of his statutory authority under the FVRA. Moreover, its challenge to the Final Rule is meritless, both because the declaratory relief Plaintiff seeks is an advisory opinion that would not redress any alleged injury, including the divestment of its bump stock, and because the Rule's ratification validated it as of the time it was issued regardless of whether Whitaker had authority to promulgate it. Finally, though the Court need not reach the issue of Whitaker's authority, there would be no basis for the Court to deviate from its sound decision upholding the statutory and constitutional validity of Whitaker's designation. For these reasons, the Second Amended Complaint should be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

## **LEGAL BACKGROUND**

The Appointments Clause of the U.S. Constitution prescribes the method of appointment for all "Officers of the United States" whose appointments are not otherwise provided for in the Constitution. *See Buckley v. Valeo*, 424 U.S. 1, 125-26, 132 (1976) (per curiam). "Officers" are those persons who hold a "continuing and permanent" federal position and exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citation omitted). The President, with the advice and consent of the Senate, nominates principal officers. Congress may vest the power to select "inferior Officers," however, "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Neither the Appointments Clause nor any other provision of the Constitution expressly addresses whether and in what circumstances an individual may serve temporarily in an acting capacity for a principal officer.

Since 1792, Congress has provided for the designation of non-confirmed persons to serve temporarily as acting principal officers. *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017). In 1868, Congress enacted the Vacancies Act, which set a default rule that in the case of a vacancy "of

the head of any executive department of the government, the first or sole assistant thereof shall . . . perform the duties of such head." Act of July 23, 1868, ch. 227 § 1, 15 Stat. 168 (1868). The Act also authorized the President to bypass the "first assistant" and designate a different official. *See id.*

Congress also has enacted myriad agency-specific vacancy statutes, including 28 U.S.C. § 508(a). Section 508(a) provides that in the case of vacancy in the office of Attorney General, "the Deputy Attorney General may exercise all the duties of that office," and for the purpose of the Vacancies Act—and now the FVRA—the Deputy Attorney General is the first assistant to the Attorney General. If both offices are vacant, "the Associate Attorney General shall act as the Attorney General," and "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General." *Id.* § 508(b). Notably, the President's authority under the Vacancies Act to bypass the statute's default rule was expressly made inapplicable "to a vacancy in the office of Attorney General." 5 U.S.C. § 3347 (1994); *see* Rev. Stat. § 179 (1st ed. 1875); Rev. Stat. § 179 (2d ed. 1878).

In 1998, Congress enacted the FVRA, 5 U.S.C. §§ 3345-3349d, to replace the Vacancies Act. The FVRA provides three options for designating an acting official to perform the duties of a vacant office that is subject to Senate confirmation. First, absent any presidential designation, the "first assistant" to the vacant office shall perform its functions and duties." *Id.* § 3345(a)(1). Second, the President may depart from that default course by designating another Senate-confirmed official. *Id.* § 3345(a)(2). And third, the President may designate an officer or employee within the same agency to perform the vacant office's functions and duties, provided that he or she has been in the agency for at least 90 days in the 365 days preceding the vacancy, in a position for which the rate of pay is equal to or greater than the minimum rate for GS-15 of the General Schedule. *Id.* § 3345(a)(3). This third option is available even where the vacant office is the agency head. *Cf. id.* § 3348(b)(2).

The FVRA also explains how it intersects with office-specific vacancy statutes.  The FVRA provides that it is the "exclusive means for temporarily authorizing an acting official," unless a "statutory provision expressly . . . authorizes" the President, a court, or the head of a Department to designate an acting official or "designate[s] an officer or employee" to serve as the acting official. *Id.* § 3347(a)(1).  The FVRA further identifies specific offices to which the statute "shall not apply." *Id.* § 3349c.  Unlike the Vacancies Act, the FVRA does not contain any provision explicitly making the President's authority under the FVRA inapplicable to the office of Attorney General.

