**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAMIEN GUEDES, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Lead Case No. 18-cv-2988 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*, | * |
| Defendants. | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

| | |
|---|---|
| FIREARMS POLICY COALITION, INC., | * |
| Plaintiff, | * |
| v. | * Case No. 18-cv-3083 |
| MATTHEW G. WHITAKER, IN HIS OFFICIAL CAPACITY, *et al.*, | * |
| Defendants. | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**PLAINTIFF FIREARMS POLICY COALITION, INC.'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    This Court should dismiss the Complaint on the merits without reaching the
Government's other arguments .......................................................................... 2

    II.   In any event, Plaintiff has Article III standing ................................................. 5

    III.  The Government's other non-standing arguments lack merit ........................ 12

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Al-Tamimi v. Adelson*,
  916 F.3d 1 (D.C. Cir. 2019) ............................................................................ 3

*Armstrong v. Exceptional Child Ctr., Inc.*,
  135 S. Ct. 1378 (2015) ........................................................................... 17, 18

*Atchinson v. District of Columbia*,
  73 F.3d 418 (D.C. Cir. 1996) ........................................................................ 14

*Berry v. Reagan*,
  1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................................... 17

*Better Gov't Ass'n v. Dep't of State*,
  780 F.2d 86 (D.C. Cir. 1986) .......................................................................... 5

*City of Houston v. Dep't of Hous. & Urban Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) ...................................................... 5, 6, 11, 12

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003) ......................................................... 5, 6, 9, 11

*Clinton v. City of New York*,
  524 U.S. 417 (1998) ................................................................................ 15, 16

*Clinton v. Jones*,
  520 U.S. 681 (1997) ...................................................................................... 16

*Conservation Law Found. v. Evans*,
  360 F.3d 21 (1st Cir. 2004) ....................................................................... 7, 12

*CREW v. Trump*,
  302 F. Supp. 3d 127 (D.D.C. 2018) .............................................................. 16

*Ctr. for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002) ........................................................................ 4, 5

*Davis v. FEC*,
  554 U.S. 724 (2008) ........................................................................................ 4

*Emory v. United Air Lines, Inc.*,
  720 F.3d 915 (D.C. Cir. 2013) ........................................................................ 5

*English v. Trump*,
  279 F. Supp. 3d 307 (D.D.C. 2018) .............................................................. 17

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ........................................................................ 6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ...................................................................................... 16

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................................ 17, 18

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999)..................................................................................... 17

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)....................................................................................... 9

*Landry v. FDIC*,
    204 F.3d 1125 (D.C. Cir. 2000)................................................................... 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................... 6, 8, 19

*Mackie v. Bush*,
    809 F. Supp. 144 (D.D.C. 1993)................................................................. 17

*McKenzie v. City of White Hall*,
    112 F.3d 313 (8th Cir. 1997)....................................................................... 18

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
    436 U.S. 658 (1978)..................................................................................... 12

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)................................................................................... 6, 9

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015)....................................................................... 7

*Nat'l Treasury Emps. Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974)................................................................... 16

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010)................................................................. 16

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)..................................................................................... 15

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988)................................................................ 6, 13

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)..................................................................................... 14

*Petworth Holdings, LLC v. Bowser*,
    308 F. Supp. 3d 347 (D.D.C. 2018)........................................................... 18

*Seale v. INS*,
    323 F.3d 150 (1st Cir. 2003)......................................................................... 5

*Sherrod v. Breitbart*,
    720 F.3d 932 (D.C. Cir. 2013)..................................................................... 5

*Sherwood v. Tenn. Valley Auth.*,
    842 F.3d 400 (6th Cir. 2016)....................................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)......................................................................................... 5

*Sugar Cane Growers Coop. of Fla. v. Veneman,*
   289 F.3d 89 (D.C. Cir. 2002) ................................................................. 11

*Swan v. Clinton,*
   100 F.3d 973 (D.C. Cir. 1996) .............................................................. 18

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015) .............................................................. 6, 9

*TRW, Inc. v. FTC,*
   647 F.2d 942 (9th Cir. 1981) ................................................................. 7

*Util. Air Regulatory Grp. v. EPA,*
   471 F.3d 1333 (D.C. Cir. 2006) ...................................................... 6, 8, 19

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................................ 16

## Constitutional Provisions

U.S. Const. art. II, § 2, cl. 2 .................................................................... *passim*

U.S. Const. art. III ........................................................................ 1, 5, 12, 18

## Statutes

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ......................................... 7

6 U.S.C. § 113(g)(1) ........................................................................... 13

26 U.S.C. § 7801(a)(2) .......................................................................... 7

26 U.S.C. § 7805 ............................................................................... 7

28 U.S.C. § 510 ................................................................................ 7

28 U.S.C. § 599A(c)(1) .......................................................................... 7

## Regulations

Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ............................................... 1

27 C.F.R. ch. I, subch. C ....................................................................... 8

27 C.F.R. ch. II, subch. B ....................................................................... 8

**Other Authorities**

Josh Gerstein & Stephanie Beasley, *Legality of Trump Move to Replace Nielsen Questioned*, Politico (Apr. 9, 2019), https://politi.co/2IRTASB .................................................................. 13

