## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAMIEN GUEDES,
                    *et al.*

                    Plaintiffs,

          v.

BUREAU OF ALCOHOL, TOBACCO
FIREARMS, AND EXPLOSIVES ("ATF"),
          *et al.*

                    Defendants.

Case No.  1:18-cv-02988-DLF

Judge Friedrich

FIREARMS POLICY COALITION, Inc.

                    Plaintiff,

          v.

WILLIAM P. BARR,
                    *et al.*

                    Defendants.

Case No.  1:18-cv-03083-DLF

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................3

   I.   THE COURT MUST DETERMINE THAT IT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS BEFORE REACHING THE MERITS.................................... 3

   II.   PLAINTIFF'S FVRA-POLICY CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING. ....................................................................................................... 6

      A.   Plaintiff Lacks Article III Injury to Bring Its FVRA-Policy Claim............................ 7

      B.   Any Injury From An FVRA Policy Is Not Fairly Traceable To Any Challenged Conduct Of The Named Defendants Here, But Rather To The President, Who Has Not Been And Could Not Be Sued For His Official Acts. ............................. 20

   III.   PLAINTIFF'S LIMITED CLAIM RELATED TO THE FINAL RULE SHOULD BE DISMISSED FOR LACK OF STANDING. ........................................................... 24

   IV.   PLAINTIFF CONCEDES THAT IT LOSES ON THE MERITS CONCERNING THE VALIDITY OF WHITAKER'S DESIGNATION. ............................................... 25

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................................... 19, 20

*Am. Chemistry Council v. U.S. Dep't of Transp.,*
    468 F.3d 810 (D.C. Cir. 2006) ......................................................................................16

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) ..........................................................................................9

*Berry v. Reagan,*
    No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ....................................................23

*Bowie v. Maddox,*
    642 F.3d 1122 (D.C. Cir. 2011) ......................................................................................5

*Calvetti v. Antcliff,*
    346 F. Supp. 2d 92 (D.D.C. 2004) ...............................................................................17

*Chamber of Commerce v. EPA,*
    642 F.3d 192 (D.C. Cir. 2011) ......................................................................................16

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ..........................................................................................................9

*City of Waukesha v. EPA,*
    320 F.3d 228 (D.C. Cir. 2003) ......................................................................................14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .............................................................................................*passim*

*Clinton v. City of New York,*
    524 U.S. 417 (1998) ......................................................................................................22

*Conservation Law Found. v. Evans,*
    360 F.3d 21 (1st Cir. 2004) ...........................................................................................19

*Ctr. for Biological Diversity v. Dep't of Interior,*
    563 F.3d 466 (D.C. Cir. 2009) ......................................................................................14

*Ctr. for Biological Diversity v. U.S. Dep't of State,*
    No. 18-563, 2018 WL 5840515 (D.D.C. Nov. 8, 2018) ................................................16

*Ctr. for Reproductive Law and Policy v. Bush,*
    304 F.3d 183 (2002) ................................................................................................... 3, 4

*Davis v. FEC,*
    554 U.S. 724 (2008) ...................................................................................................3

*DiamlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................................13

*Emory v. United Air Lines, Inc.,*
    720 F.3d 915 (D.C. Cir. 2013) ............................................................................ 3, 4

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
    28 F.3d 1268 (D.C. Cir. 1994) ................................................................................17

*FDIC v. Meyer,*
    510 U.S. 471 (1994) .............................................................................................20-21

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ....................................................................................21, 22, 23

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) .................................................................................................23

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior,*
    478 F. Supp. 2d 11 (D.D.C. 2007) .........................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .................................................................................................19

*Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) .................................................................................................22

*Guedes v. ATF,*
    920 F.3d 1 (D.C. Cir. 2019)........................................................................... 5, 10, 13

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .................................................................................................17

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.,*
    751 F.3d 629 (D.C. Cir. 2014) ..................................................................................4

*In re Navy Chaplaincy,*
    928 F. Supp. 2d 26 (D.D.C. 2013), *aff'd* 738 F.3d 425 (D.C. Cir. 2013)................4

*Int'l Refugee Assistance Project v. Trump,*
    857 F.3d 554 (4th Cir. 2017), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017)..................21

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010)..................................................................................17

*Landry v. FDIC*,
  204 F.3d 1125 (D.C. Cir. 2000) ...................................................................................14

*Lane v. Holder*,
  703 F.3d 668 (4th Cir. 2012) .......................................................................................18

*Langevine v. Dist. of Columbia*,
  106 F.3d 1018 (D.C. Cir. 1997) .....................................................................................5

*Lemma v. Hispanic Nat'l Bar Assoc.*,
  318 F. Supp. 3d 21 (D.D.C. 2018) ............................................................................ 4, 5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 14, 15, 19, 20

*Mackie v. Bush*,
  809 F. Supp. 144 (D.D.C. 1993), *vacated sub nom.*, 10 F.3d 13 (D.C. Cir. 1993) ................23

*McKenzie v. City of White Hall*,
  112 F.3d 313 (8th Cir. 1997) .......................................................................................24

*Meng v. Schwartz*,
  305 F. Supp. 2d 49 (D.D.C. 2004) ................................................................................6

*Mississippi v. Johnson*,
  71 U.S. 475 (1866) .....................................................................................................22

*Munsell v. U.S. Dep't of Agric.*,
  509 F.3d 572 (D.C. Cir. 2007) ....................................................................................10

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) ........................................................................................16

*Nat'l Treasury Emps. Union v. Nixon*,
  492 F.2d 587 (D.C. Cir. 1974) ....................................................................................22

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ............................................................................ 21, 23

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ...................................................................................................21

*Norton v. Mathews*,
  427 U.S. 524 (1976) .....................................................................................................4

*PETA v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) ............................................................................. 7, 18

*Petworth Holdings, LLC v. Bowser*,
   308 F. Supp. 3d 347 (D.D.C. 2018) ...................................................................24

*Pub. Citizen, Inc. v. Trump*,
   297 F. Supp. 3d 6 (D.D.C. 2018) ......................................................... 9, 10, 12

*Rainbow/PUSH Coal. v. FCC*,
   396 F.3d 1235 (D.C. Cir. 2005) .............................................................. 18, 19

*Seale v. INS*,
   323 F.3d 150 (1st Cir. 2003)......................................................................... 3

*Sherrod v. Breitbart*,
   720 F.3d 932 (D.C. Cir. 2013) ................................................................ 3, 4

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) .................................................................................... 3

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016), *as revised* May 24, 2016........................................19

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ..................................................................................20

*Steel Co. v. Citizens for Better Environment*,
   523 U.S. 83 (1998) ........................................................................... 1, 3, 19

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................ 15, 16

*Susan B. Anthony v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................... 9

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) .............................................................. 21, 23

*TRW, Inc. v. FTC*,
   647 F.2d 942 (9th Cir. 1981) .....................................................................18

*United States v. W. Elec. Co.*,
   907 F.2d 1205 (D.C. Cir. 1990) ................................................................. 5

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981) ..................................................................................25

*Utility Air Regulatory Group v. EPA.*,
   471 F.3d 1333 (D.C. Cir. 2006) .................................................................17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
 454 U.S. 464 (1982) .................................................................................................................20

*Zuber v. Allen*,
 402 F.2d 660 (D.C. Cir. 1968) .................................................................................................25

