UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMIEN GUEDES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO FIREARMS, AND EXPLOSIVES, *et al.*<br><br>Defendants. | Case No. 1:18-cv-02988-DLF<br>The Hon. Judge Friedrich |
| DAVID CODREA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO FIREARMS, AND EXPLOSIVES, *et al.*<br><br>Defendants. | Case No. 1:18-cv-03086-DLF<br>The Hon. Judge Friedrich |

**STATEMENT OF FACTS PURSUANT TO LCvR 7(h)(2)**

Defendants respectfully submit, through counsel, the following statement of facts with reference to the administrative record:

**I.   Background**

1.   Defendant William P. Barr is the Attorney General of the United States, the head of

1

the Department of Justice ("DOJ") and the chief law enforcement officer for the United States.

2. Defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") is a component of the Department of Justice charged with, *inter alia*, protecting the public from crimes involving firearms; regulating lawful commerce in firearms; and providing support to law enforcement, public safety, and industry partners with respect to firearms. Among its responsibilities, ATF administers the National Firearms Act ("NFA"), the Gun Control Act ("GCA"), and the Firearms Owners Protection Act ("FOPA").

3. Defendant Regina Lombardo is the Acting Director of ATF.[1]

4. The Attorney General and DOJ are responsible for overseeing ATF. *See* 28 C.F.R. § 0.130(a)(1).

5. The NFA was enacted in 1934 and codified in the Internal Revenue Code ("I.R.C."). *See* Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934), originally codified at I.R.C. §§ 2720-2733 (1939), now codified as amended at I.R.C. §§ 5801-5872.

6. During hearings before the NFA was adopted, the House of Representatives received testimony that a gun "which is capable of firing more than one shot by a single pull of the trigger, a single function of the trigger, is properly regarded, in my opinion, as a machine gun," whereas "[o]ther guns [that] require a separate pull of the trigger for every shot fired . . . are not properly designated as machine guns." AR0004230 (National Firearms Act: Hearings Before the Committee on Ways and Means, H.R. 9066, 73rd Cong., 2nd Sess., at 40 (1934)).

7. In a report on the legislation enacted into law as the NFA, the House Committee on Ways and Means stated that the bill "contains the usual definition of machine gun as a weapon

---

[1] The Second Amended Complaint in *Guedes*, ECF No. 58, names Thomas Brandon, the former Acting Director of ATF, as a Defendant. By operation of Fed. R. Civ. P. 25(d), Acting Director Lombardo has been automatically substituted for former Acting Director Brandon as a Defendant in this action.

designed to shoot more than one shot without reloading and by a single pull of the trigger." H.R. Rep. No. 73-1780, at 2 (1934).

8. The GCA was enacted in 1968. *See* Pub. L. 90-618, 82 Stat. 1214 (Oct. 22, 1968).

9. The GCA was intended to "regulate more effectively interstate commerce in firearms" to reduce crime and misuse, "assist the States and their political subdivisions to enforce their firearms control laws," and "help combat . . . the incidence of serious crime." S. Rep. No. 89-1866, at 1 (1966).

10. The GCA was enacted shortly after the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (June 19, 1968), in which Congress made findings that "the high incidence of crime in the United States threatens the peace, security, and general welfare of the Nation and its citizens," and that gun control laws and other measures were warranted "[t]o prevent crime and to insure the greater safety of the people" through "law enforcement efforts [that] must be better coordinated, intensified, and made more effective at all levels of government." *Id.*

11. The FOPA was enacted in 1986 and added 18 U.S.C. § 922(o) to the GCA. *See* Pub. L. No. 99-308, 100 Stat. 449 (May 19, 1986). 18 U.S.C. § 922(o) reads:

> **(1)** Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> **(2)** This subsection does not apply with respect to—
>
> **(A)** a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
>
> **(B)** any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

12. The FOPA was intended in part "to strengthen the [GCA] to enhance the ability of law enforcement to fight violent crime." H. R. Rep. No. 99-495, at 1, 1986 U.S.C.C.A.N. at 1327. *See* H.R. Rep. No. 99-495, at 2, 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1328, 1333.