## FACTUAL BACKGROUND

On October 1, 2017, rifles with attached "bump stocks"—firearms attachments that permit semi-automatic rifles to function as machine guns—were used in a horrific crime in Las Vegas, Nevada, in which hundreds of rounds of ammunition were rapidly fired at a large crowd attending an outdoor concert, killing 58 people and wounding approximately 500.  After the attack, on instruction from the President, the Department of Justice issued a notice of proposed rulemaking to amend the regulatory definition of "machinegun" to ensure that bump stocks are not used to circumvent 18 U.S.C. § 922(o), the statute prohibiting the manufacture and sale of new machine guns to the public. The resulting Rule was announced on December 18, 2018, by then-Acting Attorney General Matthew Whitaker and published on December 26, 2018. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514.  The Rule clarifies that bump stocks are machine guns subject to § 922(o) and instructs "current possessors" of bump stocks "to undertake destruction of the devices" or to "abandon [them] at the nearest ATF office" by the Rule's effective date. *Id.* at 66530.  The Rule specified that it would go into effect on March 26, 2019. *Id.* at 66514.

Matthew Whitaker was expressly designated by the President, pursuant to the FVRA, as Acting Attorney General after the resignation of Attorney General Jefferson B. Sessions III on November 7, 2018.  Whitaker served as Acting Attorney General until William P. Barr was appointed with the

Senate's consent on February 15, 2019.  On March 11, 2019, Attorney General Barr ratified the Rule after "familiariz[ing] [him]self with the rulemaking record" and "reevaluat[ing] those materials without any deference" to the prior decision.  *See Bump-Stock-Type Devices*, 84 Fed. Reg. 9239 (Mar. 14, 2019).

## PROCEDURAL HISTORY

This case is the progenitor of a series of cases brought by Plaintiff's counsel to contest the statutory and constitutional validity of Whitaker's designation via a challenge to the Final Rule.[1] Plaintiff moved for a preliminary injunction, arguing that that (i) Whitaker's designation violated the FVRA because it conflicted with the Attorney-General vacancy statute, 28 U.S.C. § 508, and (ii) that, if upheld under the FVRA, the designation would violate the Appointments Clause because Whitaker was not the "first assistant" to the Attorney General and because, as chief of staff, he was a senior federal employee and not an officer.  *See* Pl.'s Mot. for Prelim. Inj., *Firearms Policy Coalition, Inc. v. Barr*, No. 18-cv-3083 (D.D.C), ECF No. 2.  This Court denied that motion on February 25, 2019, holding, in relevant part, that Whitaker's designation was lawful both under the FVRA and the Appointments Clause.  *Guedes*, 356 F. Supp. 3d at 137-55.

---

[1] In addition to this case, parties represented by Plaintiff's counsel filed three actions in different district courts raising the same arguments that Plaintiff has raised here.  *See* Compl., *Patrick v. Barr*, No. 5:19-cv-0052 (E.D.N.C. Feb. 20, 2019), ECF No. 1; Compl., *Koster v. Barr*, No. 2:19-cv-1173 (D. Ariz. Feb. 20, 2019), ECF No. 1; Compl., *Kajmowicz v. Barr*, No. 2:19-cv-00187 (W.D. Pa. Feb. 21, 2019), ECF No. 1.  Those cases are all still pending and, after amending their complaints, the plaintiffs there raise identical arguments to those raised here.  Defendants are also moving to dismiss those complaints on the same grounds as here.  Plaintiff's counsel has also sought to challenge Whitaker's designation through other vehicles, including Fed. R. Civ. P. 25(d)'s automatic substitution provision for public officers, the obscure writ of quo warranto, objections to the conduct of unrelated litigation by the Department of Justice, and a request to be appointed *amicus curiae* to the Foreign Intelligence Surveillance Court.  *See Maryland v. United States*, 360 F. Supp. 3d 288, 317-20 (D. Md. 2019); Mot. to Substitute, *Michaels v. Whitaker*, No. 18-496 (U.S. Nov. 16, 2018); Compl., *Michaels v. Barr*, No. 1:18-cv-02906-RDM (D.D.C. Dec. 11, 2016); *In re Appointment of Thomas C. Goldstein as* Amicus Curiae *Pursuant to 50 U.S.C. § 1803(i)(2)(B)* (U.S. Foreign Int. Surveillance Court, D.C.) (Dec. 7, 2018).  None of these challenges were successful, including in some cases because counsel withdrew his requests for relief.