Ted Hesson, *Nielsen:  Acting DHS Deputy Grady Offers Resignation*, Politico (Apr. 9, 2019), https://politi.co/2PFqgiG ................................................................................. 13

Cristiano Lima, *Trump Taps O'Rourke as Acting VA Secretary Ahead of Wilkie Confirmation*, Politico (May 30, 2018), https://politi.co/2VKmZE9 ...................................... 14

Kathryn Dunn Tenpas, *Tracking Turnover in the Trump Administration*, Brookings Inst. (May 2019), https://brook.gs/2HX2fys ........................................................................................ 9

Donald J. Trump (@realDonaldTrump), Twitter (Apr. 9, 2019, 3:02 PM), http://bit.ly/2Lgrn9X ................................................................................................................ 13

U.S. Gov't Accountability Office, *Federal Vacancies Reform Act: Search Vacancies*, http://bit.ly/2WiZPSl (last visited May 23, 2019) .................................................................. 10

## INTRODUCTION

Plaintiff Firearms Policy Coalition, Inc., filed this action in response to a regulation signed by Matthew G. Whitaker, which harmed Plaintiff and its members from its inception. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018).  Plaintiff also challenges the President's broader policy of installing individuals like Mr. Whitaker as acting officers, whose designations violate federal law and the Constitution's Appointments Clause.

The Government seeks dismissal on a host of grounds, many of which it miscasts as jurisdictional, and all of which are unnecessary for this Court to reach.  Rather than address any of these new arguments, the proper course is for the Court to enter an adverse final judgment against Plaintiff on the grounds already decided.  All agree that the Court is going to issue an Order stating that the Complaint is dismissed.  Indeed, as a matter of "law of the case," the Court has no other choice.  Anything else will be an advisory opinion on issues that cannot possibly have an effect on this Court's inevitable judgment.

At any rate, even though this Court need not (and should not) reach the Government's arguments, they are without merit.  Plaintiff has sufficiently alleged the existence of the challenged policy, and this Court has the power to grant the equitable relief Plaintiff seeks.  And on top of the harm Plaintiff and its members already suffered from the Rule, which all agree gives this Court Article III power over the case, there is a realistic probability that further *ultra vires* gun-control regulations will be promulgated and cause additional injury to Plaintiff and its members.  Those additional impending injuries are more than sufficient for this Court to reach Plaintiff's broader

policy claim.  Accordingly, in the alternative, the Court should deny the Government's motion to dismiss for lack of standing and enter judgment against Plaintiff on the merits.[1]

## ARGUMENT

### I.    This Court should dismiss the Complaint on the merits without reaching the Government's other arguments.

Plaintiff Firearms Policy Coalition asserts that the designation of employees as acting principal officers violates both the Constitution's Appointments Clause and the Federal Vacancies Reform Act (FVRA).  Plaintiff challenges both (1) an asserted general policy of making such designations, and (2) a specific Rule signed by the then-Acting Attorney General.  But the substantive legal theories—*i.e.*, the Appointments Clause and the FVRA—are identical as to both.

Plaintiff sought a preliminary injunction to block the Rule's implementation.  This Court rejected Plaintiff's claims on the merits, upholding all such designations as a matter of law "both under the FVRA and the Appointments Clause."  Memorandum in Support of Defs' Motion to Dismiss (Mem.) 5.  Plaintiff filed an interlocutory appeal.  While that appeal was pending, the Senate-confirmed Attorney General "ratified" the Rule.  Plaintiff moved to dismiss its appeal, explaining that it intended to "amend its Complaint to respond to the ratification" (D.C. Cir. No. 19-5043, Motion to Voluntarily Dismiss Appeal 2 (Mar. 22, 2019)), then to "'secure a final judgment' before this Court 'and to then appeal from that judgment'" (Mem. 6).  Over the Government's objection, the court of appeals granted the motion.  Plaintiff then promptly filed its Second Amended Complaint.

---

[1]    We do not understand what the Government thinks it gains—and how it thinks it is assisting the Court—by demeaning Plaintiff's well-pleaded allegations as, for example, "created from whole cloth," asserting "contrived" and "fabricated theories."  Memorandum in Support of Defs' Motion to Dismiss (Mem.) 1.  The legal questions presented by this case are important and difficult. Empty and mean-spirited rhetoric cannot change those facts.

But a different plaintiff delayed moving to dismiss its own parallel appeal of the appointments challenge. The D.C. Circuit therefore decided it on the merits. The court of appeals held that the ratification defeated any challenge to the Rule, reasoning that it granted the plaintiff the relief it sought, "thereby obviating the need to address the validity of [the Acting Attorney General's] designation." Mem. 6. The D.C. Circuit accordingly did not reach this Court's distinct holding that the President's designation of such acting officials is lawful.