**<u>Statutes</u>**

5 U.S.C. § 500 .............................................................................................................................21

5 U.S.C. § 3345(a) ...............................................................................................................*passim*

5 U.S.C. § 3347(a) ...........................................................................................................10, 11, 12

18 U.S.C. ch. 44 .........................................................................................................................12

26 U.S.C. ch. 53 .........................................................................................................................12

26 U.S.C. § 7801(a)(2) ...............................................................................................................12

28 U.S.C. § 599A(c)(1) ..............................................................................................................12

Firearm Owners Protection Act,
 Pub. L. No. 99-308, 100 Stat. 449 (1986) ...............................................................................12

Homeland Security Act of 2002,
 Pub. L. No. 107-296, 116 Stat. 2135 (2002) ...........................................................................12

## **INTRODUCTION**

The parties agree that the Court should dismiss Plaintiff's Second Amended Complaint.  The principal dispute on this motion is whether the Court may jump to dismissing for failure to state a claim, as Plaintiff suggests, or whether the Court is bound by *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), to first address the question of its jurisdiction.

Plaintiff's sole argument for a dismissal on the merits relies on a narrow exception to *Steel Co.*'s general rule, under which a court may dismiss a claim on the merits without addressing jurisdiction if the merits issue is foreordained by prior controlling precedent and the case presents a difficult or novel question of jurisdiction.  Plaintiff argues that this Court's denial of Plaintiff's motion for preliminary injunction and the D.C. Circuit's decision affirming the denial foreclose the merits of Plaintiff's challenges, respectively, to a supposed policy under the Federal Vacancies Reform Act ("FVRA") and to the Final Rule with respect to the alleged harms it imposed before it was ratified.

These decisions were made in the context of a prospective challenge to the Final Rule, for which Plaintiff had standing.  But now, Plaintiff has dropped that challenge to assert two new claims in the Second Amended Complaint, for which it clearly lacks standing.  And the exception to *Steel Co.* does not obviate the need for the Court to address its lack of jurisdiction.  Although the Court correctly rejected Plaintiff's FVRA and Appointments Clause arguments in denying Plaintiff's preliminary injunction motion, the ruling does not trigger the limited exception to *Steel Co.*  That exception does not extend to merits issues decided in prior *district court* decisions, which are of course, non-binding—much less interlocutory decisions (like the Court's denial of the preliminary injunction motion), which do not constitute law-of-the-case.  Moreover, the jurisdictional flaws in Plaintiff's claims are plain, and thus the Court is not presented with any difficult or novel question of jurisdiction.

Because the Court must reach jurisdiction first, it should dismiss Plaintiff's claims for lack of jurisdiction for two reasons.  First, Plaintiff lacks standing to challenge an alleged Presidential "policy"

of using the FVRA to designate acting principal officers in circumstances like Whitaker's because no such policy exists, because Plaintiff can show no ongoing injury or non-speculative imminent threat of future harm from any such policy, and because none of the named Defendants has adopted or implemented the purported policy.  Plaintiff's theory of standing is based on a daisy chain of at least seven contingencies, all of them conjectural: that there will be a future vacancy in a principal office; that the vacancy will be subject to an office-specific statute; that a hypothetical first assistant will be available; that the President will bypass that first assistant to designate a hypothetical senior employee to serve as acting principal officer; that the acting principal officer will have the authority to regulate guns; that he or she will exercise his or her discretion to promulgate a regulation concerning guns; and that the resulting regulation will injure Plaintiff or one of its members.  That extended sequence of contingencies cannot be reconciled with well-established principles of Article III standing under Supreme Court and D.C. Circuit authority.  Moreover, even if such an injury were cognizable, it is not fairly traceable to any of the named Defendants' conduct because the alleged policy concerning appointment of acting agency heads could be adopted and enforced only by the President himself, whom Plaintiff has not even sued and cannot sue under well-established separation-of-powers principles.  Second, Plaintiff's challenge to the Final Rule, based on a supposed temporary injury, seeks nothing more than an improper advisory opinion given that the requested relief does not even purport to redress that injury, as Plaintiff does not appear to contest in its Opposition.

For those reasons, the Court should dismiss Plaintiff's claims for lack of jurisdiction.  But even if the Court were to disagree, they still should be dismissed for failure to state a claim upon which relief can be granted, a conclusion on which all parties agree.

## **ARGUMENT**

## I.   **THE COURT MUST DETERMINE THAT IT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS BEFORE REACHING THE MERITS**.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction" over each claim for relief. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *see also Davis v. FEC*, 554 U.S. 724, 734 (2008) (Article III "[s]tanding is not dispensed in gross," but rather must be established "for each claim" and "form of relief" sought (citation omitted)). "Without jurisdiction the court cannot proceed at all in any cause," *Steel Co.*, 523 U.S. at 94, and a court "may not assume jurisdiction for the purpose of deciding the merits of the case," *Sinochem*, 549 U.S. at 431.

Notwithstanding this general rule, a court is permitted in rare circumstances to avoid deciding "difficult questions of its jurisdiction, when a prior judgment of the court forecloses the merits issue." *Sherrod v. Breitbart*, 720 F.3d 932, 937 (D.C. Cir. 2013); *see also Steel Co.*, 523 U.S. at 98-99 (discussing the "peculiar case[s]" supporting the exception); *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 920 (D.C. Cir. 2013); *Seale v. INS*, 323 F.3d 150, 157 (1st Cir. 2003) (addressing merits issue that was "foreordain[ed]" by precedent in order to "avoid deciding . . . the difficult question of the district court's subject matter jurisdiction"); *Ctr. for Reproductive Law and Policy v. Bush*, 304 F.3d 183, 195 (2002) (court could assume jurisdiction "where the precise merits question has already been decided in another case by the same court," rather than "addressing a novel question of jurisdiction").

Plaintiff argues the Court should invoke this exception to *Steel Co.*'s general rule and dismiss Plaintiff's claims on the merits, without reaching the issue of jurisdiction, because the Court's prior decision that Whitaker's designation was valid under the FVRA and the Appointments Clause and the D.C. Circuit's decision that the Final Rule was validly ratified foreclose Plaintiff's claims.  *See* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 2-5, ECF No. 47.  But the narrow exception to *Steel Co.* applies only to cases "that present 'difficult and perhaps close jurisdictional arguments' and that raise

'plainly insubstantial' issues, controlled by established precedent, on the merits." *Lemma v. Hispanic Nat'l Bar Assoc.*, 318 F. Supp. 3d 21, 24 (D.D.C. 2018) (quoting *Sherrod*, 720 F.3d at 936-37); *see also Norton v. Mathews*, 427 U.S. 524, 530 (1976) (addressing merits that were foreordained by prior Supreme Court decision rather than "resolv[ing] the details of . . . difficult and perhaps close jurisdictional arguments"); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 633 (D.C. Cir. 2014) (exception permitted court to "bypass complex questions dealing with appellate jurisdiction"). This case does not satisfy those requirements for two reasons.