13. 18 U.S.C. § 922(o) was included in the FOPA because of its "benefits for law enforcement." The FOPA further described "the need for more effective protection of law enforcement officers from the proliferation of machine guns." H.R. Rep. No. 99-495, at 4.

14. Violation of 18 U.S.C. § 922(o) is a felony with a potential punishment of up to 10 years imprisonment. *See* 18 U.S.C. § 924(a)(2).

15. The term "machinegun" is defined in the NFA, 26 U.S.C. § 5845(b), as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

16. The GCA adopts the same definition of "machinegun." *See* 18 U.S.C. § 921(23).

17. The United States Code uses the uncommon spelling "machinegun." The two word spelling "machine gun" is the synonymous, common term. *See Guedes v. ATF*, 356 F. Supp. 3d 109, 122 n.2 (D.D.C. 2019).

18. 18 U.S.C. § 926(a) provides that "[t]he Attorney General may prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA.

19. 26 U.S.C. § 7801(a)(2)(A) provides that "[t]he administration and enforcement of the following provisions of this title shall be performed by or under the supervision of the Attorney General and the term 'Secretary' or 'Secretary of the Treasury' shall, when applied to those provisions, mean the Attorney General . . . (i)Chapter 53[;] (ii) Chapters 61 through 80, to the extent such chapters relate to the enforcement and administration of [Chapter 53]."

20. 26 U.S.C. § 7805(a) provides that "the Secretary shall prescribe all needful rules and regulations for the enforcement of this title."

21. 28 C.F.R. § 0.130(a) provides that "Subject to the direction of the Attorney General and the Deputy Attorney General, the Director of ATF shall: (a) Investigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson, and perform other duties as assigned by the Attorney General, including exercising the functions and powers of the Attorney General under . . . 26 U.S.C. Chapter 53 (related to certain firearms and destructive devices) . . . 26 U.S.C. chapters 61-80, insofar as they relate to activities administered and enforced with respect to . . . 26 U.S.C. Chapter 53."

**II.      Rifle Stocks, Bump Firing, and Bump Stocks**

22. Bump firing is a method of shooting in which a shooter pushes a semi-automatic firearm forward with his non-trigger hand until the trigger finger engages the trigger and the firearm fires. Recoil then pushes the firearm backwards, resetting the trigger, and the shooter, by continuing to push the firearm forward, re-engages the trigger to achieve a rapid rate of fire by enabling the cycle to continue. *See* 83 FR 66533; AR001007-AR001009; AR001010-AR001012; AR001664 (ANPRM Comment of Nathan Johnson), *see* https://www.regulations.gov/document?D=ATF-2018-0001-20294; AR001752 (ANPRM Comment of Dave Matheny), *see* https://www.regulations.gov/document?D=ATF-2018-0001-24397; AR002664 (NPRM Comment of Len Savage), https://www.regulations.gov/document?D=ATF-2018-0002-31210.

23. Thus, bump-firing utilizes the recoil of a semi-automatic firearm to engage in rapid manual trigger manipulation to simulate automatic weapons fire. AR000116-AR000117.

24. A bump-stock-type device, or "bump stock," is a device designed to make bump firing easier. AR000383.

25. A bump stock replaces a rifle's standard stock and frees the weapon to slide back and forth rapidly in a pre-determined path, assisting a shooter in bump-firing. 83 FR 66516.

5

26. In this way, bump stocks were specifically designed to make bump firing safer and more controlled. AR001054.

27. A bump stock thereby enables a firearms user to practice bump-firing in the most effective manner possible. AR000383.

28. When used as designed, bump stocks require the use of two hands to fire automatically. 83 FR 66516, 518; *see, e.g.*, AR000126-AR000130; AR000370-AR000371; AR000382.

**III.     Past DOJ Regulation of Bump Stocks**

29. ATF permits manufacturers and owners to seek ATF's view regarding the correct classification of a firearm, accessory, or other item, and in response, the agency may provide a classification letter indicating its current position on a particular device. *See* ATF, NFA Handbook § 7.2.4 (2009), available at: https://go.usa.gov/xpwp5.