Plaintiff appealed that decision to the D.C. Circuit, and while the appeal was pending, Attorney General Barr ratified the Rule.  Immediately after oral argument, Plaintiff moved to voluntarily dismiss its own appeal "in order to secure a final judgment" before this Court "and to then appeal from that judgment."  Mot. to Voluntarily Dismiss Interlocutory Appeal at 1, *FPC v. ATF*, No. 19-5043 (D.C. Cir.), Doc. #1779005.  Although the D.C. Circuit granted Plaintiff's motion, one of the other plaintiffs in the consolidated appeal "presse[d] the same challenge to Whitaker's authority to promulgate the Rule" and had incorporated Plaintiff's arguments by reference.  *Guedes v. ATF*, 920 F.3d at 10.  As a result, the D.C. Circuit was fully presented with Plaintiff's arguments when it affirmed the denial of the preliminary injunction, holding that the ratification of the Rule cured any alleged defect in Whitaker's authority as Acting Attorney General, thereby obviating the need to address the validity of Whitaker's designation.  *See id.* at 12-13.

After dismissal, Plaintiffs sought leave to file a Second Amended Complaint.  (ECF No. 39).  In the Second Amended Complaint, Plaintiff now asserts two variations on its prior theme.  First, despite its prior assertions that Whitaker's designation was "unprecedented," Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 25, *Firearms Policy Coal., Inc.*, ECF No. 2-1, Plaintiff now seeks injunctive and declaratory relief against an alleged "explicit executive policy of using the FVRA to designate an employee like Mr. Whitaker as any officer, including a principal officer, and even when the principal officer's first assistant is available to serve and an office-specific designation statute automatically designated the first assistant to act" as the acting principal officer.  Second Am. Compl. ("SAC") ¶ 13, ECF No. 44.  Second, although Plaintiff does not allege that the Rule is now invalid, it seeks a declaration that it was invalid for a short period in the past—between its issuance and its ratification— due to Whitaker's allegedly improper designation.  *Id.* at 9-10 (request for relief).  Plaintiff seeks a broad declaration that: (i) Whitaker lacked statutory and constitutional authority to issue the Final

Rule; (ii) the Final Rule was invalid between December 26, 2018 and March 11, 2019; (iii) Plaintiff was harmed at the moment of the Rule's issuance; and (iv) ratification does not cure that past harm. *Id.*

For the reasons stated below, this Court should dismiss the Second Amended Complaint.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1). *See, e.g.*, *Conf. of State Bank Supervisors v. OCC*, 313 F. Supp. 3d 285, 294 (D.D.C. 2018) (Friedrich, J.). Defendants here make a facial challenge to jurisdiction, as, even assuming the allegations in the Amended Complaint were true, they would be insufficient to establish Article III standing for Plaintiff's claims. *See, e.g.*, *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006).

In addition, under Rule. 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege enough facts to state a claim for relief that is facially plausible. *See, e.g.*, *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 100 (D.D.C. 2018). Although a court must construe the complaint in the plaintiff's favor, "[c]onclusory allegations . . . are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as 'they plausibly give rise to an entitlement of relief.'" *Id.* at 100-01 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ARGUMENT

I. **PLAINTIFF LACKS STANDING TO CHALLENGE THE ALLEGED FVRA POLICY BECAUSE IT HAS NOT IDENTIFIED AN INJURY IN FACT THAT IS FAIRLY TRACEABLE TO DEFENDANTS' ALLEGED USE OF THE POLICY.**

Plaintiff alleges that the "government" has a "policy" of using the FVRA "to designate a non-Senate confirmed officer . . . to act as a principal officer during an absence or vacancy when that officer's 'first assistant' is available to serve" and "an office-specific designation statute automatically

designate[s] the first assistant to act during the absence or vacancy." SAC ¶¶ 1, 13.  Plaintiff's challenge to an imagined policy should be dismissed because Plaintiff lacks standing.  it has not identified any concrete injury arising from the alleged policy.  And, even if it had, such an injury would not be fairly traceable to any conduct by Defendants, as the only person who can adopt and implement a "policy" concerning the designation of acting agency heads pursuant to the FVRA is the President and federal courts lack jurisdiction to enter relief that binds the President in the performance of his official duties.

A core element of Article III's case-or-controversy requirement is that a plaintiff must establish his or her standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."  *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).  The "irreducible constitutional minimum of standing contains three elements."  *Lujan*, 504 U.S. at 560.  Plaintiff must demonstrate it is suffering an (1) "an injury in fact," (2) causally connected to the "alleged conduct of the defendant," and (3) "likely" to "be remedied by the relief plaintiff seeks."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (citing *Lujan,* 504 U.S. at 560-61).