Given this Court's ruling on the preliminary injunction motion, Plaintiff cannot prevail in this Court on any of the claims in its Second Amended Complaint. As Plaintiff advised the D.C. Circuit, this Court plainly will enter a final, appealable judgment dismissing the whole case. That judgment will encompass both Plaintiff's general challenge to the alleged appointments policy and also its specific challenge to the Rule. The Government's Motion to Dismiss thus correctly explains that "*in all events*, for the reasons this Court has already explained, those claims fail as a matter of law." Mem. 17 (emphasis added). And, the Government continues, Plaintiff's amendment of its Complaint would "not justify revisiting the Court's [prior] holding." *Id.* at 18; *see also id.* at 2 ("there would be no basis for the Court to deviate from" that prior ruling).[2]

The obvious, efficient course is for this Court to dismiss the Complaint in its entirety for reasons this Court and the D.C. Circuit have already decided: (1) Plaintiff cannot prevail on any theory because the President's designation of Mr. Whitaker was valid; and further (2) Plaintiff cannot prevail on its challenges to the Rule because it was validly ratified by Mr. Barr. Plaintiff

---

[2]   Thus, while Plaintiff does not waive any of its arguments as to ratification, voluntary cessation, or the merits, it will not waste this Court's time by re-briefing those issues now. Instead, Plaintiff incorporates by reference the arguments it previously made before this Court and on appeal on those issues so as to preserve them, which is proper given that Plaintiff is not attempting to simply avoid this Court's rules regarding length limitations and the Government has a fair chance to respond if it wants to. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6-7 (D.C. Cir. 2019).

urged the Government to agree that the Complaint should be dismissed on that basis, to save this Court time. But the Government refused, explaining that it wanted the Court to issue an opinion addressing Plaintiff's standing.

But only two of the Government's arguments actually relate to standing: (1) that Plaintiff "has not identified any concrete injury arising from the alleged policy" (Mem. 8); and (2) "Plaintiff lacks standing to seek declaratory relief because it would do nothing to redress the purported injury it suffered prior to the Rule's ratification" (*id.* at 15). All of the Government's remaining arguments go to the substance of Plaintiff's claims or to its entitlement to a particular remedy. *See infra* Part III. Thus, although the Government criticizes Plaintiff for supposedly pursuing arguments "not withstanding [*sic*] this Court's decision upholding the validity of [Mr.] Whitaker's designation" (Mem. 1), and for seeking an "advisory opinion" (*id.* at 2), that is in fact precisely what most of the Government's arguments seek.

There is moreover no basis for this Court to reach even the Government's standing arguments. The Government thus characterizes its arguments as "a facial challenge to jurisdiction" (Mem. 7) and invokes the principle that "'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought'" (*id.* at 8 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008))). The Government contends that, in the absence of standing, an opinion on the merits would be an "advisory opinion." *Id.* at 2. In fact, when (as here) the "precise merits question has already been decided" by "the same court, it is the adjudication of the standing issue that resembles an advisory opinion." *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 186, 195 (2d Cir. 2002) (Sotomayor, J.) (declining to "reach the academic question of Article III standing in this case" because the court had previously addressed the merits of the claim when it had the power to do so).

Plaintiff unquestionably had standing to challenge the issuance of the Rule, and the Court therefore properly exercised its Article III authority in adjudicating Plaintiff's preliminary injunction motion.   Indeed, the Government did not challenge Plaintiff's standing then. Adjudicating Plaintiff's standing *now* would require the Court to engage in an absurd counterfactual, because it would "assume that on the merits the plaintiff[] would be successful in [its] claims," *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam), something the Court has already rejected.   Because the "'jurisdictional question could have no effect on the outcome,'" *Bush*, 304 F.3d at 194 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998)), it is settled that the proper course is to forgo addressing standing and to enter judgment against Plaintiff on the merits. *See, e.g.*, *Sherrod v. Breitbart*, 720 F.3d 932, 937 (D.C. Cir. 2013) (assuming appellate jurisdiction, without resolving issues related to application of collateral order doctrine, because "precedent in this circuit renders the merits of this appeal a foregone conclusion"); *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 920 (D.C. Cir. 2013) ("bypass[ing] the threshold mootness inquiry" as to plaintiff because analogous claims not moot as to different plaintiff in a companion case); *Seale v. INS*, 323 F.3d 150, 157 (1st Cir. 2003) (adopting same framework and reasoning as Second Circuit in *Bush*, *supra*).

## II.     In any event, Plaintiff has Article III standing.

The Government cites a number of general standing cases, but the governing framework is set forth in *City of Houston v. Department of Housing & Urban Development*, 24 F.3d 1421 (D.C. Cir. 1994).   When, as here, "a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well," then "declaratory relief may be granted" if "the plaintiff has standing to challenge the future implementation of that policy" and the challenge is ripe.  *Id.* at 1430; *see, e.g.*, *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) (organization's challenge to agency's fee-waiver policy not mooted when agency waived fees for organization's

particular FOIA request); *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (organization's challenge to informal agency policy denying certain FOIA requests not mooted when agency released particular requested information).