First, this Court's decision denying Plaintiff's motion for preliminary injunction does not constitute controlling, established precedent. The cases recognizing the narrow exception involve merits decisions that were conclusively foreclosed by prior Supreme Court decisions, *see, e.g.*, *Norton*, 427 U.S. at 530, or by prior circuit court decisions, which are binding on subsequent panels of the circuit court, *see, e.g.*, *Ctr. for Reproductive Law*, 304 F.3d at 193. It makes little sense to extend that same rule to district court decisions, which do not constitute binding precedent. That is particularly the case here because the Court's decision on the merits of Plaintiff's FVRA and Appointments Clause arguments occurred in the context of a motion for preliminary injunction. While that decision was correct and Plaintiff has offered no reason why the Court should deviate from it, *see* Defs.' Mot. to Dismiss Second Am. Compl. ("Defs.' Mem.") at 18, ECF No. 46, the Court is technically not bound by that decision as "law of the case." *See, e.g.*, *In re Navy Chaplaincy*, 928 F. Supp. 2d 26, 35 (D.D.C. 2013) ("[I]nterlocutory orders are not subject to law of the case doctrine and may always be reconsidered prior to final judgment." (quoting *Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997)), *aff'd* 738 F.3d 425 (D.C. Cir. 2013).

Indeed, when Plaintiff inevitably appeals the dismissal of its FVRA-policy claim, which Plaintiff agrees must be dismissed, the merits of its arguments will not be foreordained by any prior decision of the *D.C. Circuit*, which has not addressed the merits of Plaintiff's FVRA and Appointments

Clause arguments. *See Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019). Necessarily, then, the D.C. Circuit will need to address the question of Plaintiff's standing. And if this Court declines to address jurisdiction, the D.C. Circuit will need to do so without the benefit of the Court's views on the issue. *See, e.g.*, *Bowie v. Maddox*, 642 F.3d 1122, 1131-32 (D.C. Cir. 2011) (D.C. Circuit's "normal rule is to avoid . . . consideration" of "legal question[s] in the first instance without the benefit of the district court's initial view" (citation omitted)); *United States v. W. Elec. Co.*, 907 F.2d 1205, 1210 (D.C. Cir. 1990) (remanding case where, although court had authority to address issue in first instance, the court "prefer[red] not to rule dispositively on the issue without the benefit of the district court's views").

Second, even if the merits of Plaintiff's claims are foreordained by prior decisions in this litigation, the *Steel Co.* exception still would not apply because there is nothing "difficult" or complex about the jurisdictional defects in the Second Amended Complaint. *See Lemma*, 318 F. Supp. 3d at 24 (finding that *Steel Co.* exception could not be invoked even where "the present case can be easily resolved on the merits based on established precedent," because "the Court cannot conclude that the [jurisdictional] defense presents a 'difficult' or 'close' question"). It is well-established that a plaintiff cannot base its argument for standing on mere speculation. Here, Plaintiff does exactly that, relying on conjecture that some future hypothetical regulation could be promulgated by an unspecified future acting principal officer who was invalidly designated pursuant to the particular circumstances challenged here and that Plaintiff or one of its members could then be injured by that hypothetical regulation. *See* Defs.' Mem. at 8-13; *see also infra* Pt. II.A. It is equally well-established that any injury must be fairly traceable to the defendants' challenged conduct, yet only the President's conduct is at issue and Plaintiff has not even sued him and, in any event, could not do so. *See* Defs.' Mem. at 10-12; *see also infra* Pt. II.B. And of course, a court lacks jurisdiction to issue a declaratory judgment that would do nothing to redress any purported injury, *see* Defs.' Mem. at 15-16, a point which Plaintiff

does not even contest.  Far from raising thorny issues of jurisdiction, then, Plaintiff's claims are barred under the most foundational principles of Article III standing.

Accordingly, the exception to *Steel Co.*'s general rule does not apply here.  Rather than dismissing on the merits, the Court must dismiss for lack of standing.[1]

## II.  PLAINTIFF'S FVRA-POLICY CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING.

The Second Amended Complaint alleges that the President has adopted a "policy" of "using the FVRA to designate an employee to act as an officer, to designate a non-Senate confirmed official or employee to act as a principal officer . . . when that officer's first assistant is available to serve, and to displace the acting principal officer designated by an office-specific designation statute."  Second Amend. Compl. ("SAC") ¶¶ 24, ECF No. 44.  Plaintiff clearly lacks Article III standing to challenge this putative FVRA policy and, indeed, has failed to adequately allege that any such policy even exists.  As a result, the Court lacks jurisdiction over the various claims for relief against the purported policy.  Furthermore, any such policy is not fairly traceable to the named Defendants' challenged conduct.  Apart from the United States (which has sovereign immunity), none of the Defendants has adopted or is implementing the challenged policy, which solely concerns the President's exercise of his appointment power.  But Plaintiff has not even named the President as a defendant.  Nor could it have sought to restrain the President in the performance of his official duties.  Plaintiff cannot point to an express cause of action authorizing this Court to enter such extraordinary remedy against the

---

[1] Curiously, Plaintiff invites the Court to dismiss its claims on the merits rather than for lack of standing, despite the fact that, unlike a dismissal for lack of jurisdiction, a dismissal on the merits would have preclusive effects on Plaintiff's ability to litigate any future challenge to a hypothetical regulation promulgated by a hypothetical invalidly designated official.  *See, e.g., Meng v. Schwartz,* 305 F. Supp. 2d 49, 61-62 (D.D.C. 2004).  The fact that Plaintiff is pushing for a decision that would preclude future litigation further indicates that, as discussed *infra*, this case is not being driven by an actual controversy between the parties over a concrete dispute, but rather by a desire to obtain an advisory opinion from the appellate courts.

head of a coordinate branch, and it is well established that this Court cannot exercise its implied equitable powers in a way that raises significant separation of powers concerns.

## A. Plaintiff Lacks Article III Injury to Bring Its FVRA-Policy Claim.

"As an organization, [Plaintiff] can assert standing on its own behalf, on behalf of its members or both." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (citation omitted). Plaintiff asserts that it has standing to challenge a putative FVRA policy on behalf of its members and in its own right. It alleges it has *associational* standing because it "has hundreds of thousands of gun-owning members and supporters across the United States" and since "[g]un measures are regularly promulgated by the Government," it is highly likely that at least one of its members will be affected by "one [hypothetical gun control] regulation promulgated by" a hypothetical acting principal officer "invalidly designated" by the President pursuant to the challenged FVRA policy. Pl.'s Opp'n at 8. Plaintiff also alleges that it is likely to suffer a *direct* injury by expending resources to counteract the hypothetical gun regulation that is likely to be promulgated by a hypothetical acting official invalidly designated by the President in accordance with the challenged policy. *See id.* at 8-9. As Defendants explain below, Plaintiff has failed to satisfy the requirements for Article III standing because its underlying theory of injury is wholly speculative from beginning to end. *See* Defs.' Mem. at 7-12.

**i.** Plaintiff cannot show any imminent threat of injury from the alleged FVRA policy because it has not plausibly alleged the existence of any actual policy. Plaintiff incorrectly characterizes Defendants' contention that the Second Amended Complaint does not adequately allege the existence of a policy as a "non-standing argument" relevant to the merits of his FVRA-policy claim, as opposed to the Court's jurisdiction. Pl.'s Opp'n at 12. But Plaintiff's failure to aver well-pleaded facts showing the existence of a policy is relevant to its standing to challenge the policy. Indeed, the fact that there is no such thing as an actual FVRA policy demonstrates that Plaintiff suffers no imminent threat of

harm from the possibility that some future acting principal officer will be designated under circumstances like Whitaker's who will then take an action that injures Plaintiff.