30. In 2002 and 2004, Florida inventor William Akins asked ATF to determine whether the Akins Accelerator, a bump stock that "uses an internal spring and the force of recoil to reposition and refire the rifle," would be classified as a machine gun under the NFA. AR0007-AR000021; *see* AR000494-AR000511, AR000534-000538; AR005580-AR005582.

31. In the operation of the Akins Accelerator, the trigger of the rifle reset between each shot. *See* AR000007-AR000008; AR000507-509.

32. The Akins Accelerator contained an internal spring that channeled the recoil energy to move the trigger back and forth. *See* AR000010, AR000015, AR000076, AR000082, AR000498, AR000509.

33. ATF tested a prototype of the Akins Accelerator and concluded it did not constitute a machinegun. AR000019-AR000020; *see* AR000075-AR000077, AR000494-AR000511, AR000534-000538.

34.     ATF subsequently reversed its view and reclassified the Akins Accelerator as a machine gun. AR000076-AR000083; *see* AR000494-AR000511, AR000534-000538.

35.     ATF ordered existing owners of Akins Accelerators to disable their devices by removing and disposing of the internal spring.  *See* AR000090-AR000092.

36.     ATF issued a policy statement in 2006 stating that the portion of the definition of "machinegun" applying to "a part or parts designed and intended for use in converting a weapon into a machinegun . . . includes a device that, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted." ATF Ruling 2006-2; AR005599-AR005600.

37.     From 2008 to 2017, ATF received a number of classification requests seeking to determine whether other bump stocks were properly classified as machine guns. *See* AR000105-AR000322.

38.     During this period, ATF concluded that several bump stocks were not machine guns because ATF determined they lacked internal springs or similar mechanical parts to channel recoil energy. *See, e.g.*, AR000104-AR000110; AR000111-AR000115; AR000126-AR000132; AR000137-AR000144; AR000157-AR000159; AR000160-AR000165; AR000167-AR000170; AR000171-AR000174; AR000179-AR000187; AR000191-AR000197; AR000201-AR000205; AR000206-AR000209; AR000210-AR000211; AR000218-AR000227; AR000242-AR000249; AR000258-AR000262; AR000275-AR000278; *see also* AR000145-AR000147; AR000198-AR000200.

39.     During this period, ATF also received requests to classify several other bump stock type devices. ATF concluded that these bump stocks were machine guns because ATF determined they relied on mechanical parts to channel recoil energy. *See, e.g.*, AR000119-AR000125; AR000149-AR000156; AR000279-AR000289; AR000290-AR000305; AR000306-AR000311; AR000312-

AR000322.

40. ATF also classified as a machine gun the "AutoGlove," a glove worn by a shooter, in which pushing a button inside the glove led to an electromechanical "finger" pulling repeatedly the trigger of an ordinary firearm. *See* AR000660.

41. One manufacturer submitting a classification request was Slide Fire. In 2010, ATF informed Slide Fire that a bump stock submitted for classification by Slide Fire was a firearm part not regulated under the GCA or NFA, and not a machine gun. AR000126-AR000130; AR000324-AR000329.

42. In its patent application, Slide Fire stated that "[t]he shoulder stock and pistol grip and finger rest [of the bump stock] are fixed together as a monolithic handle unit that, in use, is held tight to the user's body." AR000382. Slide Fire also stated that this unit (including the user's trigger finger) "remain[s] relatively stationary as . . . pulled" in the bump-firing mode. AR000385.

43. Beginning in 2010, Slide Fire made its bump stocks commercially available in the United States. 83 FR 66546-66547.

44. Another manufacturer submitting a classification request to ATF between 2008 and 2017 was Bump Fire Systems. ATF determined that a bump stock submitted for classification by Bump Fire Systems was not a machine gun. AR000160-AR000167.

45. In its classification request, Bump Fire Systems explained that its bump stock "uses a gun's recoil to shoot multiple rounds." AR000837; AR000840.

IV. **The Bump Stock Rule**

46. An attacker armed with more than two dozen rifles shot and killed 58 concertgoers and injured hundreds more in Las Vegas, Nevada on October 1, 2017. 83 FR 66516; AR 000325-

000328.