As a threshold matter, Plaintiff cannot rely on any purported injury from the issuance of the Final Rule to support its abstract challenge to an alleged FVRA policy.  That is because "standing is not dispensed in gross."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996)).  "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought.'"  *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Here, Plaintiff fails to allege well-pleaded facts showing that, separate from the Final Rule, it is suffering any current or imminent injury traceable to the alleged FVRA policy.  Injury in fact is "the '[f]irst and foremost' of standing's three elements."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

8

(quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)), *as revised* (May 24, 2016).  "To establish injury in fact, a plaintiff must show . . . 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  Adherence to those requirements "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982), and "serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

"[P]ast injuries alone are insufficient to establish standing" for declaratory and injunctive relief. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  A plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury."  *Id.*  In the case of a "threatened injury" the plaintiff must allege plausibly that the injury is "*certainly impending*" for it "to constitute injury in fact," and cannot rely solely on "[a]llegations of *possible* future injury" to establish his standing to sue.  *Clapper*, 568 U.S. at 409 (citation omitted).

Because Plaintiff seeks declaratory and injunctive relief against a supposed executive FVRA policy, it is required to allege facts showing that it is suffering either an ongoing harm or a certainly impending injury from the alleged policy itself.  No such facts are alleged.  Plaintiff cannot plausibly allege that the President will in the future designate an acting agency head in the manner in which Plaintiff thinks is unlawful *and* that such hypothetical designee will take a concrete action that will injure Plaintiff in a personal and individual way.  Indeed, Plaintiff nowhere ties its abstract concerns about the legality of the alleged policy to any concrete effect it will have on *him*.  And even if it proffered such allegations—and it does not—they would be far too speculative to confer standing. *See, e.g.*, *Clapper*, 568 U.S. at 410-14; *City of Los Angeles v. Lyons*, 461 U.S. 95, 106-09 (1983).

Plaintiff cannot seek declaratory relief either.  Declaratory judgments require demonstrating "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  This typically means that one of the parties to the action must have been able to bring a coercive action for nondeclaratory relief about the same issue against the other party.  *See, e.g., id.* at 128-29; *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983); *see also Discover Bank v. Vaden*, 396 F.3d 366, 371 (4th Cir. 2005) (Declaratory Judgment Act authorizes "a party which traditionally would be a defendant . . . [to] bring a preemptive suit in federal court, thus accelerating the claim against it").  It is plain here that neither party could do so.  The alleged existence of an FVRA policy could not sustain a freestanding claim for damages or injunctive relief absent an agency action taken by an official designated pursuant to that policy.  Nor could Defendants have brought or threatened an enforcement action based on the alleged policy.

Standing further requires that Plaintiff establish a causal connection "between the alleged injury in fact and the alleged conduct of the defendant."  *Sprint Commc'ns*, 554 U.S. at 273; *see also Steel Co.*, 523 U.S. at 103.  Even if Plaintiff could satisfy the injury-in-fact requirement with respect to its alleged FVRA policy claim—which it cannot—the Second Amended Complaint also fails to draw a causal nexus between any alleged injury and any challenged conduct *by Defendants*.  Although Plaintiff does not define who in the "government" has supposedly adopted and implemented this alleged executive FVRA policy, *see* SAC ¶¶ 1, 13 there are no allegations that Defendants have taken any concrete action at all to "designate a non-Senate confirmed officer . . . to act as a principal officer" pursuant to the alleged FVRA policy, *id.* ¶ 1.  Nor could there be because, under the FVRA, the authority to "designate" the acting official does not belong to the "government," *id.* ¶¶ 1, 13, but to "the President (and only the President)," 5 U.S.C. § 3345(a)(3).

It follows that only the President, and not Defendants, could adopt and implement the supposed executive policy described by Plaintiff. Yet, Plaintiff fails to allege facts demonstrating the existence of a policy by the President to designate acting agency heads in a manner that Plaintiff considers unlawful; rather, it has only pointed to a single FVRA designation—Whitaker's.[2]  And Plaintiff has not even attempted to sue the only person (*i.e.*, the President) who, under the FVRA, has the authority to adopt and implement this supposed policy.