Thus, the question becomes whether Plaintiff faces a "risk of injury" that "is 'actual or imminent, not conjectural or hypothetical.'" *City of Houston*, 24 F.3d at 1429 n.6 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff must also show "a causal connection between the injury and the conduct complained of" and that a favorable decision will likely redress that injury. *Lujan*, 504 U.S. at 560-61. But the requirement that there be a connection "between the procedural requirement at issue and the substantive action" of the Government is "not very stringent." *City of Waukesha*, 320 F.3d at 235. The Court must "assume that on the merits the plaintiffs would be successful in their claims." *Id.* And the Court "may consider materials outside of the complaint." *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

An organizational plaintiff, like the Plaintiff here, has standing if it will itself be harmed *or* if "at least one member will suffer injury-in-fact." *See Util. Air Regulatory Grp. v. EPA*, 471 F.3d 1333, 1339 (D.C. Cir. 2006). And because Plaintiff challenges the Government's conduct in this case, neither Plaintiff nor its members need even be the subject of the Government's action, so long as the Government's conduct causes injury to Plaintiff or one of its members. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-56 (2010) (plaintiffs had standing to challenge federal agency's failure to regulate a third party's use of genetically modified seeds); *Texas v. United States*, 809 F.3d 134, 155-60 (5th Cir. 2015) (Texas had standing to challenge federal government's failure to enforce immigration laws), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016).

Plaintiff undoubtedly has standing to challenge Mr. Whitaker's designation based on the specific agency action he took to regulate bump-stocks.  The Government agrees.  *See* Mem. 14 n.5 (arguing that the claim fails on the merits).  But that's not all.  Plaintiff and its members face a realistic probability of injury from invalid officers like Mr. Whitaker promulgating further gun-control measures.[3]  Their "concern is with repeated violations" of the FVRA and Appointments Clause, "not merely with repetition of the same offensive conduct here."  *See, e.g.*, *TRW, Inc. v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981) (case not moot even though specific illegal conduct of specific party had ceased); *see also Conservation Law Found. v. Evans*, 360 F.3d 21, 26 (1st Cir. 2004) (correction of substantive violation did not moot challenge to procedural policy that would apply to other actions going forward).

Plaintiff has standing to challenge the executive policy based on the injury-in-fact suffered by its members.[4]  Remember, Plaintiff need only allege that one member will suffer a cognizable injury.  And it is "relatively clear, rather than merely speculative, that one or more members . . . will be adversely affected" by future gun control regulations promulgated by unlawfully designated acting officers.  *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

---

[3]    Although the Attorney General is responsible for promulgating such regulations, Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2277; *see* 26 U.S.C. §§ 7801(a)(2), 7805; 28 U.S.C. § 599A(c)(1), this is not a non-delegable function of the office, as far as Plaintiff can tell.  Thus, this "function of the Attorney General" can be delegated to "any other officer, employee, or agency of the Department of Justice," 28 U.S.C. § 510, numbering in the thousands.  The Attorney General's power to delegate this duty to others only increases the likelihood that another invalid officer will be tasked with implementing such regulations in the future.

[4]    Curiously, the Government argues that Plaintiff fails to plead that the policy will have "any concrete effect . . . on *him*."  Mem. 9 (emphasis in original).  But Plaintiff is an organization, and may bring this suit not only because Plaintiff has standing in *its* own right, but also because its members have standing as well.

7

At this stage, "general factual allegations of injury" are enough, because the Court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation and brackets omitted). As pleaded in the Complaint, Plaintiff "has hundreds of thousands" of gun-owning "members and supporters across the United States." *See* Second Amended Complaint (SAC), ECF No. 44 at 2-3. Gun measures are regularly promulgated by the Government, *see* 27 C.F.R. ch. I, subch. C; *id.* ch. II, subch. B, and all it takes for Plaintiff to have standing is for at least one member to be affected (even indirectly) by one regulation promulgated by one invalidly designated acting officer. "[G]iven the organization's large membership," it is "reasonable to infer that at least one member will suffer injury-in-fact." *See, e.g.*, *Util. Air Regulatory Grp.*, 471 F.3d at 1339-40 (declining to follow jurisdictions that "reject reliance on mathematical likelihood," because "that viewpoint overlooks the reality that all empirical issues are matters of probability").

Indeed, Plaintiff has standing in its own right. Plaintiff's mission is to "defend[] the United States Constitution and the People's rights, privileges, and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms." SAC 2-3. As part of that effort, Plaintiff "serves its members and the public through direct legislative advocacy, grassroots advocacy, legal efforts, research, education, operation of a Hotline, and other programs" in protecting fundamental rights. *Id.* Those efforts are frustrated when gun-control measures are authorized by acting officials who are serving unlawfully and unconstitutionally.

When such rules are promulgated by an invalid officer, Plaintiff must make additional expenditures and further deplete its funds to counteract the Government's *ultra vires* regulations. Plaintiff has already done so, in response to Mr. Whitaker's bump-stock rule. And because Plaintiff has and will continue to suffer a "drain on the organization's resources" in responding to

the executive policy, "there can be no question that the organization has suffered injury in fact" to establish standing in its own right. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (organization had standing to challenge policy based on allegation that organization "had to devote significant resources to identify and counteract the defendant's" practices). Indeed, Plaintiff has standing to sue even if those invalidly authorized regulations would not bind Plaintiff directly, because those *ultra vires* rules will still require Plaintiff to expend resources in counteracting them. *See Monsanto Co.*, 561 U.S. at 153-56; *Texas*, 809 F.3d at 155-60.