According to Plaintiff, Whitaker's allegedly "unprecedented" designation, the President's alleged "proclivity for using acting officers," and the Office of Legal Counsel's ("OLC") legal interpretations, through some legal alchemy, give rise to a policy that the President is likely to implement whenever there is a vacant principal office. Pl.'s Opp'n at 10, 14 n.6 (quoting SAC ¶ 5). But these allegations are plainly insufficient to establish the existence of an actual policy. None of these allegations demonstrate, for example, that the President has an evident preference towards invoking his FVRA authority under 5 U.S.C. § 3345(a)(3) to bypass first assistants automatically designated by office-specific statutes, as opposed to designating a Senate-confirmed official pursuant to his authority under § 3345(a)(2) or just allowing a first assistant to serve as acting under § 3345(a)(1)—neither of which would fall under the scope of Plaintiff's alleged policy.

Moreover, Plaintiff's apparent belief that *OLC's* legal opinions on the scope of the President's FVRA *authority* demonstrate the existence of a policy *by the President* to *routinely exercise* that authority to make designations that resemble Whitaker's, Pl.'s Opp'n at 14-15, is based on nothing but Plaintiff's say-so. Plaintiff cites no authority for the proposition that a legal opinion by OLC on the boundaries of the President's discretionary authority is actionable as an executive "policy." Indeed, adopting Plaintiff's expansive view of what constitutes a "policy" would be a recipe for advisory opinions. Under this view, anyone who disagreed with the Executive Branch's interpretation of a law could bring suit challenging that interpretation as a policy, even if entirely divorced from any concrete dispute about the *application* of that interpretation. The mere fact that the Executive Branch interprets a law to authorize a certain action does not remotely mean that a plaintiff can challenge that interpretation before that interpretation will be imminently or actually applied. Nor is it of any moment that the President may have invoked OLC's interpretation to designate Whitaker because

Plaintiff cannot establish any likelihood that the President will do so again and that Plaintiff would be harmed by it. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 106-07 (1983).

**ii.** The Second Amended Complaint relies on an overly attenuated chain of assumptions that is far too speculative to confer Article III standing. Where a plaintiff seeks declaratory and injunctive relief for a "predicted future injury" that may never occur—*i.e.*, the hypothetical harm that may result from "future gun control regulations promulgated by unlawfully designated acting officers," Pl.'s Opp'n at 7—the plaintiff "bears a more rigorous burden to establish standing." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (citation omitted). A court cannot "assume the truth of mere conclusory statements," and "must reject vague and overly speculative predictions about future events." *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 19 (D.D.C. 2018) (citations omitted). For Plaintiff to plausibly allege an *imminent* threat of future injury with respect to its FVRA-policy claim, it must proffer facts showing that the alleged harm to its members or to itself is "certainly impending," or that there is "a 'substantial risk' that the harm will occur." *Susan B. Anthony v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)). Such harm must in turn be traceable to the challenged action—namely, the alleged executive policy *by the President* to designate individuals like Whitaker as acting principal officers, while bypassing an extant first assistant. *See Clapper*, 568 U.S. at 409-10.

Plaintiff's theory is that it and its members face an *imminent* risk of injury traceable to the challenged FVRA policy because allegedly there is a lot of turnover in high-level positions in executive agencies, Presidents have enacted some executive orders under the FVRA that provide for a different line of succession, the current President has a preference for acting agency heads, gun-control regulations are enacted "all the time," and Plaintiff was already harmed by the issuance of Whitaker's bump-stock rule. *See* Pl.'s Opp'n at 5-11. Thus, Plaintiff concludes that "it is likely that [an invalidly designated] acting official will promulgate gun control regulations" in the future that will harm at least

9

one of Plaintiff's gun-owning members, drain Plaintiff's resources in furtherance of its mission, or both. *Id.* at 10.

But that theory rests on nothing more than impermissible speculation.  For Plaintiff to establish standing, the Court necessarily would need to assume that: (1) there will be an "absence or vacancy" in a hypothetical principal office, SAC ¶¶ 1, 13; (2) the vacant principal office is subject to "an office-specific designation statute" that "automatically designate[s a] first assistant to act during the absence or vacancy," *id.*; 5 U.S.C. § 3347(a)(1)(B); (3) a hypothetical "first assistant" designated by the office-specific statute is available to serve, 5 U.S.C. § 3345(a)(1); (4) the President will bypass the first assistant and invoke his discretionary and exclusive authority under the FVRA, *id.* § 3345(a)(3), to direct an unspecified senior employee to perform temporarily the functions and duties of the vacant principal office; (5) the new acting principal officer has the authority to promulgate a regulation relating to guns; (6) the acting principal officer will exercise that discretionary authority and promulgate a regulation affecting guns; and (7) the unspecified regulation will result in a concrete and particularized injury that is actual or imminent to at least one of Plaintiff's gun-owning members (*e.g.*, their ability to own, sell, or possess guns) or to Plaintiff itself (*e.g.*, being forced to expend resources to avert a direct injury to itself).  In other words, Plaintiff relies on "a highly attenuated chain of possibilities," *Clapper*, 568 U.S. at 410, supported by nothing more than "sheer speculation," *Munsell v. U.S. Dep't of Agric.*, 509 F.3d 572, 584 (D.C. Cir. 2007); *cf. Guedes*, 920 F.3d at 15 (assuming that "(i) the Attorney General would have to leave office; (ii) the President would then have to appoint a mere employee in his stead . . . ; (iii) that the new Acting Attorney General would then have to promulgate a legislative rule; and (iv) by sheer coincidence, that rule would have to adversely affect [the plaintiffs'] legal rights" would be "quixotic speculation").

In fact, even the individual links of this conjectural chain of hypotheticals are unsupported by anything more than speculation.  To establish the likelihood that there will be an "absence or vacancy"

10

in a principal office, SAC ¶¶ 1, 13, Plaintiff merely points to the "high rate of turnover" in "high-level positions" in recent years and the fact that "[t]here are 33 more vacancies waiting to be filled" in this presidency, Pl.'s Opp'n at 9-10.  But there is of course no discernible pattern as to when a vacancy may occur, particularly in a principal office.

Moreover, none of the 33 vacancies implicate the challenged FVRA policy regarding the designation of acting principal officers in the face of an office-specific designation statute that automatically designates a first assistant as the acting head under 5 U.S.C. § 3347(a)(1)(B).  None involves the head of an executive agency, and indeed only 14 out of the 33 offices even require a presidentially-appointed and Senate-confirmed officer.  *See* Pl.'s Opp'n at 10  (Deputy Secretary for Homeland Security, five Under Secretaries for Homeland Security, Agriculture, Commerce, and Education, and eight Assistant Secretaries for State, Energy, Health and Human Services, and Housing and Urban Development).  At no point does Plaintiff identify any existing vacancy in the entire Federal Government that lacks a properly designated acting official and that would allow the President to implement this so-called FVRA policy to designate a senior employee like Whitaker an acting principal officer, while bypassing a first assistant who is available to serve.