47. In the hotel room from which the Las Vegas shooter carried out his attack, investigators recovered multiple rifles equipped with bump stocks. *See* AR000362-AR000369; AR001028-AR001043.

48. Members of Congress and the public inquired about the regulatory status of bump stocks after the Las Vegas attack. *See* AR000539-AR000560; AR000717-AR000720; AR0001004; 83 FR 66516.

49. The Department of Justice issued an advance notice of proposed rulemaking ("ANPRM") in the Federal Register on December 26, 2017. *See* AR000773 (Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 82 FR 60929 (Dec. 26, 2017)).

50. The ANPRM solicited comments concerning the market for bump stocks, asking manufacturers, consumers, and retailers to share information about, *inter alia*, the cost of bump stocks, the number of sales, the cost of manufacturing, and the potential effect of a rulemaking prohibiting bump stocks. AR000773-AR000776; 82 FR 60929.

51. Public comment on the ANPRM concluded on January 25, 2018. *See* AR001098; https://www.regulations.gov/document?D=ATF-2018-0001-0001.

52. DOJ received 115,916 comments on the ANPRM. *See* AR001198; https://www.regulations.gov/document?D=ATF-2018-0001-0001.

53. On February 20, 2018, the President issued a memorandum to the Attorney General concerning bump stocks, which was published in the Federal Register. *See* AR000790 (*Definition of Machinegun*, 83 FR 7949) ("President's Memo").

54. The President's Memo instructed DOJ, working within established legal protocols,

"to dedicate all available resources to complete the review of the comments received [in response to the ANPRM], and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns." AR000790.

55. On March 29, 2018, DOJ published a Notice of Proposed Rulemaking ("NPRM") setting forth changes to the regulations in 27 C.F.R. § 447.11 that would interpret the meaning of the terms "single function of the trigger" and "automatically" in the federal definition of "machinegun" in 26 U.S.C. § 7845(b). *See* AR001238 (*Bump-Stock-Type Devices*, 83 FR 13442 (Mar. 29, 2018); https://www.regulations.gov/document?D=ATF-2018-0002-0001.

56. Commenters provided over 186,000 comments on the NPRM. *See* AR002195-AR004031; https://www.regulations.gov/document?D=ATF-2018-0002-0001.

57. On December 26, 2018, DOJ published in the Federal Register a final rule entitled *Bump Stock Type Devices*. *See* AR 005764 (83 FR 66514 (Dec. 26, 2019) ("Rule")).

58. The Rule was promulgated by the Attorney General, DOJ, and ATF. *See* AR 005764; 83 FR 66514, 66554.

59. The Rule acknowledged the role of Presidential direction in the Rule's adoption. 83 FR 66516-17.

60. The Rule sets forth DOJ's interpretations of the terms "automatically" and "single function of the trigger." *Id.*

61. The Rule states that the Department is interpreting the phrase "single function of the trigger" to mean a "single pull of the trigger and analogous motions." *Id.* at 66515, 66553.

62. The Rule states that the Department is interpreting the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot" to mean "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds

through a single function of the trigger." 83 FR 66518-19, 66553-54.

63. The Rule states that the definition of "machinegun" includes "a bump-stock-type device, *i.e.*, a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." 83 FR 66519, 66553-54.

64. The Rule instructed individuals who purchased bump stocks prior to the implementation of the rule that they could destroy the devices themselves or abandon them at their local ATF office prior to the effective date of the Rule, March 26, 2019. 83 FR 66514, 66530.

**V.** **Facts Relevant to Plaintiffs' Claims That the Definitions of "Single Function of the Trigger" and "Automatically," and the Application of those Definitions to Bump Stocks, are Arbitrary and Capricious**.

65. Most firearms operate through the pull of a shooter's finger on a curved trigger. *See, e.g., United States v. Jokel*, 969 F.2d 132, 134-35 (5th Cir. 1992); *United States v. Carter*, 465 F.3d 658, 664-65 (6th Cir. 2006).