Nor could he.  Since "the President (and only the President)" has authority to designate acting agency heads under the FVRA, 5 U.S.C. § 3345(a)(3), Plaintiff's requested relief against the alleged policy necessarily would implicate and restrict the President's authority, *see* SAC ¶ 1 (requesting declaratory and injunctive relief to prevent the "government[ ]" from "using the FVRA to designate" non-Senate confirmed officers or senior employees like Whitaker in lieu of first assistants as acting principal officers), and thus bind the President in the exercise of his official statutory authority.  It is well established that federal courts lack jurisdiction to "enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *Franklin v. Massachusetts*, 505 U.S. 788,

---

[2] Plaintiff also points to the fact that, since 2003, the Office of Legal Counsel ("OLC") has recognized the President's authority under §§ 3345(a)(2)-(3) to designate individuals that are otherwise not identified in an agency's statutory line of succession.  *See* SAC ¶ 14 (citing 27 Op. OLC 121 (2003) & 42 Op. OLC __ (Nov. 14, 2018)).  But OLC's role is to "render[ ] informal opinions and legal advice to the various agencies of the Government," 28 C.F.R. § 0.25(a), and OLC's proffered advice on the scope of the President's FVRA authority does not give rise to an actual "executive policy" unfailingly relied upon by the President to fill all vacancies of department heads.  Unsurprisingly, Plaintiff only identifies Whitaker's designation as a recent example of the President's reliance on § 3345(a)(3) to designate an acting agency head.  In reality, acting officers have served in this administration under all three methods of designation of acting officers under the FVRA.  For example, first assistants have routinely served in this administration as acting principal officers (*e.g.*, Deputy Secretary of State John Sullivan, Deputy Secretary of the Interior David Bernhardt, Deputy Secretary of Defense Patrick Shanahan), and the President also has designated other Senate-confirmed officials to serve as acting head of another agency (*e.g.*, designation of Under Secretary of Defense Robert Wilkie as Acting Secretary of Veterans Affairs, designation of Director of the Office of Management and Budget Mick Mulvaney as Acting Director of the Consumer Financial Protection Bureau).

802 (1992) ("[I]njunctive relief against the President himself is extraordinary, and should . . . raise[ ] judicial eyebrows.").[3]   Indeed, "[o]ut of respect for the separation of powers and the unique constitutional position of the President," the Supreme Court has squarely held that "an express statement by Congress" is required before a general cause of actions is construed to extend specifically to the President.  *Franklin*, 505 U.S. at 800-01 (President's actions are not subject to review under the Administrative Procedure Act); *Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982) ("President is absolutely immune from civil damages liability for his official acts in the absence of explicit affirmative action by Congress.").  To be sure, there is no express cause of action here that authorizes the requested relief against the President's performance of his statutory duties under the FVRA.

Moreover, Plaintiff cannot invoke the Court's equitable jurisdiction under *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) to seek the requested relief.  *Armstrong* emphasized that implied equitable claims were available only in "some circumstances" in a "proper case," *id.*, and at a minimum, that requires the requested relief to have been of the type that "was traditionally accorded by courts of equity."  *Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).  The Supreme Court has cautioned courts that separation-of-powers concerns militate against expanding the courts' "traditional equitable powers" by inferring causes of action against federal officials.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).  As discussed above, there is no tradition of equitable relief against the President.  To the contrary, separation-of-powers

---

[3] *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) ("In light of the Supreme Court's clear warning that such relief should be ordered only in the rarest of circumstances we find that the district court erred in issuing an injunction against the President himself."), *vacated and remanded*, 138 S. Ct. 353 (2017); *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief . . . .") (internal citation omitted); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) ("[t]he reasons why courts should be hesitant to grant such relief are painfully obvious" given President's unique constitutional role and potential tension with separation of powers).

concerns require a clear statement before any general cause of action can be extended to the President.

Accordingly, the Court's equitable powers under *Armstrong* do not provide any solace to Plaintiff.[4]

## II.     PLAINTIFF'S CLAIM RELATING TO THE FINAL RULE FAILS FOR LACK OF STANDING AND BECAUSE THE RULE WAS VALIDLY RATIFIED.