Plaintiff's concern is well founded. Plaintiff has already had to expend significant time and organizational resources in combatting Mr. Whitaker's bump-stock rule. On top of that, the constant refrain from the Government, throughout this litigation, is that "Presidents have consistently and explicitly invoked their FVRA authority to make acting officer designations that would be barred" if Plaintiff is correct on the merits, SAC 4, as this Court must assume in determining standing, *City of Waukesha*, 320 F.3d at 235. The Government itself argues that Presidents have "long" done so in Executive Orders governing succession, as well as in specific designations that "bypassed the extant deputy designated in the office-specific statute," like the President did with Mr. Whitaker. SAC 4. Indeed, even since moving to amend the Complaint, the President purported to invoke the FVRA once again to bypass an extant deputy, automatically designated by statute as an acting Cabinet secretary. *Infra* p. 13 & note 5.

And the President regularly has the opportunity to install acting officers in violation of the FVRA and the Appointments Clause. The already high rate of turnover in recent administrations, including in high-level positions, has increased during this particular presidency. *See* Kathryn Dunn Tenpas, *Tracking Turnover in the Trump Administration*, Brookings Inst. (May 2019), https://brook.gs/2HX2fys. As of this filing, there are 132 vacant federal offices subject to the

FVRA that are currently filled by an acting official, according to tracking done by the U.S. Government Accountability Office.  U.S. Gov't Accountability Office, *Federal Vacancies Reform Act: Search Vacancies*, http://bit.ly/2WiZPSl (last visited May 23, 2019) (results for search of "Vacant Positions with Acting Official").  There are 33 more vacancies waiting to be filled, including "first assistant" and high-level offices such as the Deputy Secretary of Homeland Security; 5 Under Secretary positions in the Departments of Homeland Security, Agriculture, Commerce, and Education; and 8 Assistant Secretary positions in the Departments of State, Energy, HHS, and HUD.  *Id.* (results for search of "Vacant Positions with No Acting Official"), http://bit.ly/2VaoqfQ.  Given the President's proclivity for using "acting" officers because he "can move so quickly" and they give him "more flexibility," SAC 5, and the several examples of unlawful designations he has already made, it is highly likely that another invalidly acting official will soon be in a position to issue regulations that affect Plaintiff or its members.

Moreover, it is likely that such acting official will promulgate gun control regulations, as the facts of this case illustrate.  Recall that such measures are enacted all the time.  *Supra* p. 8.  Add that Mr. Whitaker was advised *not* to authorize the bump-stock regulation at all, as Plaintiff alleged in the Complaint; officials in the Department of Justice believed it would give litigants like Plaintiff standing to bring lawsuits such as this one, to challenge his designation as Acting Attorney General.  SAC 5-6.  Yet despite the Government's herculean efforts to evade judicial review of the lawfulness of Mr. Whitaker's designation, the bump-stock rule was promulgated under his signature.  It is certainly plausible, then, that Plaintiff and its members face a realistic probability of further harm from gun-control regulations that will be authorized by another such acting official.  And as already explained, Plaintiff has standing even if neither Plaintiff nor its members will be the subject of those regulations themselves.  *See supra* pp. 6, 9.

The Government argues that Plaintiff fails to show a connection between the challenged executive policy and concrete actions that will be taken in the future.  Mem. 9.  But the D.C. Circuit has already rejected similar arguments.  When, as here, a plaintiff challenges agency action based on a procedural failure, "[a]ll that is necessary is to show that the procedural step was connected to the substantive result."  *City of Waukesha*, 320 F.3d at 235 (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002)).  Here, the Court must assume that the President's executive policy results in designations that violate the FVRA and the Appointments Clause.  *Id.*  And these procedural requirements are obviously connected to the "substantive decision" when such official, appointed in violation of those requirements, authorizes regulations that affect Plaintiff or its members.

Thus, a decision on the merits would redress Plaintiff's injury, even if "there is no chance" that following the procedural requirements—*i.e.*, the requirements of the FVRA and Appointments Clause—"will alleviate the harm" that will be caused by the substantive action.  320 F.3d at 324 (to have standing, plaintiff need not plead that the substantive result would change if the procedure had been properly followed); *see also Landry v. FDIC*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (plaintiff may bring an Appointments Clause challenge regardless of whether plaintiff can show that a different, lawfully appointed official would have made a different substantive decision) (collecting authorities).

Plaintiff has plausibly alleged that Plaintiff and its members are at "sufficiently imminent risk of injury" to challenge the executive's FVRA policy.  *See City of Houston*, 24 F.3d at 1430.  There is a realistic probability that another acting officer will be designated pursuant to the executive's policy who will authorize regulations that affect Plaintiff or its members.  And a decision in Plaintiff's favor on its broad claim would provide Plaintiff or its members meaningful

11

relief, by preventing *ultra vires* regulations that affect them, even if the same regulations might be validly promulgated.  Ergo, Plaintiff has standing to bring its broader claim.  *Id.*

### III.     The Government's other non-standing arguments lack merit.

The Government makes six arguments that do not relate to this Court's authority under Article III and with respect to which any ruling by this Court would be the purest "advisory opinion."  It does not seriously attempt to explain how or why the Court would reach these issues. But Plaintiff addresses each in turn, for avoidance of doubt.

1. The Government argues that Plaintiff "fails to allege facts demonstrating the existence of a policy by the President to designate acting agency heads in a manner that Plaintiff considers unlawful."  Mem. 11; *see also id.* at 1, 6.  The Government's argument is belied by others it previously made in this very case.  *Cf. Conservation Law Found.*, 360 F.3d at 26-27 (failure to follow notice and comment could be challenged on a prospective basis, because agency continued to argue that notice and comment was not required to promulgate rules).