And that is only the beginning of Plaintiff's herculean efforts to speculate its way into the merits.  Plaintiff asserts that because of "the President's [alleged] proclivity for using 'acting' officers"—which, of course, is not tantamount to an executive policy, *see supra* p.7—the President is likely to designate an invalidly acting official.  Pl.'s Opp'n at 10.  There are several problems with this unfounded prediction.  Plaintiff offers no facts whatsoever to reasonably infer that the President is likely to invoke his FVRA authority under § 3345(a)(3) to designate an acting principal officer any more than he could invoke his authority under § 3345(a)(2) to designate another Senate-confirmed official an acting agency head or to choose not to make a designation and allow the "first assistant" in the agency to serve in an acting capacity under § 3345(a)(1), neither of which would implicate Plaintiff's

FVRA policy.   Rather than pointing to *any* indication that the President is more likely to rely on § 3345(a)(3) than any other authority, Plaintiff invites the Court to simply assume that the President will invoke § 3345(a)(3).   But "in the absence of clear markers—such as proposed rules or  . . . pronouncements [related to the invocation of § 3345(a)(3) to bypass an extant deputy over the application of § 3345(a)(1) & (2)]—the Court should avoid speculating about how [the President] will exercise [his] discretion." *Pub. Citizen*, 297 F. Supp. 3d at 22-23 (collecting cases).

Furthermore, even if a vacancy in a principal office subject to § 3345 and § 3347(a)(1)(B) were to occur and even if the President were to exercise his authority under § 3345(a)(3) to direct a senior employee to bypass a first assistant who is available to serve, Plaintiff can only speculate as to whether the duties and functions of the hypothetical vacant principal office will include the promulgation of gun-control regulations.[2]   Plaintiff argues that "gun control regulations" are "enacted all the time." Pl.'s Opp'n at 10.   But even if this were true, as Plaintiff baldly asserts, gun control regulations are largely promulgated by the Department of Justice—the agency charged with the implementation and enforcement of the Gun Control Act of 1968, 18 U.S.C. ch. 44; the National Firearms Act of 1934 ("NFA"), 26 U.S.C. ch. 53; and the Firearm Owners Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986).[3]   *See* Pl.'s Opp'n at 8 (citing Department of Justice regulations for proposition that "gun measures are regularly promulgated by the Government").

---

[2] Plaintiff identifies vacant offices of Under Secretaries and Assistant Secretaries in the Departments of Agriculture, Commerce, Education, and Energy, among others.   *See* Pl.'s Opp'n at 10.   But Plaintiff does not proffer any facts suggesting that any of these acting officials will promulgate a gun-control regulation likely to harm Plaintiff or its members.

[3] Although the NFA provisions still refer to the "Secretary of the Treasury," 26 U.S.C. ch. 53, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred the functions of from the Department of the Treasury to the Department of Justice, under the general authority of the Attorney General.   26 U.S.C. § 7801(a)(2); 28 U.S.C. § 599A(c)(1).

Plaintiff, of course, cannot plausibly allege that a new vacancy will arise in the office of Attorney General in the immediate future and that the President will invoke his authority under § 3345(a)(3) to designate a senior employee to bypass the Deputy Attorney General. *See Guedes*, 920 F.3d at 15. Recognizing that fact, the Opposition instead asserts that the promulgation of gun regulations "is not a non-delegable function of the office, as far as Plaintiff can tell," and because that function "can be delegated" to "thousands" of persons in the Department of Justice, the "likelihood that another invalid officer will be tasked with implementing such regulations in the future" is high. Pl.'s Opp'n at 7 n.3. Once again, Plaintiff tries too much.

Plaintiff's conclusory assertion suffers at least four independently fatal flaws. First, Plaintiff does not identify any vacant principal office in the Department of Justice that would be subject to the implementation of the challenged FVRA policy. Second, the presumptive "thousands" of delegees that, according to Plaintiff, could promulgate gun control regulations are not principal officers. Thus, any action by one of these persons would not implicate the challenged FVRA policy, meaning that any resulting harm from the hypothetical regulation could not be traced to the policy. Third, it is entirely speculative whether an Attorney General will delegate his function of promulgating gun-control regulations, and if so, to an invalid acting officer, as opposed to a validly-appointed acting officer. Fourth, it is entirely speculative whether a gun-control regulation will even be promulgated by this hypothetical invalid acting officer. Once again, Plaintiff asks the Court to second guess the Department's "broad and legitimate discretion" of whether or not to promulgate regulations, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) (citation omitted), to speculate in turn about the likelihood of a future gun regulation being promulgated that may or may not concretely affect Plaintiff or its members.

There is nothing imminent about the alleged threats of harm identified by Plaintiff. In *Clapper*, the Supreme Court noted that "[a]lthough imminence is concededly a somewhat elastic concept, it

cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).  Plaintiff's standing theory stretches the concept of "imminence" past the point that any elasticity would allow.  Indeed, the Opposition fails to even reference *Clapper*, let alone attempt to reconcile that case with Plaintiff's theory.  *See id.* at 409-10 (injury based on "a highly attenuated chain of possibilities" was insufficient to establish standing); *cf. Ctr. for Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) (where plaintiffs could only plausibly aver that "any significant adverse effects . . . 'may' occur at some point in the future," it did "not amount to the . . . 'certainly impending' injury required to establish standing.").  Such reconciliation is impossible: if none of the organizational plaintiffs in *Clapper* could establish that the harm of being subjected to the ongoing surveillance policy challenged there satisfied the "certainly impending" requirement, then none of Plaintiff's members can show that a hypothetical injury by a hypothetical future agency action taken by a hypothetical future acting official unlawfully appointed pursuant to an alleged unwritten policy satisfies it.

Nor can Plaintiff evade the speculative nature of the asserted harm by relying on "procedural injury" cases like *City of Waukesha v. EPA*, 320 F.3d 228 (D.C. Cir. 2003) (per curiam).  *See* Pl.'s Opp'n at 11.  The D.C. Circuit has held in these cases that "all that is necessary is to show that the procedural step [that was denied or violated] was connected to the substantive result."  *City of Waukesha*, 320 F.3d at 235 (citation omitted).  That is because the plaintiff in a procedural injury case is "seeking to enforce a procedural requirement," "the disregard of which could impair a separate concrete interest of the[ plaintiff]."  *Lujan*, 504 U.S. at 572.  But all of these cases involve challenges to "final agency actions" that result in actual harm to a plaintiff.  *See, e.g.*, *City of Waukesha*, 320 F.3d at 231 (challenging regulation under APA for violating procedural requirements); *Landry v. FDIC*, 204 F.3d 1125, 1130 (D.C. Cir. 2000) (challenging order by Administrative Law Judge on Appointments Clause grounds).  As a result,

even where the legal basis for the claim is merely procedural, the injured plaintiff can still challenge the completed agency action and need not plead that the substantive result would change if there were no procedural violation.  *See Lujan*, 504 U.S. at 589 n.7.

By contrast, there is no basis to challenge a "procedural policy" to designate certain acting officials under specific circumstances absent a concrete application of the policy in a manner that injures Plaintiff in fact.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").  Simply put, this is not a case where Plaintiff is challenging a final action on procedural grounds.  As a result, Plaintiff's speculation that a future hypothetical application of the policy that results in an unlawfully-designated official who then takes a future final agency action of gun-control regulation that would injure Plaintiff or its members bears no resemblance to "procedural injury" cases and thus cannot confer standing on Plaintiff to bring its FVRA-policy claim.