66. "Pull the trigger" is the commonly-accepted terminology for the method by which firearms are operated. *See Guedes v. ATF*, 356 F. Supp. 3d 109, 130 (D.D.C. 2019) (citing *Staples v. U.S.* 511 U.S. 600, 602 n.1 (1994)); "trigger," n.1., OED Online, http://www.oed.com/view/Entry/206003; Webster's New World Dictionary 1177 (3d ed. 1988); Webster's New World Dictionary 1177 (3d ed. 1988) (defining "Russian roulette" as involving "aim[ing] a gun . . . and pull[ing] the trigger"); Nightline: Biting the Bullet at the NRA [National Rifle Association], (ABC television broadcast, June 8, 1990) (NRA President Joe Foss: "[semi-automatic] guns are like any other gun . . . they're a single-shot, every time you pull the trigger it shoots"); Oliver Wendell Holmes, Jr., The Common Law: Lecture IV (1881) (an ordinary person "would

foresee the possibility of danger from pointing a gun which he had not inspected into a crowd, and pulling the trigger, although it was said to be unloaded").

68. "Automatically" is the adverbial form of 'automatic,' which means "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." Webster's New International Dictionary 187 (2d ed. 1934).

68. Congress received testimony in 1934 that a gun "which is capable of firing more than one shot by a single pull of the trigger, a single function of the trigger, is properly regarded . . . as a machine gun," whereas "[o]ther guns [that] require a separate pull of the trigger for every shot fired . . . are not properly designated as machine guns." AR004230 (reproducing *Nat'l Firearms Act: Hrg's Before the Comm. on Ways and Means*, House of Rep's, Second Session H.R. 9066, 73rd Cong., at 40 (1934).

69. A Congressional committee report explained that the NFA contains the "usual definition" of machine gun as "a weapon designed to shoot more than one shot without reloading and by a single pull of the trigger." H.R. Rep. No. 73-1780, at 2 (1934).

70. A bump stock is intended to be used by a shooter maintaining his trigger finger stationary on the bump stock's ledge and maintaining constant forward pressure with the non-trigger hand on the forward part of the bump-stock-equipped rifle. 83 FR 66516, 66532; AR000382-390.

71. When a bump stock is used as intended pursuant to the description above and the shooter pulls the trigger with a single conscious motion, that trigger pull initiates a firing sequence that produces more than one shot. AR000716; *see Guedes*, 356 F. Supp. 3d 132-33.

72. Unless the shooter makes a conscious effort to cease firing, the firing sequence described above will continue until the weapon exhausts its ammunition or the weapon malfunctions. *See* 83 FR 66518; *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009).

73. Using a bump stock as designed and intended, a shooter does not need to pull the trigger more than once to produce more than one shot. 83 FR 66519; *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1152-53 (D. Utah 2019).

74. ATF considered an online graphic to be a "great" tool for "understanding bump stocks." AR000716, *see* https://www.nytimes.com/interactive/2017/10/04/us/bump-stock-las-vegas-gun.html. That online graphic accurately depicts the mechanical operation of a bump stock; however, the web page noted that it was "updated" in 2019.

75. ANPRM commenter Bernard Owens stated in a comment that bump stocks "help reduce the learning curve for [bump-firing]," "are used to better control aim while bump firing," "are used to better control the number of shots fired when bump-firing," and have the "primary purpose[]" of "enabl[ing] firing 2 or 3 shots very quickly with good accuracy." AR001526; *see* https://www.regulations.gov/document?D=ATF-2018-0001-1385

76. ANPRM commenter Nathan Johnson stated in a comment that bump stocks are "an aesthetically and ergonomically pleasing replacement for numerous methods" of bump firing. AR001664; *see* https://www.regulations.gov/document?D=ATF-2018-0001-20294.

77. When firing a Model 37 pump shotgun, a shooter must "pump the fore-end" to load a new shell after the first discharge. 83 FR 66534.

78. A so-called "binary trigger" fires one shot when the trigger is pulled, and a second shot when the trigger is released. 83 FR 66534.

**VI.   Facts Relevant to Plaintiffs' Other Claims**.

79. The Rule acknowledged that the Department's interpretation changed from previous interpretations.  *See* 83 FR 66514, 66516-517, 66520, 66527.