On March 11, 2019, Attorney General Barr formally ratified the Final Rule, *see* 84 Fed. Reg. at

9240, providing sufficient authority for the Rule's issuance, regardless of the lawfulness of Whitaker's

designation.   Plaintiff does not contest the validity of the ratification and instead argues only that it

was injured between the time the Rule was issued by Whitaker and the time it was ratified by Attorney

General Barr—*i.e.*, before the Rule went into effect—because the issuance of the Rule impaired its

ability to sell its bump stock.  SAC ¶ 15.  But the declaratory relief Plaintiff seeks will not redress that

alleged injury and thus is an improper attempt to obtain an advisory opinion.  And regardless, the

ratification cured any alleged defect in Whitaker's authority at the time he issued the Rule.

### A.     Attorney General Barr's Ratification of the Final Rule Cured Any Asserted Theoretical Defect in Acting Attorney General Whitaker's Authority.

The Final Rule was validly issued by former Acting Attorney General Whitaker because, as

this Court has already held, his designation did not violate the FVRA or the Appointments Clause.

*See Guedes*, 356 F. Supp. 3d at 137-55; *see also infra* Pt. III.  However, like the D.C. Circuit, the Court

need not opine on the validity of his designation to uphold the Final Rule because its ratification by

Attorney General Barr cured any alleged defect in Whitaker's authority to issue the Rule.  *See Guedes*,

---

[4] Perhaps recognizing that Plaintiff cannot sue the President to obtain the relief requested against the alleged policy, the Second Amended Complaint identifies the "United States of America" as a co-defendant.   But Plaintiff cannot circumvent essential limitations grounded on the principle of separation of powers and seek relief that directly binds the President's statutory authority by simply naming the United States as a party.   Indeed, there is no waiver of sovereign immunity with respect to Plaintiff's policy claim because the alleged "policy" does not meet the well-established definition of "agency action" for purposes of 5 U.S.C. § 702.  *See* 5 U.S.C. § 551(13); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("agency action" is limited to those acts that are "circumscribed" and "discrete"); *accord City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430-32 (4th Cir. 2019).

920 F.3d at 12 (declining to "wade into th[e] thicket" of plaintiff's FVRA challenge because ratification cured any alleged defect in Whitaker's designation).

Agency actions taken by an invalidly appointed official may be ratified by an official who has been properly appointed. *See, e.g., Guedes*, 920 F.3d at 13; *see also Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 370-72 (D.C. Cir. 2017); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117-21 (D.C. Cir. 2015); *Doolin Sec. Sav. Bank, FSP v. Office of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998). As the D.C. Circuit held, the Attorney General's ratification of the Rule cures any alleged defect in Whitaker's authority to issue the Rule. *See Guedes*, 920 F.3d at 13-14; The Attorney General's ratification "cure[s] any deficiency caused by" Whitaker's alleged "lack of lawful authority." *Doolin*, 139 F.3d at 212. Plaintiff does not argue that the ratification is invalid or ineffective. Accordingly, it has asserted no viable challenge to the Rule's current validity, regardless of the lawfulness of Whitaker's designation. *See Guedes*, 920 F.3d at 13; *see also Doolin*, 139 F.3d at 214 (declining to decide "whether [the predecessor] lawfully occupied the position of Director").[5]

### B. The Declaratory Relief Plaintiff Seeks Would Do Nothing to Redress Its Alleged Injury and Amounts to an Impermissible Advisory Opinion.

As discussed above, Plaintiff does not allege that the Final Rule is invalid following its ratification. Rather, its apparent theory is that it can seek broad declaratory relief because its property

---

[5] Because the Attorney General's ratification of the Final Rule cures the alleged *legal defect* of Whitaker's appointment, but does not cure the alleged *factual injury*—namely, the forced divestment of Plaintiff's bump stock—even had Plaintiff sought prospective relief against the Final Rule, that challenge would not have been considered through the lens of Article III mootness. Rather, the ratification of the Final Rule would compel the dismissal of any such challenge for failure to state a claim upon which relief can be granted. As the D.C. Circuit stated in unmistakable terms, "a properly appointed official's ratification of an allegedly improper official's prior action, rather than mooting a claim, resolves the claim on the merits by 'remedy[ing] [the] defect' (if any) from the initial appointment." *Guedes*, 920 F.3d at 13 (quoting *Wilkes-Barre*, 857 F.3d at 371); *id.* (reasoning that ratification is "analogous to harmless-error analysis," and thus "is treated as resolving the merits of the challenger's claim in the agency's favor"). In any event, as the D.C. Circuit explained in *Guedes*, no mootness exception would apply here. *Id.* at 15-16 (rejecting proffered mootness exceptions for voluntary cessation and for cases that are capable of repetition, yet evading review).