In its opposition to Plaintiff's motion for preliminary injunction, the Government argued that Presidents "have consistently and explicitly invoked their FVRA authority to make acting officer designations that would be barred" if Plaintiff's interpretation of the statute is correct.  *See* SAC 4 (quoting Defs' Opp. to Pl's Mot. for PI, ECF No. 16 at 51-52 (footnotes omitted)).  *Cf. Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978) ("government policy" is established by "those whose edicts or acts may fairly be said to represent official policy").  In the Government's own words, "Presidents have long provided for orders of succession for officers covered by office-specific statutes and individually designated someone other than the deputy designated in an office-specific statute to serve as the acting agency head."  It even points to recent examples of the President "bypass[ing] the extant deputy designated in the office-specific statute." SAC 4.

The Government's examples are more than sufficient to establish the policy's existence. The fact that the "practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant." *Payne Enters., Inc.*, 837 F.2d at 491; *see, e.g.*, *Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400, 406 (6th Cir. 2016) (even though officials had discretion "on paper," policy was what agency did "in practice").

But there's more. The President has also stated that he "like[s]" using "acting" officers because he "can move so quickly" and they give him "more flexibility," as Plaintiff alleged in the Complaint. SAC 5. Indeed, in addition to the examples the Government points to, President Trump has thrice unlawfully designated acting Cabinet-level officers. Even since Plaintiff filed the Second Amended Complaint, the President has again violated the FVRA by installing Kevin McAleenan as Acting Secretary of Homeland Security upon former Secretary Kirstjen Nielsen's resignation—the designation displaced the successor automatically designated by an office-specific statute, who was available to serve.[5] And before Mr. Whitaker was directed to assume leadership of the Department of Justice, President Trump violated the Appointments Clause by designating Peter O'Rourke, a former employee in the Department of Veterans Affairs, as Acting

---

[5]    At the time President Trump purported to designate McAleenan as Acting Secretary of Homeland Security, *see* Donald J. Trump (@realDonaldTrump), Twitter (Apr. 9, 2019, 3:02 PM), http://bit.ly/2Lgrn9X, there was no Deputy Secretary, and Claire M. Grady was still serving as the Under Secretary for Management. By statute, Grady automatically became Acting Secretary at the time of Nielsen's resignation. 6 U.S.C. § 113(g)(1) ("Notwithstanding [the FVRA], the Under Secretary for Management shall serve as the Acting Secretary if by reason of absence, disability, or vacancy in office, neither the Secretary nor Deputy Secretary is available to exercise the duties of the Office of the Secretary."). Grady resigned shortly after the President announced that McAleenan would be the Acting Secretary. *See* Ted Hesson, *Nielsen: Acting DHS Deputy Grady Offers Resignation*, Politico (Apr. 9, 2019), https://politi.co/2PFqgiG; *see also* Josh Gerstein & Stephanie Beasley, *Legality of Trump Move to Replace Nielsen Questioned*, Politico (Apr. 9, 2019), https://politi.co/2IRTASB.

Secretary of the Department.  *See* Cristiano Lima, *Trump Taps O'Rourke as Acting VA Secretary Ahead of Wilkie Confirmation*, Politico (May 30, 2018), https://politi.co/2VKmZE9.[6]

Finally, the Office of Legal Counsel (OLC) has explicitly endorsed this practice since just after the FVRA's inception, and reaffirmed it twice in the last two years, as Plaintiff alleged in the Complaint.  In 2003, OLC advised that the President is authorized under the FVRA and Constitution to direct a mere employee to temporarily perform all the functions of any office.  SAC 4-5 (endorsing the President's decision to direct an employee to act as the head of the Office of Management and Budget).  In November 2017, OLC argued that the President may direct an officer to act as the head of the Consumer Financial Protection Bureau despite the availability of a deputy who was automatically designated by a succession statute specific to that vacant office.  *Id.*  And just last year, in its Whitaker opinion, OLC reaffirmed its longstanding position that the President may use the FVRA to direct a mere employee to act as a principal officer.  *Id.*

The Government wants this Court to believe that OLC's opinions are not evidence of a policy.  Mem. 11 n.2.  But that blinks reality.  OLC does not render lengthy opinions just because.

---

[6]    The Government is simply incorrect in claiming that Plaintiff "has only pointed to a single FVRA designation—Whitaker's."  *See* Mem. 11.  Plaintiff first alerted this Court to O'Rourke's unlawful designation in the preliminary injunction briefing.  *See* Reply ISO Pl's Mot. for PI, ECF No. 17 at 16 n.4.  To be sure, Plaintiff maintains that Mr. Whitaker's designation was unprecedented, but that isn't to say that the President has not made other designations that were also unlawful.  And in any event, Plaintiff need neither plead nor prove multiple instances of official misconduct to establish the existence of an official policy.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 483 (1986) (holding that "[i]f decision to adopt [a] particular course of action [from among various alternatives] is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy'").  And the fact that the President does not *always* designate someone unlawfully does not change the outcome, as the Government suggests.  Mem. 11 n.2 (pointing to examples of lawful designations).  All that is required is to allege a specific instance of unconstitutional conduct tied to an unconstitutional policy, even if that policy does not result in unconstitutional conduct every time.  *E.g.*, *Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996) (allegation of unconstitutional training policy "is adequate" even when complaint points to "only one instance of unconstitutional conduct" resulting from the alleged policy).