**iii.** Plaintiff's theory of associational standing fails for the additional reason that the Second Amended Complaint fails to identify a single member who is facing a threat of imminent harm traceable to the alleged FVRA policy.  When an organization like Plaintiff asserts an associational theory of standing, "[a]t least one member . . . must establish each of the three elements of standing." *Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 15 (D.D.C. 2007). In requiring a plaintiff to identify at the pleading stage at least one *specific* member who can satisfy the injury-in-fact requirement, the Supreme Court in *Summers* rejected an argument that "there is a statistical probability that some of [plaintiff's] members are threatened with [a] concrete injury" on the ground that such an "approach . . . would make a mockery of [the Supreme Court's] prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."  555 U.S. at 497-98.

15

The D.C. Circuit reiterated this point in *Chamber of Commerce v. EPA*, where it stated that "it is not enough to aver that *unidentified* members have been injured.   Rather, the [organization] must specifically 'identify members who have suffered the requisite harm.'"   642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Summers*, 555 U.S. at 499).   Where a plaintiff has "not identified a single member who was or would be injured by [a Government action]," associational standing is lacking.   *Id.* at 200; *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (D.C. Cir. 2011) (affirming dismissal where allegations and declarations "fall short of establishing certainly impending dangers for any particular member of the petitioners' associations").

Here, Plaintiff merely says that because the organization has many members, it is highly likely at least someone will be harmed.   *See* Pl.'s Opp'n at 8.   But Plaintiff fails to identify a single member who can satisfy the elements of Article III standing.   Such failure is fatal to Plaintiff's claim of associational standing.   *See Am. Chemistry Council v. U.S. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006) ("[A]n organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered [or will suffer] an injury-in-fact."); *Ctr. for Biological Diversity v. U.S. Dep't of State*, No. 18-563, 2018 WL 5840515, at *3 (D.D.C. Nov. 8, 2018) (rejecting associational standing where complaint "never—as it must to support representational standing—specifically identifies members who have suffered the requisite harm"). [4]

---

[4] Plaintiff cites *Utility Air Regulatory Group v. EPA.*, 471 F.3d 1333, 1339 (D.C. Cir. 2006), for the proposition that mathematical probability based on the size of an organization's membership is enough to establish the likelihood that at least one of its members will be injured. Pl.'s Opp'n at 8. In that case, the D.C. Circuit noted "with some hesitation" that "given the organization's large membership . . . it [is] reasonable to infer that at least one member will suffer injury-in-fact." *Util. Air*, 471 F.3d at 1339. But Plaintiff ignores the fact that the organization in *Utility Air* included affidavits from specific members concerning the probability of a future injury to establish its associational standing. *See id.* at 1339-40. Defendants are not aware of any court that has cited *Utility Air* for the notion that mathematical probability based on the size of the organization's membership is enough to establish standing, even when the organization is relying on unidentified members. And anyway, *Utility Air* pre-dates both *Summers* and *Chamber of Commerce*.

**iv.** Plaintiff's belated theory of organizational standing to sue on its own behalf also fails. Plaintiff's Opposition suggests in passing, without much factual or legal elaboration, that Plaintiff has been harmed because it "must make additional expenditures . . . to counteract the Government's *ultra vires* [future hypothetical] regulations" and to "respond[ ] to the executive policy." Pl.'s Opp'n at 8-9 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Nowhere in the Second Amended Complaint did Plaintiff "assert a frustration of its purpose or diversion of its resources that would allow the Court to conclude that [Plaintiff] had pleaded organizational standing on its own behalf." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). Plaintiff has not identified any actual resources that have been diverted based on the mere alleged existence of the FVRA policy, as opposed to the bump-stock regulation that is no longer challenged under Plaintiff's FVRA policy claim. That alone is reason to reject Plaintiff's newfound theory.[5]

Moreover, Plaintiff's undeveloped invocation of *Havens* rests on an expansive view of organizational standing that is meritless. Plaintiff's unidentified expenditures to counteract non-existent regulations and a supposed executive policy that by itself has no effect whatsoever on Plaintiff do not confer Article III standing. Even if Plaintiff had to divert resources to counteract this policy in some unspecified manner, thereby reducing its funds available for other purposes, such diversion does not give rise to a cognizable Article III injury because "it results not from any actions taken by [the defendants], but rather from the [organization's] own budgetary choices." *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994); *see also Clapper*, 568 U.S. at 418, 422 (collecting cases and holding that plaintiffs "lack[ed] Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending and because they

---

[5] Further, the Court should not even consider this entirely new jurisdictional allegation not found in the Second Amended Complaint. A party cannot amend their complaint through their pleadings. *See, e.g.*, *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004).

cannot manufacture standing by incurring costs in anticipation of non-imminent harm"). "To determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation [or a policy] suffers a cognizable injury would be to imply standing for organizations with merely abstract concerns with a subject that could be affected by an adjudication." *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (citation omitted); *see also PETA*, 797 F.3d at 1093. Under *Havens*, an organization must assert more than a self-inflicted harm from prioritizing one part of executing a mission over another part; rather, the organization must be threatened with an imminent, direct injury caused by a governmental action that it will suffer unless it diverts resources to avoid the direct injury. *Compare PETA*, 797 F.3d at 1094 (standing where government "injured [PETA's] interests and, consequently, PETA has expended resources to counteract those injuries"), *with Rainbow/PUSH Coal. v. FCC*, 396 F.3d 1235, 1241 (D.C. Cir. 2005) (no standing when harm alleged is setback to organization's "abstract societal interest"). Plaintiff's newly-raised allegations do not constitute that type of diversion of resources.

**v.** Finally, Plaintiff asserts that it has standing to challenge the alleged FVRA policy because the organization and its members are "'concern[ed] with repeated violations' of the FVRA and Appointments Clause." Pl.'s Opp'n at 7 (citation omitted). Plaintiff's entire case focuses unequivocally on the risk of repetition of a Whitaker-like designation, which it believes violates the law. But such focus deeply misunderstands Article III standing law. As the cases that Plaintiff cites demonstrate, the focus on "repetition" of a supposed violation pertains to the applicability of the exceptions to the doctrine of mootness and bear no relation to standing. *See id.* (citing *TRW, Inc. v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981) (case not moot even though alleged unlawful conduct had ceased); *Conservation Law Found. v. Evans*, 360 F.3d 21, 26 (1st Cir. 2004) (case not moot due to risk of repetition of violation)). That is because a court cannot determine whether a claim for relief is moot, if it was never live to begin with. To put it differently, the possibility of a repeated *legal* violation

stemming from the alleged FVRA policy is irrelevant because Plaintiff lacks standing in the first instance over its claim challenging the policy (as opposed to the earlier challenge to the Final Rule). *See Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) (unlike mootness, "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum" (citing *Steel Co.*, 523 U.S. at 109)).