80. The Rule described specifically the error in the Department's prior interpretation and why the current interpretation is better. *See* 83 FR 66531.

81. During the comment period for the Rule, a search for "bump stock" on Regulations.gov would have displayed a link for the Docket ID for the Rule which was active and accepting comments.

82. Defendants received numerous comments from the very beginning of the comment period." *See* AR002195-AR002211. Commenters were able to submit comments by mail and facsimile throughout the comment period. 83 FR 66514.

83. Plaintiffs Codrea, Monroe, Heuman, Guedes, and Firearms Policy Foundation ("FPF") participated in the comment process. See AR2195/NPRM 000013; AR3054/NPRM 49591; AR2736/NPRM 34581; AR3314/NPRM 61777; AR 3614/NPRM 75886.

84. The Rule provided a 90-day period before enforcement of 18 U.S.C. § 922(o) would begin as to bump stocks.

85. 18 U.S.C. § 922(o) was enacted as part of the FOPA, later in time than the Gun Control Act of 1968. *See* 83 FR 66536.

86. 18 U.S.C. § 922(o) provides only two exceptions to its ban on machine gun possession, as enumerated in its text.

**VII.   Comments Received During Rulemaking**.

87. In a comment to the NPRM, Len Savage of Historic Arms, LLC, explained that, following the ban on machine guns enacted in the FOPA, "[w]ith the supply of citizen legal machineguns fixed, demand grew with the population and that has caused prices of [those] machineguns to skyrocket in price, . . . driv[ing] the market into looking for an alternative." Mr. Savage also stated his view that the Attorney General could declare an amnesty and open the

National Firearms Transfer Registry to new machine guns. AR003338.

88. In a comment to the ANPRM, Mason Hicks explained that bump stocks were developed because of demand for an "affordable legal outlet" for those who wanted to own machine guns "given supply and demand driving up the cost," that prices ranged from a little less than $100 to as much as $1500, and that bump stocks were used for [a]musement," because "[t]hey serve no real practical purpose." AR001455.

89. In a comment to the ANPRM, Ronald Devito explained that bump stocks "allow[] the recreational shooter to simulate machine gun fire," and range in price from $180 to $500. AR001500.

90. In a comment to the ANPRM, Dave Matheny of the Hill Country Class III, LLC, (d/b/a Silencer Shop), stated that many bump stock owners "simply use these devices for recreational shooting and 'plinking,'" and that they ranged in price from $99 to $329.95. AR001752.

91. In a comment to the NPRM, Thomas Oas stated that "the cost to purchase a civilian legal fully automatic . . . machine gun is as much as my first house cost. Bump stocks simulate that experience for a few hundred dollars." AR002322.

92. Plaintiff Codrea commented on the NPRM. AR002195.

93. Plaintiff Monroe commented on the NPRM. AR003054.

94. Plaintiff Heuman commented twice on the NPRM. Mr. Heuman's second comment included a copy of an application for registration of a machine gun dated April 21, 1986. AR002786; AR003614.

95. In its comment to the NPRM, Plaintiff FPF included a copy of the Las Vegas Metropolitan Police Department Preliminary Investigative Report on the 1 October [2017] Mass Casualty Shooting, which identified the bump stocks recovered in that investigation. AR003314.

96.     Plaintiff Guedes submitted a declaration as part of Plaintiff FPF's comment on the NPRM.  AR003314.

97.     In a comment to the NPRM, Michael Taylor explained that limiting the definition of "function of the trigger" to "pull of the trigger" would create problems with "fire initiated by voice command, electronic switch, swipe on a touchscreen or pad, or any conceivable number of interfaces not requiring a pull."  Mr. Taylor also stated that "removing the extension ledge means that there is no longer an extension ledge or similar item upon which the shooters finger can maintain rearward pressure and . . . [s]uch a device could therefore not be a machinegun under" the Rule's definition. AR002333.

98.     In a comment to the NPRM, Thomas Currie explained that bump stocks "might make bump firing a little easier" than bump-firing without the assistance of a bump-stock-type device.