right to alienate its bump stock was allegedly impaired between the Rule's issuance on December 26, 2018 and its ratification on March 11, 2019.  *See* SAC ¶ 15.  Plaintiff is not entitled to declaratory relief on that theory for two reasons.[6]

*First*, Plaintiff lacks standing to seek declaratory relief because it would do nothing to redress the purported injury it suffered prior to the Rule's ratification.  *See Lujan*, 504 U.S. at 561 (plaintiff must show likelihood "that the injury will be redressed by a favorable decision" (citation omitted)).  Plaintiff asks for a declaration that Whitaker was invalidly designated and that the Rule was thus invalid between December 26, 2018—when it was issued—and March 11, 2019—when it was ratified.  As discussed *infra*, that is not how ratification works; once ratified, the Rule was always valid, including at the time of its issuance.  But in any event, such a declaration would do nothing to remedy either of the injuries Plaintiff could theoretically assert.  A declaration would not enable it to obtain any redress for its inability to sell its bump stock during the interim between the Rule's issuance and its ratification.  Nor would it remedy its ostensible current injury, the compelled divestment of its bump stock.  Given Plaintiff's concession that the Rule was validly ratified, a declaration that it was briefly invalid at some earlier time would have no concrete, real-world effect on its rights as to its bump stock.  Plaintiff therefore lacks standing to seek a declaratory judgment.  *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("[A] judicial decree is not the end but the means.  At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct."); *Armstrong World Indus., Inc. ex rel. Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) ("[E]ven if a declaratory judgment would

---

[6] As a threshold matter, the Complaint does not contain *any* well-pleaded facts alleging that Plaintiff ever intended or attempted to alienate its bump stock.  Therefore, Plaintiff does not plausibly allege that it was in fact injured prior to the Rule's ratification.  And, as discussed *infra*, Plaintiff's theoretical past injury is a red herring and cannot save the Complaint from dismissal.

clarify the parties' legal rights, it should ordinarily not be granted unless the parties' plans of actions are likely to be affected by a declaratory judgment." (citation omitted)).[7]

Thus, what Plaintiff seeks is an abstract judicial pronouncement that the Rule was briefly unlawful prior to its ratification. Because declaratory judgments can only be issued in response to "concrete legal issues, presented in actual cases, not abstractions," *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947), Plaintiff's requested relief is not available here.[8] A judgment relating to Plaintiff's general objection about the "political expediency" of a challenged appointment is "beyond the competence of courts to render." *Id.*; *see also Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (case-or-controversy requirement not met where plaintiff's "present interest in the controversy is that he will obtain emotional satisfaction from a ruling"). As a result, the Court should decline Plaintiff's invitation to issue an advisory opinion.

*Second*, Plaintiff's past injury theory is based on a fundamental misconception of how ratification works. "[T]he general rule [is] that the ratification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done. In other words, . . . the

---

[7] The only relief that would in fact redress Plaintiff's alleged past injury to its right to alienate its bump stock is a suit for damages. However, Plaintiff has not sought damages in this action and indeed, could not, given the absence of any waiver of sovereign immunity for such a claim. *See, e.g., Deaf Smith Cty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1210 (D.C. Cir. 1998) (recognizing that APA waives sovereign immunity only for suits not seeking money damages (citing 5 U.S.C. § 702)).

[8] *See, e.g., Virginians Against a Corrupt Congress v. Moran*, 805 F. Supp. 75, 78 (D.D.C. 1992) (holding that declaratory judgment would be advisory opinion where challenged "statute has been repealed and the disputed practice has ended"); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 64 (D.D.C. 2018) (holding that a declaration that "would be of no practical effect . . . would be tantamount to . . . an advisory opinion, a result not within this Court's power"); *see also Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (finding request for declaratory relief would be impermissible advisory opinion where plaintiff "never sought damages in this litigation" and where injunctive relief was not available); *Int'l Coal. for Religious Freedom v. Maryland*, 3 F. App'x 46, 52 (4th Cir. 2001) (affirming dismissal where "declaratory judgment in this case . . . would, in effect, be no more than an abstract judicial pronouncement [by a federal court] that Maryland's General Assembly and Governor acted lawfully or unlawfully" (citation omitted);

ratification 'relates back' in time *to the date of the act by the agent*." *Advanced Disposal Serv. E. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016) (emphasis added) (citation omitted); *see also* Floyd R. Mechem, Law of Agency § 535, at 349-50 (1914) (ratification permits the subsequent adoption of a previously unauthorized act "with the same effect as though it had been properly done under a previous authority" (quoting *Wisconsin* v. *Torinus*, 49 N.W. 259-60 (Minn. 1879)). Ratification is treated as imbuing Whitaker with the authority to issue the Rule at the time he issued it.