And it certainly wouldn't render two fully reasoned opinions in the last three years on the same subject unless the President had a practice of designating individuals in the manner Plaintiff argues is unlawful.  On the contrary, all of those opinions were issued with regard to particular unlawful designations, in addition to the other examples set forth above.

The specific designations and Executive Orders, the President's statements, and the opinions from OLC are more than sufficient to plausibly establish the existence of a policy that violates federal law and the Constitution.

2.  The Government argues that only the President is the proper defendant in a challenge to the executive policy.  Mem. 8, 10-11.  That Plaintiff did not name the President as a defendant should be of no consequence.  Plaintiff names the United States of America.  This was not because Plaintiff "cannot sue the President" over his use of the FVRA, as the Government believes.  *See id.* at 13 n.4.  For the reasons discussed next, Plaintiff can.  And the Government rightly does not attempt to argue that suing the United States instead of the President himself is insufficient for Plaintiff's claims to proceed.

3.  The Government argues that this Court lacks the statutory power to issue an injunction or declaration against the President.  Mem. 8, 10-13.  This is so, the Government adds, because such equitable relief would "implicate and restrict the President's authority" under the FVRA.  *Id.* at 11-12.  The Court should reject the extraordinary position out of hand.

It is "settled law" that federal courts are not precluded from "exercis[ing] jurisdiction over the President" himself.  *Nixon v. Fitzgerald*, 457 U.S. 731, 753-54 (1982) (citing cases).  For example, in *Clinton v. City of New York*, the Supreme Court affirmed a declaratory judgment that the procedures authorized by the Line Item Veto Act are unconstitutional, despite the fact that the suit was brought against the President directly.  524 U.S. 417, 448-49 (1998).  Under the statute's

terms, the President had "the sole ability" to take the challenged action. *Id.* at 451 (Kennedy, J., concurring). And there, as here, the requested relief obviously "implicated and restricted the President's authority." Yet the Court spent no time discussing the propriety of issuing equitable relief directly against him.

And while "injunctive relief against the President himself" may be "extraordinary," *see Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality), that is true for all injunctions, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction is "an extraordinary remedy"). The Supreme Court has never held that such relief is *never* available against the President. Far from it: The Court has recognized compulsory relief directly against the President in a number of circumstances. *See Clinton v. Jones*, 520 U.S. 681, 703-04 (1997) (citing cases).[7]

This is the "extraordinary" case in which relief directly against the President is appropriate, because there is no subordinate official available to sue. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. at 448-49; *id.* at 451 (Kennedy, J., concurring). The power to designate the relevant acting officials belongs uniquely to the President. *See* Mem. 1 ("[T]he President alone has the

---

[7]    The D.C. Circuit has stated in *dicta* that "[w]ith regard to the President, courts do not have jurisdiction to enjoin him," and "have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010). The *Newdow* court's statement, though, is in conflict with prior holdings of the D.C. Circuit, *see Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 615 (D.C. Cir. 1974) (issuing declaratory relief directly against President Nixon), and the U.S. Supreme Court, *see Franklin*, 505 U.S. at 802 (plurality) (not foreclosing jurisdiction to issue injunction against the President). *See CREW v. Trump*, 302 F. Supp. 3d 127, 139 n.6 (D.D.C. 2018) ("The government cites the D.C. Circuit's statement in *Newdow* . . . that courts 'have never submitted the President to declaratory relief.' But, as discussed, the D.C. Circuit *has itself* submitted the President to declaratory relief. *See Nat'l Treasury Emps. Union*, 492 F.2d at 616. The decision in *Newdow* never cites or discusses *National Treasury Employees Union*."). In any event, even if this Court were to find that it does not have jurisdiction to issue injunctive relief, the same cannot be said of Plaintiff's declaratory judgment claims. *See CREW*, 302 F. Supp. 3d at 139-40.

exclusive authority to designate acting agency heads under the FVRA.").  It is thus no surprise that courts in this very district have enjoined Presidents directly in the appointments context.  *See, e.g.*, *Mackie v. Bush*, 809 F. Supp. 144, 148 (D.D.C.) (enjoining President H. W. Bush from firing members of the Postal Service Board of Governors), *vacated as moot*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam); *Berry v. Reagan*, 1983 WL 538, at *6 (D.D.C. Nov. 14, 1983) (enjoining President Reagan from firing plaintiffs from the U.S. Commission on Civil Rights); *cf. English v. Trump*, 279 F. Supp. 3d 307, 337 (D.D.C. 2018), *appeal dismissed*, 2018 WL 3526296 (D.C. Cir. July 13, 2018) (per curiam) (denying preliminary injunction against President Trump on the merits, thus impliedly rejecting the Government's same argument there that the court lacked jurisdiction to enjoin the President directly).