Similarly, Plaintiff appears to misconstrue its injury in fact as to the threatened risk of another allegedly unlawful appointment. Regardless of how sincere Plaintiff's interest in the President's legal compliance with the FVRA and the Constitution may be, Plaintiff (or anyone else for that matter) lacks standing to challenge an alleged policy that, whether lawful or not, causes no actual or imminent harm. Under those circumstances, Plaintiff cannot meet the particularization requirement of Article III standing, as Plaintiff only presents "a generally available grievance about government—claiming only harm to [its] and every citizen's interest in proper application of . . . [the FVRA and the Appointments Clause], and seeking relief that no more directly and tangibly benefits [Plaintiff] than it does the public at large." *Lujan*, 504 U.S. at 573-74 (collecting cases). Further, Plaintiff's concern with repeated legal violations does not meet the separate requirement of concreteness, since allegations concerning a future legal violation that produces no real harm does not give rise to a case or controversy. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016), *as revised* May 24, 2016 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

There is no question that Plaintiff strongly disagrees with the legality of Whitaker's designation. But Plaintiff's "asserted right to have the Government act in accordance with" the FVRA and the Appointments Clause exemplifies the kind of generalized and abstract grievance that does not give rise to Article III standing and must be addressed by the political branches, not the courts. *Allen v. Wright*, 468 U.S. 737, 754 (1984). Were it otherwise, anyone could preemptively sue the Federal

Government to challenge this supposed policy without demonstrating a "judicially cognizable" injury, thereby draining the requirements of Article III of meaning. *Id.*

Adherence to Article III's requirements "assure[s] that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Hoping to get the D.C. Circuit to opine on the merits of Whitaker's designation, Plaintiff refuses now to wait for a factual context that presents a case or controversy. Rather, Plaintiff has contrived a policy out of thin air to continue its quest to challenge the designation of an official who is no longer in office. Because there is no actual or imminent harm to Plaintiff or its members that is traceable to this supposed policy, jurisdiction is lacking and his claim must be dismissed.

**B.      Any Injury From An FVRA Policy Is Not Fairly Traceable To Any Challenged Conduct Of The Named Defendants Here, But Rather To The President, Who Has Not Been And Could Not Be Sued For His Official Acts.**

As discussed previously, Defs.' Mem. at 10-11, Article III standing requires that Plaintiff's alleged injury be fairly traceable to "alleged conduct of the [D]efendant[s]." *Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (citing *Lujan,* 504 U.S. at 560-61). Yet none of the individual Defendants here has the authority to adopt or implement the purported policy on executive appointments because only the President is authorized to designate an acting agency head. *See* 5 U.S.C. § 3345(a)(3) ("the President (and only the President)" possesses the authority at issue); U.S. Const., art. II, § 2. Plaintiff does not deny this. *See* Pl.'s Opp'n at 15. Instead, it summarily asserts that the Court can ignore Plaintiff's failure to name a proper individual Defendant because Plaintiff has also named the United States as a defendant. *See id.* But the United States itself, unlike individual federal officials, cannot be sued without a waiver of sovereign immunity, which does not exist here. *See FDIC*

*v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").[6]

Even if the Court were to construe Plaintiff's suit against the United States as one against the President, Plaintiff could not have sued the President for the equitable relief sought here. *See* Defs.' Mem. at 13 n.4. The Supreme Court has held on multiple occasions that, given separation of powers concerns, a general cause of action does not extend to the President himself absent a clear statement by Congress. *Franklin*, 505 U.S. at 801 ("an express statement by Congress" is required before a cause of action may be extended to the President); *Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982). And Plaintiff has not identified any clear statement under any cause of action allegedly available here.

Indeed, subjecting the President to the relief Plaintiff seeks would likely violate the separation of powers. Though in some inapposite circumstances suits can be brought against the President himself, *see* Pl.'s Opp'n at 15-17 (collecting cases involving matters such as private-capacity damages or subpoena compliance), "in general, this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) (quoting *Franklin*, 505 U.S. at 802-03), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017); *see also Swan v. Clinton*, 100 F.3d 973, 977 n.2 (D.C. Cir. 1996) (recognizing that the same concerns that preclude injunctive relief against the President also preclude declaratory relief); *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have

---

[6] There is a waiver of sovereign immunity under the Administrative Procedures Act ("APA") for claims made against final agency actions, but that waiver is inapplicable here because the alleged policy is not a final agency action and Presidential actions themselves (as opposed to their implementation by subordinate officials) are not subject to APA review. *See Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992). Rather than address Defendants' contention that an action for equitable relief against the President cannot be brought under the APA, *see* Defs.' Mem. at 12, 16 n.7, Plaintiff states "that [it] does not challenge the policy as violating the APA," Pl.'s Opp'n at 18, apparently disclaiming any APA claim against the alleged FVRA policy, *see* SAC ¶ 3 ("Plaintiff brings its causes of action pursuant to the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*").

jurisdiction to enjoin him, and have never submitted the President to declaratory relief . . . ." (citation

omitted)).   Here, Plaintiff seeks a permanent prospective order restricting the President (and

presumably future Presidents) in the performance of his official, statutory and constitutional duties.

With respect to all future vacancies, Plaintiff asks the Court to require that the President accept a first

assistant as an acting agency head, despite his clear authority under the FVRA and Appointments

Clause to select other officials (including inferior officers or senior employees who satisfy certain

statutory criteria).   The Court's equitable power plainly does not authorize directly restraining the

President's exercise of his appointment power, as opposed to reviewing actions taken by improper

appointed officials.  *See Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *Franklin*, 505 U.S. at 802; *id.* at

827 (Scalia, J., concurring in part and concurring in the judgment) ("apparently unbroken historical

tradition supports the view" that courts may not order the President to "perform particular executive

. . . acts").[7]

Likewise, Plaintiff also cannot rely on the Court's equitable jurisdiction because there is no

relevant tradition of equitable relief of this nature *against the President.   See, e.g., Grupo Mexicano De*

*Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (availability of equitable relief restricted

---

[7] Plaintiff's reliance on *Clinton v. City of New York*, 524 U.S. 417, 425-26 (1998) is misplaced.  Because that case involved a challenge to a concrete Presidential action, there were other proper defendants sued who implemented the President's action and the Court did not squarely address whether it was proper that the President himself was also named as a defendant.  Likewise, Plaintiff's reliance on a 1974 D.C. Circuit decision to issue a declaration in lieu of a writ of mandamus against the President is also misplaced.  *See Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974).  More recent cases of the Supreme Court cases and D.C. Circuit, discussed in the text, have abrogated this holding by limiting the circumstances in which courts can consider award relief against the President. In any event, if *NTEU* does carve out a situation in which declaratory judgment against the President is appropriate as a less extreme remedy to an underlying direct injury to the plaintiffs (in that case failure to implement a pay raise), such an exception is not applicable here where there is no underlying case or controversy that requires a remedy.

to what "was traditionally accorded by courts of equity").[8]  Plaintiff's attempt to invoke *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), *see* Pl.'s Opp'n at 17, is also similarly unavailing.  While that case suggests that an implied right of action for equitable relief might exist under the Appointments Clause, it nowhere suggests that such an action would be available *against the President*.  Nor does it allow a court to exercise free-floating authority to issue prospective equitable relief in the absence of a concrete action taken by an official whose appointment is challenged.