99.     In a comment to the NPRM, Isaac Arritt stated that a bump stock "allows the trigger-finger to remain in a position" and "assists in the technique of a person bump-firing." AR002273.

100.    In a comment to the NPRM, Mason Hicks stated that a bump stock "helps restrict the operator's placement of their finger . . . [i]t essentially does the same work that training wheels on a bicycle do."  AR002320.

101.    In a comment to the NPRM, Jason Cuny included an animated GIF that illustrates the firing of a bump stock equipped rifle.  AR003951.

102.    In a comment to the ANPRM, Bernard Owens explained that "bump-fire stocks are used to, *inter alia*, better control aim while bump-firing," to "better control the number of shots fired when bump-firing," and to "allow for easier, more accurate rapid fire by shooters without the time,

facilities, money, and large quantities of ammunition normally needed to obtain a given level of skill" with other "bump-firing methods." AR001526

103. In a comment to the ANPRM, Nathan Johnson explained that bump stocks are "an aesthetically and ergonomically pleasing replacement" for other methods of bump-firing. AR001664.

104. In a comment to the NPRM, Ronald Devito stated the view that "[u]nder the proposed single pull standard, binary triggers would be classified as machine guns." AR002712.

105. In a comment to the NPRM, Jay Callaham stated the view that a pump shotgun could be classified as a machine gun under the Rule. AR003257.

106. In a comment to the NPRM, Tyler Capobres stated the view that a "belt loop, string, or rubber band" are no different than a bump stock. AR002571.

107. In a comment to the NPRM, Andrew Pynckel stated the view that a "belt loop" would be a bump stock under the Rule. AR002622.

108. In a comment to the NPRM, Nathan Thurman stated the view that "a block of wood, belt loop, rubber band, or even a human finger" would be a bump stock under the Rule. AR002735.

109. In a comment to the NPRM, Steve Pegram stated his view that a rubber band would be a bump stock under the Rule. AR002987.

110. In a comment to the NPRM, a person identified only as "Brian G." asked whether removing the extension ledge of a bump stock would make "a bump-fire stock without this ledge be a legal accessory." AR002531.

111. In a comment to the NPRM, Walter Barnes stated that "the only objective difference between 'bump firing' . . . without a bump-stock-type device" and bump-firing with a

bump stock "is that the device has an extension ledge ("finger rest") for resting the trigger finger." AR003952. The Rule quoted this comment. 83 FR 66531.

112. In a comment to the NPRM, Ryan Mulder stated his view that removing the extension ledge would remove a bump stock from the definition of a machine gun. AR002629.

113. In a comment to the NPRM, Mark Pennak of Maryland Shall issue stated the view that the Rule is impermissibly retroactive and violates the Ex Post Facto Clause. AR002324.

114. In a comment to the NPRM, Michael Hendricks stated the view that the rule is an "ex post facto infringement." AR002285.

115. In a comment to the NPRM, Gilbert Brown stated the view that the Rule is "unconstitutional . . . ex post facto legislation." AR002307.

116. In a comment to the NPRM, Gordon Davis stated the view that the Rule "qualifies as ex post facto" in violation of the Constitution. AR002713.

117. In a comment to the NPRM, Josh Savani of the National Rifle Association stated the view that "ATF could provide one or more 90-day periods of amnesty for the registration of bump fire stocks." AR003859.

118. In a comment to the NPRM, Joshua Fitch stated the view that Section 207(d) of the Gun Control Act authorized an amnesty. AR003943.

119. In a comment to the NPRM, Adam Roberts stated his view that the Rule is "unconstitutionally vague" and that he was suing the State of Florida over the same issue. AR003659.

120. In a comment to the NPRM, Toby Patten stated his view that the Rule "is based on a Police Power that the Federal Government does not have." AR003829.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MATTHEW J. GLOVER
Counsel to the Assistant Attorney General

*/s/ Eric J. Soskin*
ERIC J. SOSKIN (PA Bar #200663)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
1100 L Street, NW Rm. 12002
Washington, DC 20530
Telephone: (202) 353-0533
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov
Counsel for Defendants