Therefore, even assuming that a declaratory judgment somehow would redress an injury that Plaintiff allegedly suffered between the Rule's issuance and its ratification, and that Whitaker's designation was invalid, Plaintiff would still have no claim upon which relief can be granted because the Rule's ratification means that it was issued on December 26, 2018 pursuant to valid authority. *See Guedes*, 920 F.3d at 13 ("[R]atification purges any residual taint or prejudice left over from the allegedly invalid appointment."); *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 708 n.5 (D.C. Cir. 1996) ("[T]he issue is not whether Legi-Tech was prejudiced by the original [decision], which it undoubtedly was, but whether, given the FEC's remedial actions, there is sufficient remaining prejudice to warrant dismissal."). To put it differently, because Plaintiff concedes that the Rule was validly ratified, the purported impairment of the alienability of Plaintiff's bump stock was a natural consequence of a lawfully-issued Rule. Thus, regardless of any injuries that Plaintiff may have suffered prior to the Rule's ratification, Plaintiff still fails to state a claim.

## III.   WHITAKER'S DESIGNATION WAS LAWFUL.

For all the reasons discussed above, this Court need not reach the merits of Plaintiff's claims in Counts I and II. But in all events, for the reasons this Court has already explained, those claims fail as a matter of law because the FVRA expressly authorized the President to designate Whitaker an acting agency head and nothing in 28 U.S.C. § 508 or the Appointments Clause even arguably

precluded that choice.[9]  In particular, as this Court has held, the Attorney-General vacancy statute, 28 U.S.C. § 508, does not displace the FVRA, and accordingly, the President had the statutory authority under the FVRA to designate Whitaker an Acting Attorney General.  *Guedes*, 356 F. Supp. 3d at 138-44; *see also English v. Trump*, 279 F. Supp. 3d 307, 319 (D.D.C. 2018).   Further, the designation of Whitaker to serve temporarily as acting agency head did not render him a principal officer requiring Senate confirmation under the Appointments Clause.  *Guedes*, 356 F. Supp. 3d at 144-55.  Finally, Plaintiff's new allegations of a supposed FVRA policy and an alleged past injury to its right to alienate its bump stock do not justify revisiting the Court's sound holding.  *See, e.g., Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (citation omitted)); *see also Hall & Assocs. v. U.S. EPA*, 210 F. Supp. 3d 13, 18 (D.D.C. 2016) (same).

Because Whitaker's designation was valid under both the FVRA and the Appointments Clause, Plaintiff fails to state a claim upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, the Second Amended Complaint should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

Dated: May 9, 2019                                      Respectfully submitted,

                                                        JOSEPH H. HUNT
                                                        Assistant Attorney General

---

[9] *See also United States v. Santos-Caporal*, No. 1:18-CR-171-AGF-ACL, 2019 WL 468795 (E.D. Mo. Jan. 9, 2019); *United States v. Smith*, No. 1:18-CR-00015-MR-WCM, 2018 WL 6834712 (W.D.N.C. Dec. 28, 2018); *United States v. Peters*, 6:17-CR-55-REW-HAI-2, 2018 WL 6313534 (E.D. Ky. Dec. 3, 2018); *United States v. Valencia*, No. 5:17-CR-882-DAE(1)(2), 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018), *appeal filed*, No. 18-51108 (5th Cir. Dec. 3, 2018).

HASHIM M. MOOPPAN
JAMES M. BURNHAM
Deputy Assistant Attorneys General

JENNIFER D. RICKETTS
Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ Chetan A. Patil
CESAR A. LOPEZ-MORALES
CHETAN A. PATIL
REBECCA CUTRI-KOHART
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-4968
Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2019, a copy of the foregoing was filed electronically via the

Court's ECF system which sent notification of such filing to all counsel of record.

/s/ *Chetan A. Patil*
CHETAN A. PATIL
Trial Attorney
U.S. Department of Justice