These examples disprove the Government's unsupported assertion that "there is no tradition of equitable relief against the President."  Mem. 12.  Thus, the Court clearly has jurisdiction to order equitable relief under *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015).  *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (whether equitable relief requested is available turns on whether such relief "was traditionally accorded by courts of equity").  The Government does not even attempt to dispute Plaintiff's other source of authority, cited in the Complaint, recognizing an "implied private right of action directly under the Constitution to challenge governmental action under the Appointments Clause."  *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (internal quotation marks omitted).  The Court plainly has jurisdiction to order the relief Plaintiff seeks.

4.  The Government argues that "there is no waiver of sovereign immunity with respect to Plaintiff's policy claim because the alleged 'policy' does not meet the well-established definition

of 'agency action' for purposes of 5 U.S.C. § 702." Mem. 13 n.4. This is somewhat baffling, because even the Government recognizes in its briefing that Plaintiff does not challenge the *policy* as violating the APA. *Id.* at 12-13 (arguing instead that *Armstrong* does not apply). As the Complaint explicitly sets forth, Plaintiff challenges the policy pursuant to the rights of action recognized in *Armstrong* and *Free Enterprise Fund*, and Plaintiff's allegation is that the executive policy violates federal law and the Appointments Clause. Thus, sovereign immunity does not apply. *See Swan v. Clinton*, 100 F.3d 973, 981 & n.4 (D.C. Cir. 1996) ("sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional or beyond statutory authority").

5. Citing no authority, the Government argues that the Plaintiff cannot assert that it was injured by the pendency of the Rule prior to its ratification because "the Complaint does not contain *any* well-pleaded facts alleging that Plaintiff ever intended or attempted to alienate its bump stock." Mem. 15 n.6. On the contrary, pleading that government action "effectively prohibits [plaintiffs] from selling the[ir] [p]roperty" is "sufficient for the purposes of alleging" an Article III injury, even if "they have not alleged any quantifiable economic harm." *Petworth Holdings, LLC v. Bowser*, 308 F. Supp. 3d 347, 353, 356 (D.D.C. 2018). An act that "removes a 'stick' from Plaintiffs' 'bundle' of property rights" gives rise to an injury, because doing so "economically harms them." *Id.*; *see McKenzie v. City of White Hall*, 112 F.3d 313, 316 (8th Cir. 1997) ("diminution in value" of property, "although small, is a concrete injury that poses a presently justiciable question").

Moreover, the Government once again fails to recognize that independent of its own injury, Plaintiff can bring this action on behalf of its members. And as a large membership organization, it is a fair inference based on the pleadings that at least one of its members would have sold a bump

stock during the relevant period but for the Rule.  *See, e.g.*, *Util. Air Regulatory Grp.*, 471 F.3d at

1339 (it was "reasonable to infer that at least one member" would visit a park negatively impacted

by a challenged EPA rule "given the organization's large membership," even though affidavits did

not "clearly indicate" that members would do so); *see Lujan*, 504 U.S. at 561 (at this stage, the

Court must "presume that general allegations embrace those specific facts that are necessary to

support the claim") (citations and brackets omitted).  The Government's claim is thus without

merit.

6. The Government argues that Plaintiff cannot challenge the pendency of the Rule because

"that is not how ratification works; once ratified, the Rule was always valid, including at the time

of its issuance."  Mem. 15, 17.  Lacking a certain sense of irony, the Government argues that this

Court, like the D.C. Circuit, "need not opine" on the merits of Mr. Whitaker's designation (even

though obviously it already has), because the Rule's ratification "cured any alleged defect."  *Id.* at

13.  Thus, the Government presses, the ratification requires "dismissal . . . for failure to state a

claim upon which relief can be granted," and, in any event, "no mootness exception applies."  *Id.*

at 14 n.5.

Plaintiff disagrees, and intends to seek en banc review at the D.C. Circuit to argue that its

claims for declaratory relief related to the Rule are not moot under the voluntary cessation doctrine.

Plaintiff understands, though, that this Court is bound by the D.C. Circuit's panel opinion, which

forecloses the argument.  Thus, while Plaintiff does not waive any of its arguments as to ratification,

voluntary cessation, or the merits, it incorporates its previous arguments by reference so as to

preserve all its claims, rather than waste this Court's time by briefing them again here.  *Supra*

note 2.

19

## CONCLUSION

For the foregoing reasons, the Court should enter judgment against Plaintiff on the merits based on its previous decision.  Anything else would be an advisory opinion.  If the Court chooses to decide the other issues raised by the Government, even though doing so will have no effect on the outcome of this case, it should find that Plaintiff has standing on its policy claim and enter judgment against Plaintiff on the merits.

Dated:  May 23, 2019

Respectfully submitted,

By:  /s/ Thomas C. Goldstein

Thomas C. Goldstein (Bar No. 458365)
TGoldstein@goldsteinrussell.com
Daniel Woofter (*Pro Hac Vice*)
DHWoofter@goldsteinrussell.com
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue
Suite 850
Bethesda, MD 20814
(202) 362-0636

*Attorneys for Plaintiff Firearms Policy Coalition, Inc.*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2019, the foregoing was filed electronically via the Court's

CM/ECF system which sent notification of such filing to all counsel of record.


/s/ Thomas C. Goldstein
Thomas C. Goldstein