Finally, contrary to Plaintiff's assertion, *see* Pl.'s Opp'n at 16 n.7, it cannot use a declaratory judgment to circumvent these limitations on equitable relief against the President.  *See Franklin*, 505 U.S. at 800-01 (statutory cause of action cannot be extended to President absent "express statement by Congress"); *Newdow*, 603 F.3d at 1013 (courts "have never submitted the President to declaratory relief"); *Swan*, 100 F.3d at 976 n.1 (noting that court's power to grant declaratory or injunctive relief are subject to "similar considerations").  Moreover, Plaintiff ignores the fact that a declaratory judgment is only available where a hypothetical coercive action for nondeclaratory relief could have been brought, *see* Defs.' Mem. at 10, which, as discussed above, is not the case here.

---

[8] Plaintiff cites two non-binding district court cases where courts have entered implied equitable relief against the President, *see* Pl.'s Opp'n at 17, but these cases cannot be squared with controlling precedent in cases such as *Franklin* and *Newdow*.  And besides, these cases are distinguishable because they involved only limited, temporary injunctions issued to maintain the status quo for the duration of litigation.  *See Mackie v. Bush*, 809 F. Supp. 144 (D.D.C. 1993), *vacated sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (requiring the President to retain members of the Board of Governors of the Postal Service Board temporarily while the Court of Appeals resolved pending litigation); *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983) (enjoining the President from removing members of a Commission, who could not legally be reinstated without Congressional action, until the legality of their removal was resolved).  None involved, let alone endorsed, the sort of expansive and prospective equitable relief sought here.  And at a minimum, these idiosyncratic modern cases cannot establish the equitable tradition required by *Grupo Mexicano*.

III.   **PLAINTIFF'S LIMITED CLAIM RELATED TO THE FINAL RULE SHOULD BE DISMISSED FOR LACK OF STANDING.**

Plaintiff's operative complaint has abandoned any prospective challenge to the Rule.  *See generally* SAC pp. 8-10 (request for relief).  Instead, plaintiff's sole claim relating to the Rule is an alleged injury to its right to alienate its bump stock during the period between the Rule's issuance and its ratification by Attorney General Barr.  But Plaintiff does not contest that its requested relief—a declaratory judgment that Whitaker was invalidly designated and that the Rule was temporarily invalid after its issuance but before its ratification—would do nothing to redress any such past injury and thus constitutes an impermissible advisory opinion, and that money damages are neither requested nor available here.  *See* Defs.' Mem. at 15-16.  Because this Court must reach this jurisdictional issue first, *see supra* Pt. I, the Court should grant Defendants' motion to dismiss for lack of jurisdiction.[9]

Nevertheless, if the Court were to reach the merits of Plaintiff's claim, it too would fail because Attorney General Barr's ratification means that the Rule was issued pursuant to valid authority, regardless of the validity of Whitaker's designation.  *See* Defs.' Mem. at 16-17.  Plaintiff apparently agrees that this conclusion logically follows from the D.C. Circuit's decision on the ratification issue,

---

[9] Plaintiff also fails to overcome its failure to allege that it or its identified members attempted or intended to alienate a bump stock during the time between the Rule's issuance and its ratification. Unlike in the Takings cases it cites, Plaintiff and its members suffered no cognizable and redressable injury from the temporary restriction on alienation if they did not actually try to alienate the bump stocks in the interim, because any effect on the value of the bump stock would have been theoretical at the time, and the restriction on alienation going forward is lawful.  *See Petworth Holdings, LLC v. Bowser*, 308 F. Supp. 3d 347, 351 (D.D.C. 2018) (alleging that plaintiffs "made a decision to sell the Property and solicited bids"); *McKenzie v. City of White Hall*, 112 F.3d 313, 316 (8th Cir. 1997) (alleging that city improperly demanded plaintiffs grant it easement on plaintiffs' land in exchange for authorizing plaintiffs' subdivision and redevelopment of other properties).  Neither case suggests that it is would suffice for standing purposes for Plaintiff to allege that its property right was unlawfully impaired for a temporary period without alleging that it ever attempted to or even intended to exercise that property right during the relevant period.  And in any event, Plaintiff ignores that declaratory relief will do nothing to redress this alleged past injury to his property right, as Plaintiff does not—and could not—seek damages for this claim.  *See* Defs.' Mem. at 15-16 & n.7.

as Plaintiff's sole response is to assert it will seek en banc review before the D.C. Circuit.  *See* Pl.'s

Mem. at 19.  Accordingly, if the Court were to conclude that it has jurisdiction over Plaintiff's challenge

to the Final Rule, the Court should dismiss it for failure to state a claim.[10]

## IV.   PLAINTIFF CONCEDES THAT IT LOSES ON THE MERITS CONCERNING THE VALIDITY OF WHITAKER'S DESIGNATION.

Were the Court to disagree with all of the reasons why Plaintiff lacks standing to assert its

claims, Plaintiff still would lose because, as this Court has already found, Whitaker's designation did

not violate the FVRA or the Appointments Clause.  *See* Defs.' Mem. at 17-18.  Despite choosing to

amend its complaint to raise new claims, Plaintiff concedes that those claims must be dismissed

outright on the basis of the Court's prior decision on its motion for a preliminary injunction.

Finally, Plaintiff incorporates by reference all of its prior arguments made in this case.  Pl.'s

Opp'n at 3 n.2, 19.  Defendants have not purported to respond to arguments Plaintiff has not made

in the briefing on this motion, but to the extent necessary, preserve all arguments in response to any

and all arguments Plaintiff incorporates by reference.

## <u>CONCLUSION</u>

For the foregoing reasons, the Second Amended Complaint should be dismissed for lack of

jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

---

[10] Because of the Rule's ratification, the Court may dispose of Plaintiff's claim, even on the merits, without addressing the validity of Whitaker's designation.  *See* Defs.' Mem. at 13.  Though the Court may have reached that issue on Plaintiff's motion for preliminary injunction, a decision on a preliminary injunction motion is not a final judgment on the merits.  *See, e.g., Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Zuber v. Allen*, 402 F.2d 660, 676 (D.C. Cir. 1968) ("[A] preliminary injunction does not constitute a final judgment on the merits . . . .").  Thus, this Court can reject Plaintiff's challenge to the Final Rule without needing to decide, for purposes of a final judgment on this particular claim, the validity of Whitaker's designation.

Dated: June 10, 2019                    Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

                                        HASHIM M. MOOPPAN
                                        JAMES M. BURNHAM
                                        Deputy Assistant Attorneys General

                                        JENNIFER D. RICKETTS
                                        Branch Director

                                        CHRISTOPHER R. HALL
                                        Assistant Branch Director

                                        /s/ Chetan A. Patil
                                        CESAR A. LOPEZ-MORALES (MA Bar #690545)
                                        CHETAN A. PATIL
                                        REBECCA CUTRI-KOHART
                                        Trial Attorneys
                                        Federal Programs Branch
                                        U.S. Department of Justice, Civil Division
                                        P.O. Box No. 883
                                        Ben Franklin Station
                                        Washington, DC 20044
                                        Telephone: (202) 305-4968
                                        Fax: (202) 616-8470
                                        Email: chetan.patil@usdoj.gov
                                        Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2019, a copy of the foregoing motion was filed electronically via the Court's ECF system which sent notification of such filing to all counsel of record.

*/s/ Chetan A. Patil*
CHETAN A. PATIL
Trial Attorney
U.S. Department of Justice